**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MACHELLE JOSEPH,

      *Plaintiff*,

      v.

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA;
GEORGIA TECH ATHLETIC
ASSOCIATION; GEORGE P. PETERSON,
in his individual capacity; M. TODD
STANSBURY, in his individual capacity;
MARVIN LEWIS, in his individual capacity;
and SHOSHANNA ENGEL, in her individual
capacity,

      *Defendants*.

CIVIL ACTION FILE NO.
1:20-CV-00502-TCB

**DEFENDANT BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF
GEORGIA'S PARTIAL MOTION TO DISMISS
<u>WITH BRIEF IN SUPPORT</u>**

COMES NOW, the Board of Regents of the University System of Georgia

("BOR"), Defendant in the above-styled action, by and through counsel, the

Attorney General of the State of Georgia, and files this Partial Motion to Dismiss

Plaintiff's Complaint. Counts One, Two, Nine, and Twelve of Joseph's Complaint

are subject to dismissal because her Title IX claims are pre-empted by Title VII;

Counts Three, Four, and Thirteen, brought pursuant to Title VII, are subject to

1

dismissal because Joseph fails to state a claim for relief under that statute; and Count Fourteen is due to be dismissed because the BOR is not party to any employment contract with her.

## I.   INTRODUCTION AND FACTUAL BACKGROUND[1]

Machelle Joseph was the head coach of the Women's Basketball Team ("WBB") at the Georgia Institute of Technology ("GT" or "Georgia Tech") for sixteen years until her termination on March 26, 2019. (ECF No. 1-2, Complaint ("Compl."), ¶¶ 1, 11.) Joseph claims she had an employment contract with the BOR and with co-defendant Georgia Tech Athletic Association ("GTAA"), the terms of which provided for her employment as Head Coach of WBB until 2020. (Compl., ¶¶ 36-40.)

During her tenure at GT, Joseph alleges that she regularly complained about differential treatment between WBB and the Men's Basketball team ("MBB"). (Compl., *passim.*) Joseph also alleges that the BOR discriminated against her on the basis of her sex and the sex of her players in that WBB received inferior locker

---

[1] Because the Court is required to accept all alleged facts as true for purposes of ruling on a Rule 12(b)(6) motion to dismiss, the facts recited herein are taken from Joseph's Complaint. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th. Cir. 2000). In filing this motion, Defendant BOR makes no admissions as to any of Joseph's allegations and hereby expressly reserves any and all defenses available to it.

rooms and other facilities (Compl., ¶¶ 52, 56); that WBB was not afforded the same publicity resources as MBB (Compl., ¶¶ 67-76); that she received inferior funds for coach and staff salaries as compared to MBB (Compl., ¶¶ 79-83); and that she and WBB received inferior resources, as compared to MBB, for their travel (Compl., ¶¶ 86-90). In support of her claims, Joseph alleges that the differences between MBB and WBB "negatively impacted the terms and conditions of [her] employment." (Compl., ¶¶ 64, 76, 83, 90.)

Joseph further contends that, as a result of her repeated complaints about the differences between MBB and WBB, the BOR subjected her to unlawful retaliation. In particular, Joseph asserts that she received a baseless written reprimand for excessive alcohol intake from former GT Athletic Director Mike Bobinski in 2015 and that, in 2016, newly-hired Senior Women's Administrator Joeleen Akin pursued a complaint filed against Joseph too "aggressively." (Compl., ¶¶ 108, 122.) Following this investigation, Akin issued Joseph a final written warning in November, 2016. (Compl., ¶ 130.)

The remainder of Joseph's complaint includes allegations about GT's participation in a 2018 NCAA investigation into the WBB program and GT's 2019 investigation into student-athlete complaints about Joseph.  (*See, e.g.,* Compl., ¶¶ 150-152 159-160, 169-170, 188-193, 198.) Upon receipt of these complaints, GT

hired an external law firm to investigate complaints against Joseph and, at the

conclusion of that investigation, GT Athletic Director Todd Stansbury terminated

Joseph's employment. (Compl. ¶¶ 190, 198, 202.) This lawsuit followed.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint is subject to dismissal if it does not "state

a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (*quoting*

*Twombly*, 550 U.S. at 555). This plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the

line between possibility and plausibility of 'entitlement to relief.'" *Id*. (*quoting*

*Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id*. (internal

citations omitted).

The standard for the Court's consideration of a Rule 12(b)(6) motion to dismiss, therefore, is comprised of two main principles: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Similarly, unwarranted deductions of fact in a complaint are not admitted as true. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009) (*citing Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 416 F.3d 1242, 1248 (11th Cir. 2005)). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

Further, "[r]egardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law." *Bernard v. Calejo*, 17 F. Supp. 2d 1311, 1314 (S.D. Fla.1998) (*citing Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint . . . when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.").

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.    Joseph's Title IX claims are preempted by Title VII.

Joseph's Title IX claims are subject to dismissal because Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., is the only

appropriate vehicle for claims of sex discrimination and retaliation as it relates to the terms and conditions of a plaintiff's employment. "Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173 (2005). In turn, Title VII prohibits sex discrimination with respect to an employee's compensation, or the terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a). Joseph asserts Title IX claims in Counts One, Two, Nine, and Twelve of her complaint, claiming she was subject to discrimination and retaliation based on her sex and the sex of her players, and to a retaliatory hostile work environment based on her alleged protected activity. (*See* Compl., ¶¶ 231, 242, 308, 338.) Joseph also brings nearly identical counts for sex discrimination, retaliation, and retaliatory hostile work environment under Title VII. (*See* Compl., Counts Three, Four, Ten, and Thirteen.)

Although not yet addressed by the Eleventh Circuit Court of Appeals, district courts in this circuit have consistently dismissed Title IX claims as preempted by Title VII. In *Drisin v. Fla. Int'l Univ. Bd. of Trs*., Case No. 1:16-cv-24939, 2017 U.S. Dist. LEXIS 100247, *14 (S.D. Fla. June 27, 2017), the Southern District of Florida held that a plaintiff's Title IX claim was preempted by Title VII as a matter of law. *Id*. The court reasoned that Title VII provides a comprehensive scheme for aggrieved individuals to enforce the prohibition against discrimination

in employment. If a comparable cause of action were allowed under Title IX, it would "eviscerate Title VII's technical and administrative requirements, thereby giving plaintiffs who work at federally funded institutions unfettered ability to bring what are in reality Title VII sexual discrimination claims without adhering to the same rules required of every other employment discrimination plaintiff in the country." *Id*., at \*18 (quoting *Gibson v. Hickman*, 2 F. Supp. 2d 1481, 1484 (M.D. Ga. 1998)). The court further found that "Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title VII." *Id*., at \*14 (internal citations and quotations omitted).

Likewise, in *Carvalho-Knighton v. Univ. of S. Fla. Bd. of Trs*., Case No. 8:14-cv-1097, 2015 U.S. Dist. LEXIS 184759, \*5-6 (M.D. Fla. 2015), the district court did not permit a Title IX claim to go forward because it overlapped with the related Title VII claim and "would be preempted by it." *Id*. (citing *Morris v. Wallace Community College Selma,* 125 F. Supp. 2d 1315, 1343 (S.D. Ala. 2001) ("In light of the weight of authority that a Title IX claim of employment discrimination may not be maintained to the extent that Title VII provides a parallel remedy . . . plaintiff's Title IX claim is precluded by Title VII."); *see also Schultz v. Bd. of Trustees of Univ. of West Florida*, Case No. 3:06-cv-442, 2007

U.S. Dist. LEXIS 36815 (N.D. Fla. May 21, 2007) (finding "consistent with the weight of authority, that the 'precisely drawn, detailed enforcement structure' and 'comprehensive remedial scheme' that is Title VII preempts the more general remedy under Title IX in this case"); *Hazel v. School Bd. of Dade Cnty*, 7 F. Supp. 2d 1349, 1354 (S.D. Fla. 1998) (Title VII is the exclusive remedy for employment discrimination claims on the basis of sex in federally funded educational institutions); *Hankinson v. Thomas County Sch. Dist.*, Case No. 6:04-cv-71, 2005 U.S. Dist. LEXIS 25576, *6 (M.D. Ga. 2005) (holding that Title VII preempts employment discrimination claims brought under Title IX); *Gibson*, 2 F. Supp. 2d at 1484 (holding that Title VII preempts employment discrimination claims for money damages brought under Title IX); *Baynes v. Baldwin Cnty Bd. of Educ.*, Case No. 96-1240, 1997 U.S. Dist. LEXIS 17486 (S.D. Ala. 1997) ("Title VII provides a comprehensive remedial scheme for claims of employment discrimination, and a claim under Title IX is unnecessary."). Joseph's Title IX claims are preempted by Title VII and should be dismissed.

**B.     Joseph is time-barred from seeking relief for many of the actions about which she now complains.**

Prior to bringing a lawsuit under Title VII, a plaintiff must first exhaust her administrative remedies by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e-5(e)(1).

The charge must be filed "within one hundred and eighty [180] days after the alleged unlawful employment practice occurred." *Id.* The Eleventh Circuit has observed that courts must "at the outset…establish the appropriate temporal reach" of any Title VII claims concerning disparate treatment. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). In this case, Joseph filed her first EEOC Charge on April 16, 2019. (Compl., ¶ 23.) Accordingly, she is prohibited from seeking relief for any adverse actions that occurred, or of which she was aware, prior to October 18, 2018.

In her complaint, Joseph includes allegations which span her entire career with GT WBB. (*See, e.g.,* Compl., ¶¶ 5, 50-51, 87, 93.) It is difficult to discern from the complaint exactly which actions Joseph seeks to redress with this lawsuit. Her language is often broad and sweeping,[2] and she engages in the consternating practice of incorporating all factual allegations into each and every cause of action. (*See, e.g.,* ¶¶ 225, 235, 246, 255, etc.)[3] At times, she conveniently fails to include

---

[2] In this way, Joseph's complaint fails to conform to the requirements of the Federal Rules of Civil Procedure, because the allegations therein are not concise and direct, nor does the pleading represent a "short" or "plain" statement of Joseph's claims for relief. *See* Fed. R. Civ. P. 8(a)(2), (d)(1).

[3] This "shotgun pleading" technique has been roundly criticized and rejected by the Eleventh Circuit, particularly in cases such as this, where Joseph has included hundreds of "factual" allegations which span over a decade. *See, e.g., Jackson v. Bank of Am., N.A.,* 898 F.3d 1348, 1357-1358 (11th Cir. 2018); *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008); *Anderson v.*

dates or other markers of time when they would be disadvantageous to her claims, but it is apparent that she felt, at least as early as 2011, that the WBB Team was not receiving the resources and benefits to which it was entitled. (*See* Compl., ¶¶ 56, 58.) She complains about WBB's marketing budget during her "last decade" of employment. (Compl., ¶ 68.) She points specifically to fiscal years 2016-17 as years when she received insufficient funds for assistant coach salaries. (Compl., ¶¶ 81-82). She complains of her travel budget from 2007 and about reprimands she received in 2015 and 2016. (Compl., ¶¶ 87, 108, 130.) Clearly, Joseph was aware of these events and considered them to be discriminatory and retaliatory; she says as much in her Complaint. (Compl., ¶¶ 93, 127, 131.[4]) But, because she failed to file a timely Charge of Discrimination based on any of these actions, all of these allegations are due to be disregarded. Nothing that occurred prior to October 18, 2018, can form a part of any Title VII claim against the BOR.

---

*Dist. Bd. of Trs. of Cent. Fla. Cmt'y Coll.*, 77 F.3d 364, 366 (11th Cir. 1996); *McDonough v. City of Homestead*, 771 Fed. App'x 952, 955 (11th Cir. 2019) (unpublished); *Embree v. Wyndham Worldwide Corp.*, Case. No. 18-13924, 2019 U.S. App. LEXIS 20954, *9-17 (11th Cir. 2019) (unpublished).

[4] Joseph went as far as to retain attorneys to assert her claims that she was being discriminated against in 2017. (*See* Compl., ¶ 131.) She can hardly claim that she was unaware of the actions which may have formed the basis of a Title VII claim, and she has not alleged any other facts which would support any tolling of the 180-day time frame mandated by Title VII.

### C.   Joseph's Complaint fails to state a claim for sex discrimination under Title VII.[5]

In Count III of the Complaint, Joseph alleges that she was subjected to unlawful discrimination in violation of Title VII when she was provided fewer resources than those afforded to the MBB Team, held to a higher standard than her male counterparts,[6] and ultimately terminated. (Compl., ¶¶ 246-254.) The only timely action for which she can seek redress is her termination. *See* Part. III.B., *infra.*

To state a claim for sex discrimination under Title VII, a plaintiff must plausibly allege sufficient facts which would tend to show that her employer took an adverse employment action against her on the basis of her sex. *See* 42 U.S.C. § 2000e-2(a)(1); *McCone v. Pitney Bowes, Inc.*, 582 Fed. App'x 798, 799-800 (11th Cir. 2014); *see also McCullough v. Bd. of Regents*, 623 Fed. App'x 980 (11th Cir. 2015) (unpublished). In this case, while the complaint makes clear that Joseph feels she was treated unfairly, there are no factual allegations—as opposed to

---

[5] In the body of her Complaint, Joseph includes allegations that she was paid less than similarly situated male employees for equal work. (Compl., ¶¶ 33-50.) However, in Count III of the Complaint alleging sex discrimination in violation of Title VII, she lists several other discrete adverse actions, but does not assert a claim for unequal pay. (*See* Compl., ¶¶ 246-254.) Accordingly, the BOR does not construe the Complaint to seek relief for any allegations of unequal pay and does not address those allegations here.

[6] Joseph does not adequately explain how it is that she was "held to a higher standard" than any male counterparts.

speculation or bare conclusory assertions–which would tend to show that anyone acted with any discriminatory animus predicated on Joseph's sex or gender.

In the context of employment discrimination claims, plaintiffs can show discriminatory motive in a number of ways. They may rely on comparator evidence, where they point to a similarly situated individual who is outside of their own protected class, yet who was treated more favorably. *See, e.g., McCone,* 582 Fed. App'x at 800; *Phillips v. Aaron Rents, Inc.*, 262 Fed. App'x 202, 208 (11th Cir. 2008) (unpublished). They may also rely on the fact that, though qualified for their position, they were replaced by someone outside their protected class. *Ezell v. Wynn*, 802 F.3d 1217, 1226 (11th Cir. 2015). Or, they may present a "convincing mosaic" that would tend to evidence unlawful discrimination. *See, e.g., Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Despite the length and apparent detail of her complaint, Joseph has failed to allege any facts that would permit her to make out a claim of sex discrimination under any of these theories.

First, Joseph fails to point to any similarly situated males who were treated more favorably than she was. Although she relies heavily on the fact that Josh Pastner, MBB coach, was also implicated in NCAA violations (Compl., ¶¶ 144-147, 195-197), any alleged NCAA violations are a red herring. As can be seen

from the termination letters that Joseph attaches as Exhibits C and D to her Complaint, her termination came about as a result of the findings of the Littler Mendelson investigation into her conduct as a coach. (Compl., ¶¶ 190, 198, 200.) There are no allegations that Joseph's termination was a result of any NCAA investigations or violations, and she completely fails to allege that Pastner, or any other male coach at GT, experienced any similar complaints regarding "unacceptable and extreme coaching practices" (*see* Compl., ¶ 11) or were found by an outside investigator to have engaged in such misconduct.[7] Thus, Joseph has failed to allege the existence of any proper male comparators. The Eleventh Circuit has "said many times … 'discrimination consists of *treating like cases differently*.'" *Lewis v. City of Union City*, 918 F.3d 1213, 1222 (11th Cir. 2019) (emphasis in original). "The converse, of course, is also true: Treating *different* cases differently is not discriminatory, let alone intentionally so." *Id.* at 1223. Because Pastner is not similarly situated, and because Joseph does not allege any other potential comparators, she cannot rely on this method of showing discrimination.

---

[7] The allegations involving MBB NCAA violations are also inapposite because they concern only the actions of others within the MBB program. (Compl., ¶ 195.) There are no allegations that Pastner himself engaged in any misconduct.

Next, Joseph does not claim that she was replaced by someone outside of her protected class; indeed, the allegations show that she was replaced by Nell Fortner, a woman qualified for the position. (Compl., ¶ 210.) And, finally, Joseph has not alleged enough facts sufficient to establish a "convincing mosaic" of discrimination. Although her complaint includes numerous conclusory allegations that she was treated differently on the basis of sex,[8] a careful review of the alleged *facts* reveals no basis for a claim of sex discrimination. Notably, this court is not required to accept as true any conclusory allegations made "upon information and belief" when there are no corresponding facts which would support those conclusions. *See, e.g., Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550  U.S. at 551, 557) (declining to take as true conclusory allegations made "upon information and belief"); *McCullough v. Board of Regents,* 623 F. App'x 980, 982-983 (11th Cir. 2015) (unpublished). At best, Joseph points to a failure on GT's part to provide WBB a budget that matched, dollar for dollar, the MBB budget. However, federal Title IX regulations explicitly recognize that a failure to do so does not equate to discrimination.[9] *See* 34 C.F.R. §106.41(c) ("unequal expenditures for male and female teams … will not constitute

---

[8] *See, e.g.,* Compl. ¶¶ 65-66, 77-78, 84-85, 91-92.
[9] And, as noted above, any action predicated on allegations that WBB received fewer resources than MBB is time-barred.

noncompliance with this section."). Joseph has not alleged any other facts which would plausibly suggest that her termination was the result of sex discrimination.

Importantly, in the motion to dismiss context, the Eleventh Circuit has noted that "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)). Joseph claims that, despite being the best women's basketball coach in Georgia Tech history, she was denied resources and ultimately terminated on the basis of anti-female animus. However, the obvious alternative explanation in this case, drawn from the allegations in the complaint itself, is that Joseph was an abusive coach and, following an external investigation which laid bare the extent of the problem, she was justifiably terminated. (*See* Compl., ¶¶ 11, 188, 190, 198; Exhibits C & D.) Additionally, because budgeting for a large athletic program at a public university is a complex endeavor, pointing to a simple difference in funding between two teams is not sufficient to plausibly allege discrimination on the basis of sex.

District Courts in this Circuit have regularly dismissed Title VII discrimination cases based on the plaintiff's failure to properly state a claim. *See,*

*e.g., Wright v. Aramark Corp.*, Case No. 1:13-cv-144, 2014 U.S. Dist. LEXIS 14073, *16-18 (M.D. Ga. 2014) (finding that plaintiff did not include sufficient factual allegations to state a claim for sex discrimination); *Davis v. O'Rourke*, Case No. 1:18-cv-00937, 2018 U.S. Dist. LEXIS 229089 (N.D. GA 2018); *Phillips v. City of Atlanta*, Case No. 1:15-cv-03616, 2016 U.S. Dist. LEXIS 132360, *36-41 (N.D. Ga. 2016) (plaintiff alleged "difficulty getting along with her supervisors and/or coworkers" and that she "perceived that she was treated poorly because of her race" but failed to allege facts that sufficiently demonstrated that any adverse actions were based on discriminatory animus); *Bacon v. Ga. Ports. Auth.*, Case No. 410-281, 2010 U.S. Dist. LEXIS 138934 (S.D. Ga. Dec. 17, 2010) adopted as modified by 2011 U.S. Dist. LEXIS 1293, 2011 WL 43504, at *1 (S.D. Ga. Jan 6, 2011) (citations omitted) (dismissing Title VII complaint where plaintiff alleges "neither direct-evidence facts … nor circumstantial-evidence facts"); *Daniels v. Costco Wholesale Corp.*, Case No. 1:14-cv-02585, 2014 U.S. Dist. LEXIS 158955, *12-16 (N.D. Ga. Oct. 3, 2014) adopted by 2014 U.S. Dist. LEXIS 158525 (N.D. Ga. Nov. 6, 2014) (dismissing Title VII claims where the plaintiff failed to allege facts which would plausibly suggest unlawful race discrimination).

**D.      Title VII does not recognize associational claims of the type Joseph seeks to assert.**

In Count Four of her Complaint, Joseph asserts a claim of discrimination on the basis of her association with a protected class.[10] Specifically, Joseph claims that "Title VII prohibits an employer from discriminating against any individual … because of her sex, or on the basis of a person's association with someone within a protected class." (Compl., ¶ 256.) This is not completely accurate. The statutory text of Title VII specifically provides that it "shall be an unlawful employment practice for an employer to … discriminate against any individual … *because of such individual's* race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Defendant BOR is unaware of any law in the Eleventh Circuit which supports an argument that Title VII protects employees on the basis of their association with a protected class when that claim is not also dependent on or related to the employee's own protected status.

Put another way: Joseph claims she was discriminated against because her players are women and because GT discriminates against women's basketball.

---

[10] Joseph has titled Count Four "Discrimination on the Basis of the Sex and Association with a Protected Class (Women) in Violation of Title VII…." The phrasing is somewhat confusing and, to the extent Joseph is asserting another claim of discrimination on the basis of *her own* sex, as opposed to the sex of her players, such a claim would be repetitive of Count III of the Complaint and the BOR reasserts its arguments with respect to that claim.

There are no allegations that Joseph would have been treated any differently if she were a male coaching a female sport. Presumably, if GT was disfavoring WBB because of the sex of the players, it would do so regardless of the sex of the coach. Joseph has not included any allegations which would indicate otherwise. This is fundamentally different than, for instance, a case involving interracial marriage, which is based on the discriminatory belief that one should not marry outside of one's own race and which necessarily involves an assessment of the plaintiff's own protected status. *See, e.g., Parr v. Woodmen of World Life Ins. Co.*, 791 F.2d 888 (11th Cir. 1986) (explaining that "where a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race.") (emphasis in original). Because Joseph's claim of associational discrimination is not in any way dependent on or related to her own protected status, Count IV is due to be dismissed.

### E.     Joseph fails to state a claim for retaliatory hostile work environment.

 In Count Thirteen of the Complaint, Joseph asserts a cause of action for retaliatory hostile work environment. To state a claim for a retaliatory hostile work environment, Joseph must allege facts sufficient to show "(1) that she engaged in a protected activity, (2) that after doing so, she was subjected to unwelcome harassment, (3) that the protected activity was a 'but for' cause of the harassment,

(4) that the harassment was sufficiently severe or pervasive to alter the terms of her employment, and (5) that the employer is responsible for the environment under either vicarious or direct liability." *Spivey v. Enter. City Bd. of Educ.*, No. 1:18-cv-427-SRW, 2019 U.S.  Dist. LEXIS 13580, at *16 (M.D. Ala. Jan. 29, 2019) (*citing Adams v. Austal*, U.S.A., L.L.C., 754 F.3d 1240, 1248-49 (11th Cir. 2014)). For purposes of this motion, the BOR focuses only on the fourth element. Because Joseph fails to allege sufficient facts to support a finding that she experienced harassment which was either severe or pervasive, her claim of a retaliatory hostile work environment is due to be dismissed.

When analyzing claims of hostile work environment, the Eleventh Circuit has held that "[t]he requirement that the harassment be 'severe or pervasive' contains an objective and a subjective component." *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)). "Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive." *Id.* Focusing on the objective severity of the alleged harassment, courts "consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a

mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller,* 277 F.3d at 1276; *see also Amenities, Inc. v. Julington Creek Plantation Cmty. Dev. Dist.*, 784 F. App'x 750, 753 (11th Cir. 2019) (unpublished) (examining facts which were insufficient to support a finding of "severe or pervasive" harassment); *Clark v. S. Broward Hosp. Dist.*, 601 Fed. App'x 886, 898-900 (11th Cir. 2015) (unpublished). In this case, Joseph fails to allege any conduct which could qualify as "severe" or "pervasive." Although she regularly refers to others' treatment of her as "hostile," she does not elaborate or provide any specific facts which would support her conclusory assertion. For instance, there are no allegations that anyone raised their voice to her, threatened her, or subjected her to humiliating or vulgar language. Although Joseph claims she received two baseless reprimands, those were issued in 2015, and 2016; hardly a frequent occurrence.[11] Nor does Joseph allege any acts that could be found to have unreasonably interfered with her job performance. While Joseph clearly faults GT for not providing her with leather furniture, first class flights, and the chance to travel via helicopter (*see, e.g.,* Compl., ¶¶ 56, 88-89), allegedly hampering her ability to recruit star players, this is not the type of "abusive" behavior that Title

---

[11] The BOR denies that these reprimands were baseless but, for purposes of this motion, recognizes that the Court must accepts these facts as true and construe them in the light most favorable to Joseph.

VII was designed to protect against.[12] Nor does Title VII guard against "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). The fact that Joseph and the WBB players occasionally had to walk outside to get to their practice facility (*see* Compl., ¶¶ 58, 64) is not "severe" or "pervasive." At worst, it is irritating. Even assuming everything in Joseph's complaint is true, nothing alleged rises to the level of "severe or pervasive" so as to support a claim of a hostile work environment.[13] *See Frizzell v. Delta Air Lines*, Case. No. 1:19-cv-

---

[12] As noted above, the allegations which appear to make up the bulk of Joseph's claim of retaliatory hostile work environment are, in addition to being insufficient to state a claim, time-barred.

[13] In contrast, cases involving hostile work environments based on sexual harassment or racial harassment often contain truly shocking factual bases. *See, e.g., Reeves v. C.H. Robinson Worldwide, Inc*., 594 F.3d 798 (11th Cir. 2010) (finding a hostile work environment where, "every single day," coworkers used such terms as "f–ing whore," "bitch," or "c–" and on at least one occasion displayed a pornographic image of a fully naked woman with her legs spread); *Ortiz v. Sch. Bd. of Broward Cnty*, 780 Fed. App'x 780 (11th Cir. 2019) (unpublished) (daily offensive comments and jokes about Puerto Ricans, including use of ethnic slurs such as "spic" and "wetback," combined with fact that supervisor refused to use plaintiff's name and called him slurs behind his back constituted hostile work environment); *Smelter v. S. Home Care Servs.*, 904 F.3d 1276 (11th Cir. 2018) (hostile work environment found when plaintiff showed she heard racist comments every day, that a coworker called her a "dumb black n–" and made comments about black people resembling "monkeys," being "lazy" and "the scum of the earth" and black women having "babies on welfare"); *cf. Mendoza v. Borden, Inc*., 195 F.3d 1238 (11th Cir. 1999) (finding no hostile work environment when a coworker rubbed his hip against the plaintiff's hip, made

1573, 2019 U.S. Dist. LEXIS 186699, *27-31 (N.D. Ga. 2019); *Rogers v. Shinseki*,

Case. No. CV-112-194, 2014 U.S. Dist. LEXIS 155942, *17-18 (S.D. Ga. 2014).

Accordingly, her complaint fails to state a claim for hostile work environment and

that count is due to be dismissed.

### F.   The Board of Regents is not party to any employment contract with Joseph.

In count Fourteen of the Complaint, Joseph brings a state law claim for

breach of contract against GTAA and the BOR. Because "the validity, nature,

construction, and interpretation of a contract are governed by the substantive law

of the state where the contract was made," Joseph's claims must be analyzed under

relevant Georgia law. *Lloyd v. Prudential Sec., Inc.*, 211 Ga. App. 248, 248, 438

S.E.2d 703 (1993). She cannot maintain a breach of contract action against the

BOR because the BOR was not party to any employment contract with her. Joseph

points to the October 10, 2014, offer letter and the October 20, 2014, contract as

---

sniffing noises when starting at the plaintiff's groin area, constantly followed and
stared at her "in a very obvious fashion", and commented "I'm getting fired up");
*Webb-Edwards v. Orange Cnty Sheriff's Ofc*, 525 Fed. 1013 (2008)(comments
made to plaintiff that she "looked hot" and should wear tighter clothes were
taunting and boorish, but not severely hostile or abusive, comment that supervisor
wanted to "eat [the plaintiff] for lunch" was isolated incident, not pervasive);
*Fortson v. Columbia Farms Feed Mill*, 34 F.Supp. 3d 1302 (M.D. Ga. 2014) (no
hostile work environment found where plaintiff identified twelve instances of
coworkers yelling at him, cursing at him, and calling him racial epithets over two
and a half years).

the two documents upon which she bases her claim. As explained below, neither of these documents represents a contract for employment between Joseph and the BOR.

> 1.     *The October 2014 offer letter is not a contract upon which Joseph can sue for breach.*

To constitute a valid contract, the parties must agree to all the material terms. *See* O.C.G.A. § 13-3-2; *Souza v. Berberian*, 342 Ga. App. 165 (2017). "[U]ntil each has assented to all the terms, there is no binding contract." O.C.G.A. § 13-3-2. In Georgia, the term of employment is an essential element of an employment contract. *Key v. Naylor, Inc.*, 268 Ga. App. 419, 423 (2004). Because the offer letter contains no set term of employment, there was no meeting of the minds as to all essential terms, and no contract was formed.

Even if the offer letter could somehow be construed as a "contract," Georgia is an at-will employment state and "an employment contract containing no definite term of employment is terminable at the will of either party". *Edwards v. Cent. Ga. HHS*, 253 Ga. App. 304, 305 (2002); O.C.G.A. § 34-7-1. "An employee has no entitlement to a certain term of employment unless a contract exists therefor." *Wheeling v. Ring Radio Co.*, 213 Ga. App. 210 (1994). Here, Joseph cannot maintain an action for breach of contract predicated on the October 10, 2014 offer

letter because the letter did not form a valid and enforceable contract between her
and the BOR.

### 2.   The October 20, 2014, contract is with GTAA, not the BOR.

Joseph also cannot maintain an action for breach of contract against the
BOR based on the October 20, 2014 contract with GTAA. "As a general rule, an
action on a contract …shall be brought … against the party who made it."
O.C.G.A. § 9-2-20(a). "[I]t is axiomatic that a person who is not a party to a
contract is not bound by its terms." *Primary Investments v. Wee Tender Care III*,
323 Ga. App. 196, 199 (2013) (citations and punctuation omitted). The October 20,
2014, contract is with GTAA, not the BOR. The plain language of the contract
states that it "is made by and between the Georgia Tech Athletic Association
(hereinafter referred to as the 'ASSOCIATION'), and MaChelle Joseph." GT, and,
by extension, the BOR, is not a party to the contract and cannot be sued for its
breach.

Further, although Joseph points to language in the contract which refers to
her status as an employee of Georgia Tech/the BOR (*see* Compl., ¶ 355), that
language does not indicate an agreement between GT/the BOR and Joseph to
perform any action. Rather, it is more properly considered a recitation of existing

facts. The contract is clearly between GTAA and Joseph; the BOR is a stranger to the October 20 contract and cannot be held liable for any alleged breach thereof.

## IV.   CONCLUSION

Joseph's Complaint includes over 300 "factual" allegations, yet, for the reasons stated above, she fails to state a claim for relief. This is the second Complaint she has filed regarding her employment and termination at Georgia Tech. *See* Case. No. 1:19-cv-003347-TCB (N.D. Ga.). Both times, she has been represented by sophisticated counsel who specialize in matters of discrimination and employment law. Because she has already had a second chance, following Defendants' motions to dismiss in the first action, to properly state a claim, she should not be afforded the opportunity to amend in this case. For these reasons, the BOR respectfully requests that this Court grant its Partial Motion to Dismiss Plaintiff's Complaint In Lieu of Answer and dismiss all claims addressed herein with prejudice.

Respectfully submitted, this 10th day of February, 2020.

CHRISTOPHER M. CARR        112505
Attorney General

ANNETTE M. COWART          191199
Deputy Attorney General

BRYAN K. WEBB                             743580
Senior Assistant Attorney General

_s/ Katherine P. Stoff_
KATHERINE POWERS STOFF        536807
Senior Assistant Attorney General

_s/ Courtney C. Poole_
COURTNEY C. POOLE                    560587
Assistant Attorney General

Please serve:

Katherine Powers Stoff
Senior Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone:  (404) 656-3393
Email: kstoff@law.ga.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(C) in 14-point Times New Roman type face.

This 10th day of February, 2020.

*s/ Katherine Powers Stoff*
Senior Assistant Attorney General

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 10, 2020, I electronically filed this

**DEFENDANT BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF**

**GEORGIA'S PARTIAL MOTION TO DISMISS PLAINTIFF'S**

**COMPLAINT IN LIEU OF ANSWER WITH BRIEF IN SUPPORT** with the

Clerk of Court using the CM/ECF system which will automatically send email

notification of such filing to the following attorneys of record:

Edward D. Buckley
edbuckley@buckleybeal.com
T. Brian Green
bgreen@buckleybeal.com
Lisa J. Banks
banks@kmblegal.com
Joseph E. Abboud
Abboud@kmblegal.com
*Counsel for Plaintiff*

Christopher Paul Galanek
chris.galanek@bclplaw.com
Danielle Conley
Danielle.conley@wilmerhale.com
Tania Faransso
tania.faransso@wilmerhale.com
*Counsel for Defendant Georgia Tech Athletic Association*

<u>*s/ Katherine Powers Stoff*</u>
Senior Assistant Attorney General
*Counsel for Defendants BOR, Peterson,
Stansbury, Lewis, and Engel*