## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| MACHELLE JOSEPH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOARD OF REGENTS OF | ) | |
| THE UNIVERSITY SYSTEM | ) | |
| OF GEORGIA; | ) | Civil Action No.: |
| GEORGIA TECH ATHLETIC | ) | 1:20-CV-00502-TCB |
| ASSOCIATION; | ) | |
| GEORGE PETERSON, in his individual | ) | |
| capacity; M. TODD STANSBURY, in his | ) | |
| individual capacity; MARVIN LEWIS, in | ) | |
| his individual capacity; and | ) | |
| SHOSHANNA ENGEL, in her individual | ) | |
| Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF MACHELLE JOSEPH'S CONSOLIDATED OPPOSITION TO THE MOTIONS TO DISMISS FILED BY ALL DEFENDANTS

In three separately filed motions, all Defendants have moved to dismiss the majority of counts in Plaintiff MaChelle Joseph's ("Joseph") Complaint, raising a barrage of legal theories hoping one will stick. Dkt. 3, 4, 6. For the reasons set forth below, Plaintiff respectfully requests that this Court deny all three motions in their entirety.

## I. INTRODUCTION AND RELEVANT BACKGROUND

On March 26, 2019, after sixteen years of success as the Head Coach of the Georgia Institute of Technology's ("GT") Women's Basketball Team, GT and the Georgia Tech Athletic Association ("GTAA") terminated Joseph's employment for discriminatory and retaliatory reasons. Dkt. 1-2 ¶¶ 1, 7-12, 188-94, 198-205. On December 23, 2019, Joseph filed suit against the Board of Regents of the University System of Georgia ("BOR") and the GTAA (the "Institutional Defendants"), and George Peterson, M. Todd Stansbury, Marvin Lewis, and Shoshana Engel (the "Individual Defendants"), collectively "the Defendants", in the Superior Court of Fulton County, Georgia. Joseph alleged violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 ("GWA"), the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, the Georgia Open Records Act, O.C.G.A. § 50-18-17 ("ORA"), and Georgia common law.

On February 10, 2020, after removing the case to this Court, the Defendants filed three separate Motions to Dismiss ( the "Motions") seeking to dismiss Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Eleven, Twelve, Thirteen, and Fourteen in Joseph's Complaint, Dkt. 1-2 ("Compl.").

In this consolidated Opposition, Joseph responds to the arguments set forth in the Motions.   Joseph first addresses the Institutional Defendants' attempts to dismiss Counts One, Two, Three, Four, Nine, Eleven, Twelve, Thirteen and Fourteen as legally and/or factually inadequate.   Next, Joseph addresses the Individual Defendants' attempts to dismiss Counts Five, Six, Seven, and Eight on the ground that she failed to adequately state a claim against them, and alternatively, that they are entitled to qualified immunity. As detailed below, the Defendants' arguments are without merit, and the Court should deny the Motions in their entirety.[1]

## II.   LEGAL ARGUMENT

### A. LEGAL STANDARD

In ruling on Defendants' 12(b)(6) Motions to Dismiss, the Court must accept as true all facts set out in Joseph's Complaint and must draw all factual inferences in her favor.   *Carruth v. Bentley*, 942 F.3d 1047, 1053 (11th Cir. 2019).   If the complaint contains sufficient factual matter, which accepted as true, states "a claim to relief that is plausible on its face," the complaint should not be dismissed.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1]In footnotes, Defendant BOR also suggests that Joseph's Complaint is a vague, impermissible "shotgun" pleading that fails to provide clear allegations.  Dkt. 3 at 9 fns. 2 & 3.   That argument is without merit.  Joseph's Complaint is a detailed roadmap that provides the Defendants extensive insight into the claims against them and the grounds upon which each claim rests.

## B.  THE DEFENDANTS' 12(b)(6) MOTIONS SHOULD BE DENIED.

### 1.  <u>The Institutional Defendants</u>

#### i.  TITLE IX:  COUNTS ONE, TWO, NINE, AND TWELVE

##### a)  Title VII Does Not Preempt Title IX.

BOR and GTAA seek to dismiss Counts One, Two, Nine and Twelve on the ground that Title VII is the "only appropriate vehicle" for claims of sex discrimination and retaliation in employment.[2]  The Court should reject this argument because it is contrary to prevailing legal authority.

The Supreme Court has explicitly recognized that an employee may pursue a private right of action for intentional sex discrimination in employment under Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 172-73 (2005).[3]  Further, the majority of U.S. Courts of Appeals to consider the issue have reached the same

---

[2] Dkt. 3 at 5-8; Dkt. 6 at 9.

[3] Although *Jackson* addressed the specific issue of whether Title IX implied a private right of action for "retaliation" in employment, the Court stated that it viewed employment "retaliation" as a "form of intentional sex discrimination encompassed by Title IX's private cause of action."  544 U.S. at 173-74.  This language makes clear that the Court's holding encompassed claims for both discrimination and retaliation in employment.  To interpret *Jackson* as only authorizing a private right of action for retaliation, would ignore the statutory text of Title IX and lead to the nonsensical result of employees being free to pursue retaliation claims under either or both Title VII and/or Title IX, but forced to pursue other types of sex discrimination claims only under Title VII.

conclusion.[4] *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 560 (3d Cir. 2017); *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017); *Ivan v. Kent State Univ.*, No. 94-4090, 1996 WL 422496, at *2 n.10 (6th Cir. July 26, 1996) (per curiam) (unpublished table decision); *Preston v. Virginia ex rel. New Review Cmty. Coll.*, 31 F.3d 203, 205-06 (4th Cir. 1994); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 896-97 (1st Cir. 1988). Courts have reached this conclusion even where the facts underlying the Title VII and Title IX claims overlap. *See, e.g., Lipsett*, 864 F. 2d 881 at 896-97; *Doe*, 850 F.3d 545 at 559-60; *Kelley v. Iowa State Univ. of Sci. & Tech.*, 311 F. Supp. 3d 1051, 1064 (S.D. Iowa 2018); *Fox v. Pittsburg State Univ.*, 257 F. Supp. 3d 1112, 1121-23 (D. Kan. 2017).

---

[4] Only the Fifth and Seventh Circuits have held that Title VII preempts Title IX. *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995) and *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 862 (7th Cir. 1996). Notably, both of these cases predate *Jackson*, and the Seventh Circuit has since found that Title IX in fact provides a private right of action for retaliation in employment. *Burton v. Board of Regents*, 851 F.3d 690, 695 (7th Cir. 2017). The Second, Ninth, and Eleventh Circuits have not yet ruled on the issue, though district courts in these circuits have permitted plaintiffs to pursue employment claims under Title IX. *See, e.g., Hauff v. State Univ. of New York*, No. 18CV7256DRHARL, 2019 WL 6498256, at *6-8 (E.D.N.Y. Dec. 3, 2019); *Hunt v. Washoe Cty. Sch. Dist.*, No. 318CV00501LRHWGC, 2019 WL 4262510, at *7 (D. Nev. Sept. 9, 2019); *Burch v. Young Harris Coll.*, No. 2:13-CV-64-WCO, 2013 WL 11319423, at *8 (N.D. Ga. Oct. 9, 2013); *Baker v. Tallulah Falls Sch., Inc.*, No. 2:05-CV-101-WCO, 2006 WL 8435973, at *5 (N.D. Ga. Aug. 14, 2006), *report and recommendation adopted*, No. 2:05-CV-101-WCO, 2006 WL 8435972 (N.D. Ga. Sept. 7, 2006).

BOR and GTAA attempt to distract from this precedent by citing to a string of district court cases that either predate *Jackson*,[5] or which are non-binding, unpublished decisions from other district courts.[6]  All of these cases parrot the same flawed policy argument advanced by BOR and GTAA – namely, that Title VII provides a comprehensive scheme to enforce discrimination in employment, and allowing an employee to also pursue the same claim under Title IX would undermine Title VII's technical and administrative requirements. Notably, the Supreme Court has repeatedly rejected such policy arguments, stating that Congress is free to pass statutes providing alternate remedies for the same misconduct.  *See N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 535 n.26 (1982) (holding that employment discrimination comes within Title IX's prohibition and finding the policy arguments regarding overlap between Title VII and Title IX irrelevant); *see also Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459 (1975) (same for race discrimination claims under Title VII and 42 U.S.C. § 1981).

---

[5] *Morris v. Wallace Community College Selma*, 125 F. Supp. 2d 1315, 1343 (S.D. Ala. 2001); *Gibson v. Hickman*, 2 F. Supp. 2d 1481, 1484 (M.D. Ga. 1998)*; Hazel v. School Bd. Of Dade Cnty.*, 7 F. Supp. 2d 1349, 1354 (S.D. Fla. 1998); *Baynes v. Baldwin Cnty Bd. of Educ.*, Case No. 96-1240, 1997 U.S. Dist. LEXIS 17486 (S.D. Ala. 1997).

[6] *Drisin v. Fla. Int'l Univ. Bd. of Trustees*, No. 1:16-CV-24939, 2017 WL 3505299, at *6 (S.D. Fla. June 27, 2017); *Carvalho-Knighton v. Univ. of S. Fla. Bd. of Trustees*, No. 8:14-CV-1097-MSS-TGW, 2015 WL 12938951, at *2 (M.D. Fla. Oct. 13, 2015); *Schultz v. Bd. of Trustees of Univ. of W. Fla.*, No. 306CV442-RS-MD, 2007 WL 1490714, at *2 n.4 (N.D. Fla. May 21, 2007); *Hankinson v. Thomas Cty. Sch. Dist.*, No. 6:04-CV-71 HL, 2005 WL 6802243, at *2 (M.D. Ga. Oct. 28, 2005).

Moreover, all of the cases relied upon by BOR and GTAA are derived from the holdings in *Lakoski v. James*, 66 F.3d 751 (5th Cir.1995) and *Waid v. Merrill Area Public Schools*, 91 F.3d 857 (7th Cir. 1996), cases decided by the Fifth Circuit and Seventh Circuit more than two decades ago and prior to the Supreme Court's decision in *Jackson*. As discussed at length by the Third Circuit in holding that Title VII does not preempt Title IX employment claims, *Lakoski* and *Waid* are not persuasive because they did not address the Supreme Court's decisions like *Johnson* and *Bell*, and were decided more than a decade before *Jackson*. *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 562-63 (3d Cir. 2017). Importantly, no circuit court since *Jackson* has followed the Fifth and Seventh Circuits and held that Title VII is the exclusive vehicle for employment discrimination and retaliation claims.

In sum, BOR's and GTAA's argument that Title VII preempts Joseph's Title IX claims is without merit and not supported by prevailing legal authority.

### b) GTAA is a Funding Recipient under Title IX.

GTAA seeks to dismiss Counts One, Two, Nine and Twelve on the ground that Joseph failed to sufficiently allege that GTAA is a funding recipient subject to Title IX.[7] This argument is baseless. Joseph sufficiently alleged that BOR ceded control of the GT

---

[7] Dkt. 6 at 9-11.

Athletic Department to GTAA and provided GTAA funding, thus making it a funding recipient subject to Title IX.

Title IX applies to "any education program or activity receiving Federal financial assistance."  20 U.S.C. §1681(a)(2001).  At the motion to dismiss stage, a factual showing that a recipient of Federal financial assistance has ceded control over one of its programs to a private entity, and provided that private entity funding, is sufficient to show that the private entity is a funding recipient subject to Title IX liability.  *Williams v. Bd. Of Regents of Univ. Sys. Of Ga.*, 477 F.3d 1282, 1294 (11th Cir. 2007); *see also Cmtys for Equity v. Michigan High Sch. Athletic Ass'n*, 178 F. Supp. 2d 805, 852 (2001).

Joseph sufficiently alleged that BOR, a recipient of Federal financial assistance, has ceded control over one of its programs, the Athletic Department, to GTAA and provided it funding.  Compl. ¶¶ 25-32.[8]  GTAA's Motion to Dismiss Counts One, Two, Nine and Twelve on this ground should be denied.

### ii.  TITLE VII:  COUNTS THREE, FOUR, AND THIRTEEN

### a)  Counts Three and Four are Not Time-Barred.

---

[8] It also bears noting that GTAA redacted its Exhibit A, which it improperly seeks to incorporate by reference, in accordance with the Family Educational Rights and Privacy Act of 1974, a statute that only applies to entities that receive federal funds.  Dkt 6 at 7, n. 5; 20 U.S.C. § 1232g(a)(3) (FERPA's restrictions apply an "educational agency or institution", which is defined as "any public or private agency or institution which is the recipient of funds under any applicable program.").

None of the discriminatory adverse actions for which Joseph seeks relief under Title VII are time-barred, and the Institutional Defendants' motion to dismiss Counts Three and Four on this ground should be denied.[9]

As detailed in Counts Three and Four, Joseph seeks relief for the following adverse actions: the disparate allocation of funding and resources to Joseph and the WBB team, an adverse action that continued throughout her employment up to her termination on March 26, 2019, Compl. ¶¶ 50-92, 156, 214, 251, 261; holding her to a higher standard of performance and conduct than similarly situated male coaches, a series of adverse actions that continued throughout her employment up to her termination on March 26, 2019, Compl. ¶¶ 126-27, 129, 131, 143-47, 169, 175, 188, 190-97, 200, 251, 261; and the termination of her employment on March 26, 2019, Compl. ¶¶ 251, 261.  All of these actions, which occurred on or after October 18, 2018, were properly exhausted in her Charge of Discrimination filed with the Equal Employment Opportunity Commission, and are not time-barred.

While Joseph alleges other acts of discriminatory conduct that occurred prior to October 18, 2018, the Institutional Defendants incorrectly allege that these adverse

---

[9] Dkt. 3 at 8-10; Dkt. 6 at 11-12.  For Counts Three and Four, Joseph concedes that she may seek relief under Title VII for only those adverse actions occurring on or after October 18, 2018.

actions cannot "form any part" of Counts Three and Four.  Dkt. 3 at 10.  These older acts of discrimination constitute background evidence to show the Defendants' discriminatory animus.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (statute of limitations does not "bar an employee from using the prior acts as background evidence in support of a timely claim."); *see also Holland v. Sebelius*, No. 1:13-CV-609-TWT-LTW, 2015 WL 13691436, at *3 (N.D. Ga. May 12, 2015), *report and recommendation adopted*, No. 1:13-CV-609-LMM-LTW, 2015 WL 13691883 (N.D. Ga. June 4, 2015) (stating employee may use unexhausted discriminatory acts to help establish circumstantial case of discrimination).[10]

---

[10] The Institutional Defendants have not moved to dismiss Joseph's Title VII retaliation claim (Count Ten), and accordingly Joseph does not construe their timeliness argument to apply to that claim.  However, to the extent the Court interprets the Institutional Defendants' timeliness argument differently, Joseph again concedes that, for Count Ten, she may seek relief under Title VII for only those adverse actions occurring on or after October 18, 2018.  However, Joseph also notes that, as with older acts of discrimination, the allegations concerning the Defendants' older acts of retaliation can still form part of her Title VII claim in so far as they can be used as relevant background evidence to support her retaliation claim.  *Jones v. Suburban Propane, Inc.*, 577 F. App'x 951, 955 (11th Cir. 2014) ("pattern of antagonism" following protected activity is evidence of causation for later retaliatory adverse action); *Joyner v. City of Atlanta*, No. 1:16-CV-1780-TWT-LTW, 2018 WL 1442931, at *5 (N.D. Ga. Feb. 23, 2018), *report and recommendation adopted*, No. 1:16-CV-1780-TWT, 2018 WL 1427941 (N.D. Ga. Mar. 22, 2018) (same)

**b) Joseph Stated a Claim for Sex Discrimination.**

BOR and GTAA seek to dismiss Count Three claiming that Joseph failed to adequately allege that they took adverse actions against her on the basis of her sex, thereby failing to state a claim for sex discrimination under Title VII.[11] This argument is without merit. Joseph has sufficiently alleged that the Institutional Defendants took multiple adverse actions against her that suggest intentional discrimination based on sex.

In order to state a claim under Title VII, a plaintiff must allege sufficient facts "to plausibly suggest intentional discrimination." *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017). This only requires the plaintiff to provide "enough factual matter (taken as true) to suggest" intentional discrimination. *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Muhammad v. Steve Harvey Radio Network, Inc.*, No. 1:18-CV-04280-CC-AJB, 2019 WL 5579548, at *2 (N.D. Ga. Apr. 22, 2019), *report and recommendation adopted*, No. 1:18-CV-4280-CC-AJB, 2019 WL 5586548 (N.D. Ga. May 10, 2019). It does not require a plaintiff to make out a prima facie case of discrimination. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-15 (2002).

Joseph has alleged more than enough factual matter (taken as true) to suggest that the Institutional Defendants undertook each adverse act for which she seeks relief based

---

[11] Dkt. 3 at 11-16; Dkt. 6 at 11-12.

on sex.[12]   First, for Joseph's claim that the Institutional Defendants discriminated against her based on sex through the disparate allocation of funding and resources, Joseph alleged facts showing that, for the entirety of her tenure, the Institutional Defendants paid similarly situated male employees, namely the Men's Basketball ("MBB") Head Coaches, substantially more than her to perform similar work, and provided each of the MBB Head Coaches with more resources to perform the same tasks in a manner that adversely affected the terms and conditions of her employment.   Compl. ¶¶ 50-92, 117, 156, 214; *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1187-88 (11th Cir. 2019) (holding that beneficial treatment of employees outside of plaintiff's protected class was circumstantial evidence of discrimination, even if the employees were not similarly situated comparators).[13]

---

[12] BOR baselessly claims that Joseph's sex discrimination claims are premised entirely on conclusory statements and statements made on "information and belief."  Dkt. 3 at 4.  In fact,  Joseph has pled an abundance of very specific facts to support all of her claims, including her Title VII claims,  relying on facts alleged based on "information and belief" on a only handful of occasions, and where she does, those allegations are rendered plausible by well-pleaded allegations.  *See Interra Int'l, LLC v. Al Khafaji*, No. 1:16-CV-1523-MHC, 2017 WL 4866266, at *10 n.5 (N.D. Ga. Mar. 21, 2017) (accepting allegations made "on information and belief" as true because they were rendered plausible by plaintiff's well-pleaded allegations); *see also* n. 26, *infra*.

[13] BOR claims that "any action predicated on allegations that WBB received fewer resources than MBB is time-barred." Dkt. 3 at 14 n. 9.  This assertion is without a legal basis and is misleading.  Joseph concedes that, for Counts Three and Four, she may only seek relief under Title VII for acts occurring on or after October 18, 2018.  However, the Institutional Defendants allocated less money and resources to Joseph and the WBB

Second, for her claim that the Institutional Defendants held her to a higher standard of performance and conduct than similarly situated male employees, Joseph alleged facts showing a long history of the Institutional Defendants scrutinizing Joseph for conduct which other male Head Coaches engaged in with impunity, including suspending her employment and launching an expansive career ending investigation based on her use of allegedly aggressive and demanding coaching practices that male coaches regularly employ without consequence. *Id.* ¶¶ 12, 126-27, 129, 131, 143-47, 169, 175, 188, 190-97, 200, 251, 261. Joseph also provided facts showing that when she complained about this discriminatory treatment, the Institutional Defendants took no action, demonstrating their approval for and ratification of the double standard. *Id.* ¶¶ 126-28, 131-36, 157, 171, 173, 181, 210.

---

during the entirety of her employment up to her termination. Accordingly, all instances of disparate allocation of funding and resources that occurred between October 18, 2018, and March 26, 2019, constitute timely adverse actions for purposes of Counts Three and Four. Further, for the reasons discussed in Section II (B)(1)(ii)(a), all instances of disparate allocation of funding and resources that occurred prior to October 18, 2018, may be considered as background evidence of discrimination. Finally, in Counts One and Two, Joseph alleges that the Institutional Defendants also discriminated against her under Title IX through this same conduct, *i.e.* disparate funding and resources. The statute of limitations under Title IX is two years, *Long v. Fulton Cty. Sch. Dist.*, 807 F. Supp. 2d 1274, 1282 (N.D. Ga. 2011), and accordingly, all instances of disparate allocation of funding and resources to Joseph and the WBB team that occurred between December 23, 2017, and March 26, 2019, constitute timely adverse actions for purposes of Joseph's Title IX discrimination claims.

Third and finally, for her claim that the Institutional Defendants terminated her employment based on sex, Joseph alleged facts showing that in terminating her employment, the Institutional Defendants treated her differently than a similarly situated male employee, Pastner. *Id.* ¶¶ 211-12; *Peirick v. Indiana Univ. Purdue Univ. Indianapolis Athletics Dept.*, 510 F.3d 681, 690 (7th Cir. 2007) (finding disparate disciplinary treatment of male and female coaches sufficient to support female coach's sex discrimination claim under Title VII).   She also alleged that the Institutional Defendants' justification for her suspension and eventual termination was both pretextual and driven by a pernicious sex stereotype:  female coaches are reprimanded for being aggressive and demanding, while male coaches are not.  *Id.* ¶¶ 12, 200, 251, 261.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (holding evidence that employer's proffered justification is false is circumstantial evidence of discriminatory intent); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989) ("[A]n employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender.").[14]

---

[14] BOR tries to distract from these facts by asking the Court to accept an alternative explanation for its actions in terminating Joseph, *i.e.* "that she was an abusive coach, and she was justifiably terminated."  Dkt. 3 at 15.  Joseph has alleged, however, that this alternative explanation is just a pretext for the Defendants' discriminatory and retaliatory actions.  At the motion to dismiss stage, the Court must credit Joseph's allegations as

Accepting Joseph's allegations as true, and construing the facts in the light most favorable to Joseph, Joseph has provided enough factual matter to suggest intentional discrimination. *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641-42 (11th Cir. 2018) (denying motion to dismiss discrimination claim where plaintiff alleged that defendant fabricated reason for her termination and exhibited pattern of discrimination); *Castillo v. Allegro Resort Mktg.*, 603 F. App'x 913, 918-19 (11th Cir. 2015) (denying motion to dismiss sex discrimination claim where superiors exhibited discriminatory animus against plaintiff and targeted her with mistreatment and disciplinary warnings in an effort to get her fired); *Morris v. Fordham Univ.*, No. 03 Civ. 0556 (CBM), 2004 WL 906248 at *3 (S.D.N.Y. Apr. 28, 2004) (denying motion to dismiss coach's employment discrimination claim alleging disparate treatment because of inferior resources and opportunities provided to the women's basketball team relative to the men's basketball team).

### c) Title VII Recognizes Associational Discrimination Claims.

BOR's and GTAA's argument that Title VII does not encompass the associational discrimination claims, recited in Count Four should be rejected.[15]

---

true, which when done, completely undermines the Institutional Defendants' analysis of Joseph's Title VII claim.

[15] The Institutional Defendants do not move to dismiss Joseph's Title IX associational discrimination claims on this ground. Courts have squarely held that employment

Title VII's prohibition on discrimination extends to employees who are discriminated against because of their association with a member of a protected class or because of their advocacy on behalf of members of a protected class. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 513-14 (6th Cir. 2009); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 575 (6th Cir. 2000). *Barrett* and *Johnson* make clear that whether the association with members of a protected class reflects on the plaintiff's membership status is irrelevant: "[T]he key questions are whether Plaintiffs were discriminated against, and whether the reason for the discrimination was their advocacy for protected employees." *Barrett*, 556 F.3d at 514; *see also Johnson*, 215 F.3d at 575.

Joseph has sufficiently alleged that she was discriminated against because of her association with and advocacy for her female coworkers and students, Compl. ¶¶ 50-92, 156, 169-74, 195-97, 200, 214. The Institutional Defendants' motion to dismiss Count Four on this ground should be denied.

### d) Joseph Has Alleged Severe or Pervasive Retaliatory Harassment.

BOR's and GTAA's Motions to Dismiss Joseph's retaliatory hostile work environment claim (Count Thirteen) on the grounds that she does not allege sufficiently

---

discrimination against a coach based on the gender of the coach's players is actionable under Title IX. *See Morris*, 2004 WL 906248, at *3.

severe or pervasive harassment should be denied.[16]  Joseph's Complaint is replete with facts showing a work environment that was permeated with both severe and pervasive retaliatory harassment.

Those facts include:   During the last three years of her employment, and in response to her complaints of discrimination, the Defendants subjected Joseph to a pattern of ongoing harassment that included issuing her a series of unwarranted reprimands, disciplinary actions, and investigations on baseless and frequently discriminatory grounds, Compl. ¶¶ 107-08, 122-30, 179-80, 188-200; subjecting her staff and her team to constant unwarranted compliance investigations, *id.* ¶¶ 151-53, 158-60, 163-64, 169-70, 182-84; consistently treating Joseph in an aggressive, hostile, and adversarial manner, and mocking her complaints of discriminatory treatment, *id.* ¶¶ 103-05, 116, 129, 157-58, 174-75, 185; engaging in internal discussions about how to "get rid" of her, *id.* ¶¶ 137-39; and unreasonably refusing to engage in discussions about extending her contract on reasonable terms, *id.* ¶¶ 139-41, 147-49, 167-68, 182-84.

The harassment became more acute after Joseph complained to Human Resources on February 3, 2019, and submitted her February 8, 2019, complaint of discrimination and retaliation.  *Id.* ¶¶ 178-79, 181.  In the three weeks after she submitted that complaint, Stansbury abruptly transferred her reporting line to Joeleen Akin – who had previously

---

[16] Dkt. 3 at 18-22; Dkt. 6 at 12.

targeted Joseph for spurious discipline about which Joseph had complained, *id.* ¶¶ 120-22, 126-31, 180; the Institutional Defendants failed to inform Joseph that she and her team had been cleared of NCAA violations and did not honor their promise to renew her contract after the NCAA investigation finished, *id.* ¶¶ 182-84; and Stansbury, Mark Rountree, and Ms. Akin abruptly rescinded a prior agreement to allow Joseph's sophomores to live off-campus without reason or explanation mere days before BOR's housing deadline, *id.* ¶¶ 186-87.[17]

This pattern of ongoing harassment interfered with the terms and conditions of Joseph's employment, including by interfering with her ability to do her job, *id.* ¶¶ 51, 64, 76, 83, 90, 214, 339, 350; creating dissent and anxiety within her team, *id.* ¶¶ 158, 176-77; causing her significant ongoing anxiety, *id.* ¶ 215, 339, 350; requiring her to expend significant time and money on legal fees to defend against these spurious accusations, *id.* ¶¶ 131, 153, 172, 187, 339, 350; intimidating her staff and prompting them to complain that, *inter alia*, it felt like various departments were "targeting" WBB, *id.* ¶ 158; and creating an environment in which Joseph could not speak out for fear that she, her players, or her staff would be targeted further.  *Id.* ¶¶ 166, 170, 339, 350.

---

[17] For Counts Twelve and Thirteen, because at least one act contributing to the hostile work environment occurred within the limitations period, all prior acts contributing to the environment are actionable.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-17 (2002).  Thus, the allegations upon which Joseph relies to support Counts Twelve and Thirteen are not time-barred.

Given the frequency of the retaliatory conduct and its significant interference with Joseph's ability to perform her job, the Complaint plausibly alleges harassment that was sufficiently severe or pervasive. *See Gowski v. Peake*, 682 F.3d 1299, 1313-14 (11th Cir. 2012); *Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1137-38, 1145 (M.D. Fla. 2016); *Bowman v. City of Birmingham*, No. 2:18-CV-364-AKK, 2018 WL 3368860, at *4 (N.D. Ala. July 10, 2018); *Stubbs v. Compass Bank*, No. 2:18-CV-00661-RDP, 2018 WL 5084860, at *5 (N.D. Ala. Oct. 18, 2018); *Windham v. Sessions*, No. CV 516-083, 2017 WL 2791178, at *1, 4 (S.D. Ga. June 27, 2017).

### iii.  BREACH OF CONTRACT:  COUNT FOURTEEN

#### a)  The Court Should Exclude GTAA's Exhibit A.

In its Motion to Dismiss Joseph's breach of contract claim (Count Fourteen), GTAA seeks to incorporate and rely on the inflammatory and disputed report prepared by Littler Mendelson ("Littler Report") that the Institutional Defendants used to justify Joseph's termination.[18]   The Littler Report is neither central to Joseph's claims nor undisputed, and it cannot be incorporated into the pleadings by reference.

Matters outside the pleading may only be considered on a 12(b)(6) motion – without converting the motion to dismiss to a motion for summary judgment – if "the documents attached are central to plaintiff's claim and their authenticity is not disputed."

---

[18] Dkt. 6 at 6-7 n. 4, Ex. A; *see also* Dkt. 6 at 14-16.

*Canty v. Fry's Electronics, Inc.,* 736 F. Supp. 2d 1352, 1370 (N.D. Ga. 2010) (*citing Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002); *Harris v. Ivax Corp.*, 182 F.3d 799, 802, n. 2 (11th Cir. 1999)).

While GTAA claims, without reference to any legal authority, that the Littler Report is "central" to Joseph's claims because she "heavily relies" on it to argue there was no "Good Cause" for her termination, its argument is baseless. "Central to the claim" in this context means that reviewing the document and its contents are necessary for the court to assess the sufficiency of the plaintiff's allegations, such as "relationship-forming contracts" or other core documents. *See SFM Holdings v. Banc of Am. Sec.*, 600 F.3d 1334, 1337 (11th Cir. 2010) (holding contract between parties absolving defendant from any fiduciary duty as to the contract central to plaintiff's breach of fiduciary duty claim); *see also Horsely v. Feldt*, 304 F.3d at 1133-36 (holding newspaper article showing content and context of allegedly defamatory statements central to defamation claim); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69, 1372-73 (11th Cir. 1997) (holding insurance plan documents central to claim that insurance plan was a regulated "group health plan").

The Littler Report does not constitute the "core of the parties' contractual relationship." Nor does it constitute the "core" of Joseph's allegation that GTAA

breached the employment contract by terminating her without Good Cause.[19]  Rather, it embodies one of the primary factual disputes at issue in this case – namely, whether the Defendants manufactured and/or purposefully exaggerated the allegations about Joseph's coaching practices as a pretext to justify unlawfully terminating her employment for discriminatory and/or retaliatory reasons, or whether Joseph actually engaged in unacceptable coaching practices that warranted termination.  *Choate Constr. Co. v. Am. Cas. Co. of Reading, Pennsylvania*, No. 1:04-CV-1376-JTC, 2006 WL 8431450, at *3 (N.D. Ga. July 14, 2006) (holding that documents that "raise points of material factual dispute" are not "central" to a complaint and "are considered outside the scope of plaintiff's pleadings for matters beyond the plaintiff's specific reliance").

Because the Littler Report is not central to Joseph's claims and raises points of material factual dispute,[20] the Court should either exclude Exhibit A or not consider it in ruling on GTAA's 12(b)(6) Motion to Dismiss.  If the Court considers the Littler Report, then GTAA's Motion to Dismiss must be treated as a motion for summary judgment,

---

[19] In reality, the Defendants are the ones who rely on the Littler Report as central to their defenses.  *Compare* Compl. ¶¶ 198-200, 206 (making limited, vague and passing references to the Littler Report, making clear that Joseph believes that the Littler Report was a pretextual sham) *with* Dkt. 3 at 15; Dkt 4. at 21, Dkt 6. at 7, 15 (relying heavily on Littler Report and presenting facts contained in Littler Report as absolute truths).

[20] Plaintiff anticipates the author of this hotly disputed report will be deposed and subjected to cross examination.

which should be denied (because there are obviously genuine issues of material fact regarding the reasons for Joseph's termination), or stayed as the parties have not had a reasonable opportunity to conduct discovery and obtain all material pertinent to such a motion. *See Evans v. Rhodes*, 735 F. App'x 986, 988 (11th Cir. 2018) (internal citation omitted); *Choate Constr. Co.*, 2006 WL 8431450, at *3; *see also* Fed. R. Civ. P. 12(d).

### b) Joseph Pled a Breach of Contract.

Joseph alleges in Count Fourteen[21] that GTAA, in retaliation for her ongoing complaints of sex discrimination, undertook a "course of conduct that was obviously intended to isolate Coach Joseph and ultimately end her employment" for unlawful reasons, *i.e.,* without Good Cause. Compl. ¶¶ 174; 188-194, 198-200, 206, 355-59.

While GTAA may dispute the allegations in the Complaint that the Littler Report was the result of a sham investigation undertaken for the pre-textual purpose of hiding the Defendants' discriminatory and retaliatory motives, the legitimacy and accuracy of the Littler Report is a matter of factual dispute that is not appropriate for resolution on a motion to dismiss. Accepting all the Complaint's allegations as true, and construing the facts in favor of Joseph, she has sufficiently alleged that GTAA breached her contract by terminating her employment without Good Cause.

---

[21] Dkt. 6 at 14-16.

### c)  BOR was a Party to Joseph's Employment Contract.

BOR seeks to dismiss Count Fourteen arguing that Joseph cannot maintain a breach of contract action against it because it was not a party to any employment contract with her.[22]   To the contrary, Joseph and BOR formed a valid contract through their agreement to be bound by the terms of the Offer Letter (Compl. Ex. A) and Employment Contract (Compl. Ex. B).

In Georgia, "a valid written contract may be formed when there are multiple signed, contemporaneous agreements between the parties which demonstrate their intent to enter into a binding contract and the individual documents, considered together, include all of the necessary terms of a contract."  *Bd. of Regents of the Univ. Sys. of Georgia v. Doe*, 278 Ga. App. 878, 881 (2006).

Here, a review of the negotiation and content of the Offer Letter and Employment Contract make clear that these two documents included all of the necessary terms governing Joseph's employment and evidence the intent of Joseph, BOR, and GTAA to be bound by these collective terms:

On October 10, 2014, BOR extended Joseph an Offer Letter signed by then BOR/GT Director of Athletics Michael Bobinski setting forth many of the essential terms of Joseph's employment as GT WBB Head Coach, including her base salary, job duties,

---

[22] Dkt. 3 at 22-25.

and other rules governing her employment. Compl. Ex. A, ¶¶ 1-5. The Offer Letter promised that GTAA would provide Joseph a "formal contract" that guaranteed "supplemental compensation and additional benefits" to those outlined in the Offer Letter. *Id.* at 1. On October 20, 2014, Joseph signed the Offer Letter thereby assenting to its terms. *Id.* at 2.

On October 20, 2014, the same day Joseph accepted the Offer Letter, GTAA, "in furtherance of its mission of supporting" BOR/GT, entered into the Employment Contract with Joseph, with three BOR/GT employees – Bobinski, Lewis, and Peterson – signing on behalf of GTAA. Compl. Ex. B at 1, Witnesseth, 13, Entire Agreement. The Employment Contract set forth the remaining essential terms governing Joseph's employment as GT WBB Head Coach, including providing for the supplemental compensation and additional benefits BOR promised Joseph in the Offer Letter. *Id.* at Article I, III. In addition to these terms, the Employment Contract also established the value of the base salary BOR was to pay Joseph during her employment as GT WBB Head Coach. *Id.* at 1, Article I. It further provided that the Employment Contract could only be terminated by joint action by BOR and GTAA. *Id.* at 9, Article VII (stating that "the Contract will terminate" if BOR terminated Joseph's employment as GT's WBB Head Coach *and* the President and Chairman of GTAA determined that "Good Cause" existed for such termination).

24

Against this backdrop, it is clear that these two signed, contemporaneous agreements together included the necessary terms governing Joseph's employment as GT WBB Head Coach, and that, together, they formed a valid written contract to which BOR was a party.  Indeed, it is hard to understand how BOR claims to be a "stranger" to the Employment Contract, Dkt. 3 at 25, in the face of evidence that it complied with its very terms, including paying Joseph the base salary set forth in Article I of the Employment Contract and executing the protocol required to terminate the Employment Contract for "Good Cause."  *See* Compl. Ex. C and D.[23]

Because the Offer Letter and Employment Contract together cover all of the essential terms of Joseph's employment with the Institutional Defendants and evince BOR's intent to be bound by their terms, BOR was a contractual party bound by the termination restrictions contained in the Employment Contract.

### iv.  GEORGIA WHISTLEBLOWER ACT:  COUNT ELEVEN

### a)  GTAA is a "Public Employer" under the GWA.

GTAA seeks to dismiss Count Eleven arguing that it is not an "employer" under the GWA because it does not "employ or pay the salary" of any individual, or

---

[23]  Joseph is not conceding that BOR or GTAA had Good Cause to terminate the Employment Contract; she is only noting that the Employment Contract's termination provision required action by BOR and BOR effectuated its termination of Joseph's employment through the process provided for in the Employment Contract.

alternatively, that it is not a "public employer" subject to liability under the GWA.[24] Both arguments fail.

First, GTAA can be held liable under the GWA as Joseph's "employer." The GWA does not require that an entity "employ or pay the salary" of an individual to be considered an "employer" subject to liability under the GWA. Rather, "employer" under the GWA includes any "agency of the state which employs *or* appoints a public employee." O.C.G.A. § 45-1-4(a)(4)(emphasis added). As discussed herein, *infra* at 27-28, GTAA is an agent of the state, and as evidenced by its Employment Contract with Joseph, it appointed Joseph to work as a public employee, *i.e.*, as Head WBB Coach of GT. *See* Compl. Ex. B at 1, Witnesseth. Accordingly, GTAA qualifies as an "employer" under the GWA.

Further, even if GTAA did not "appoint" Joseph, she has sufficiently alleged that GTAA was her "employer" under Georgia law. In Georgia, whether an employment relationship exists depends on whether the employer "has the right to control the time, manner, means, and method of executing the work, and whether the master has the right to discharge the servant." *MCG Health, Inc. v. Nelson*, 270 Ga. App. 409, 413 (2004) (internal citations and quotations omitted); *cf. Larmon v. CCR Enterprises*, 285 Ga. App. 594, 595 (2007). Joseph alleged an abundance of facts showing that GTAA controlled

---

[24] Dkt. 6 at 13-14.

the time, manner, and method of executing her work, and had the ability to discharge her. Compl. ¶¶ 41-48.

Second, Joseph has sufficiently alleged that GTAA is also a "public" employer as defined by the GWA.  "Public employer" under the GWA includes any "agency of the state which employs or appoints a public employee." O.C.G.A. § 45-1-4(a)(4).  Although GTAA is a non-profit corporation, Joseph has sufficiently alleged that it was functioning as an agent of the BOR.  Compl. ¶¶ 26, 28, 38, Ex. B at 13 (alleging facts showing that GTAA, on behalf of and with financial support from BOR, administered the GT Athletic Department for BOR).

Notably, both this Court and the Supreme Court of Georgia have held that the University of Georgia Athletic Association – which has a substantially similar relationship to the University of Georgia as GTAA has to GT – is a public entity despite its nominally private status based on similar facts as alleged here. *Harrick, Jr. v. Bd. of Regents of the Univ. Sys. of Georgia*, No. CIV.A.1:04CV00541-RW, 2006 WL 870311, at *3 (N.D. Ga. Mar. 30, 2006) (citing *Braswell v. Bd. of Regents of Univ. Sys. of Ga.*, 369 F. Supp. 2d 1371, 1376 (N.D. Ga. 2005)) (holding UGAA is state entity entitled to sovereign immunity because it existed to further the interest of UGA, was subject to oversight of UGA, and was staffed with UGA officials); *Macon Tel. Pub. Co. v. Bd. of*

27

*Regents of Univ. Sys. of Georgia*, 256 Ga. 443, 444 (1986) (holding UGAA is a "state agency" subject to the Georgia Open Records Act).

Accepting all facts as true, Joseph has sufficiently alleged that GTAA is a "public employer" subject to the GWA.

### 2.  <u>The Individual Defendants</u>

#### i.  FOURTEENTH AMENDMENT: COUNTS FIVE, SIX, SEVEN AND EIGHT

The Individual Defendants seek to dismiss Counts Five, Six, Seven, and Eight on the ground that Joseph failed to sufficiently allege a claim of intentional sex discrimination, or alternatively that the Individual Defendants are entitled to qualified immunity.  Their arguments should be rejected.  Joseph has shown that each Individual Defendant took adverse actions against her based on her sex, and that none of them are entitled to qualified immunity.[25]

##### a)  Joseph Stated a Claim for Intentional Sex Discrimination.

In order to state a § 1983 claim for sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, Joseph must plead facts that plausibly

---

[25] Joseph concedes that she may seek relief under 42 U.S.C. § 1983 for only those adverse actions occurring on or after December 23, 2017. Joseph may, however, rely on acts prior to this date as background evidence of discrimination.  *See Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014, 1026-27, 1036 n.18 (7th Cir. 2003) (collecting cases and holding *Morgan*, 536 U.S. 101 (2002), applies to claims brought under 42 U.S.C § 1983).

allege each of the Individual Defendants acted with "discriminatory intent" to deprive her of her constitutional right to be free from sex discrimination in employment. *Glenn v. Brumby*, 663 F.3d 1312, 1320 (11th Cir. 2011); *Randall v. Scott*, 610 F.3d 701, 709-710 (11th Cir. 2010); *see also Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1507 (11th Cir. 1995).

"Where the underlying facts are the same, disparate treatment claims under §1983 follow the same analytical framework as claims under Title VII." *Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 954 (11th Cir. 2019). Thus, Joseph need not plead a prima facie case of discrimination to survive a motion to dismiss. *Swierkiewicz,* 534 U.S. at 511-15. Instead, she is only required to provide "enough factual matter (taken as true) to suggest" intentional discrimination. *Davis*, 516 F.3d at 974; *Evans v. Georgia Dep't of Behavioral Health & Developmental Disabilities*, No. CV 415-103, 2018 WL 4610630, at *5 (S.D. Ga. Sept. 25, 2018) (applying *Davis* to Section 1983 claim).[26] Joseph has easily made this showing.

---

[26] Contrary to claims in the Individual Defendants' brief, the Court may consider Joseph's allegations made on information and belief because her well-pleaded allegations are sufficient to make those allegations plausible. *See Interra Int'l, LLC v. Al Khafaji*, No. 1:16-CV-1523-MHC, 2017 WL 4866266, at *10 n.5 (N.D. Ga. Mar. 21, 2017) (accepting allegations made "on information and belief" as true because they were rendered plausible by plaintiff's well-pleaded allegations). For instance, given Lewis' ability to control Joseph and WBB's budget, his resistance to her requests for nondiscriminatory treatment, and his overt preference for MBB over WBB, the

### i.    Counts Five and Eight:   Defendant Stansbury and Peterson[27]

Stansbury and Peterson seek to dismiss Counts Five and Eight on the ground that

Joseph failed to present any facts showing that either of them acted with any

discriminatory intent toward women when terminating her employment.[28]   This argument

is without merit.

---

allegations that Lewis, because of discriminatory animus, refused to use his authority to rectify the discriminatory resource allocation are plausible. Similarly, as discussed in Section II (B)(2)(i)(a)(i), Stansbury and Peterson were in positions of power, were aware of Joseph's repeated complaints of discriminatory treatment, yet failed to act to rectify Joseph's complaints. Instead, they exhibited preferential treatment toward Coach Pastner, rendering plausible the Complaint's allegations of discriminatory animus.

[27] Dkt. 4 at 14-15.

[28] In a footnote, Peterson and Stansbury also seek to dismiss Joseph's discrimination claim based on "disparate funding" on the ground that she failed to show an adverse action and failed to plausibly allege that she received disparate funding based on sex. Dkt. 4 at 13, n 10.  For the reasons set forth in Section II(B)(2)(i)(a)(ii), *infra,* "disparate funding" is an actionable adverse action, and Joseph has adequately pled that this adverse action was undertaken based on sex.    Joseph has also pled facts showing Stansbury and Peterson directly participated in this form of discrimination against her.  Compl. ¶¶ 19-20, 65, 77, 84, 91.   Further, she has also alleged facts showing that Stansbury and Peterson were, alternatively, aware of the discrimination, had the power to correct, yet failed to act. *Id.* ¶¶ 163-64, 171-73, 181, 200-202; *Keating v. City of Miami*, 598 F.3d 753, 762, 765 (11th Cir. 2010); *Cross*, 49 F.3d at 1508 (affirming § 1983 judgment against supervisors who were on notice of subordinate's discrimination against female employees, yet failed to take corrective action); *Davis v. City of Atlanta*, No. 1:16-CV-2037-TWT-JKL, 2017 WL 1376856, at *8 (N.D. Ga. Mar. 2, 2017) (denying motion to dismiss § 1983 claim against supervisor where he "knowingly failed to correct" sex-based pay discrimination).

Joseph has alleged more than enough factual matter (taken as true) to suggest that Peterson and Stansbury acted with discriminatory intent to terminate her employment. For Stansbury, Joseph has alleged a convincing mosaic of evidence showing that Stansbury repeatedly treated her less favorably than similarly situated males. This treatment included Stansbury authorizing the disparate allocation of resources to Joseph relative to Pastner despite the fact that both coaches had substantially similar duties, Compl. ¶¶ 50, 65, 77, 84, 91; refusing to engage in contract negotiations with her and failing to support her during an NCAA investigation into WBB (that was later found baseless), while at the same time giving Pastner a lucrative contract extension for achieving the same level of success as she had and supporting him while MBB was under NCAA investigation, *Id.* ¶¶ 143-49, 167-68, 182-84; sanctioning compliance inquiries into her program for conduct that Pastner engaged in without consequence, and when Joseph complained to Stansbury about this discriminatory treatment, taking no action to address her concerns, showing his approval and ratification of the double standard. *Id.* ¶¶ 151, 163-64, 171, 181-83, 202.

Joseph further alleged that Stansbury's discriminatory animus ultimately culminated in him terminating her employment based on allegations that she engaged in aggressive coaching practices (i.e. her failure to conform to sex-stereotypes) and for pretextual reasons, *Id.* ¶¶ 188-94, 198-200. She also alleged that in terminating her

employment on this basis, Stansbury again treated her less favorably than a similarly situated male (Pastner) by not terminating him for engaging in conduct that violated the same policy and which, if he were treated the same as Joseph, would constitute a "for cause" basis for terminating his employment contract. *Id*. ¶¶ 198-200, 202, 211-12.

Defendant Peterson, who was aware of Joseph's past concerns of discriminatory treatment and her belief that the Littler Report was a sham to mask the Defendants' discriminatory and retaliatory motives, refused to exercise his authority over Stansbury to prevent or otherwise rectify the unlawful termination. *Id.* ¶¶ 131, 172-73, 187, 201-02, 209-10; *Keating*, 598 F.3d at 765; *Davis*, 2017 WL 1376856, at *8, *supra* n. 28. Like Stansbury, Peterson's discriminatory intent was evident from his disparate treatment of Joseph and similarly situated male Head Coaches, *id*. ¶¶ 19, 50, 65, 84, 91, 143-46, 211-12, and his refusal to redress Joseph's repeated complaints of discrimination against her and the WBB, *id*. ¶¶ 131-36, 142, 163-64, 172-73, 187, 201-202, 209-10.

Because Joseph has alleged facts sufficient to plausibly suggest that Stansbury and Peterson terminated her based on sex, or failed to exercise their authority to prevent such discrimination, Stansbury's and Peterson's Motion to Dismiss Counts Five and Eight, respectively, as failing to state a claim should be denied.

### ii.   Count Six:  Defendant Lewis[29]

Lewis seeks to dismiss Count Six arguing that Joseph failed to present any facts that would support a claim that he subjected her to any "adverse action" as that term is defined by law.  This argument is without merit.  Joseph sufficiently alleged that Lewis subjected her to adverse actions by allocating inferior funding and resources to her and the WBB team relative to Pastner and the MBB team.

Joseph has alleged more than enough factual matter (taken as true) to suggest that Lewis subjected her to adverse actions based on sex.  In particular, Joseph alleges that throughout her career, GT provided Joseph and the WBB inferior funding and resources relative to the coaches of the MBB team.  Compl. ¶¶ 50-92, 145, 214.  Lewis, the Associate Athletic Director of Finance for BOR/GTAA, had control over funding and resources allocated to Joseph and the WBB team and thus directly participated in the discriminatory decisions to provide unequal funding and resources to Joseph and the WBB team.  *Id.* ¶¶ 21, 65, 77, 84, 91, 102-03, 115-17, 132-33.  Lewis's discriminatory intent was evident from his disparate treatment of Joseph and the WBB team in comparison to his treatment of Pastner and the MBB team, *id*. ¶¶ 104, 112-13, 115-19, 160, and his hostile responses to Joseph's complaints of discriminatory treatment, *Id*. ¶¶ 105, 118, 157-58.

---

[29] Dkt. 4 at 9-12.

Lewis' argument that "much of what Joseph complains about-such as the physical structures where WBB and MBB practice-cannot be attributed to Lewis, who cannot be held personally responsible for the architecture of a building that predates his employment" is a red herring.  Dkt. 4 at 10.  Joseph has not alleged that Lewis discriminated against her by failing to design and implement locker rooms that were of equal size and quality as the MBB locker room.  Rather, she alleges that Lewis (like Peterson and Stansbury), had the power to allocate money to Joseph for the WBB team, knew of the discriminatory funding discrepancy, and chose  to deny resources to her while providing more in  funding and resources to Pastner for the MBB team.[30]

Joseph further alleges that the discriminatory allocation of resources over which Lewis had direct control constituted a serious and material change in the terms and conditions of her employment.  *Id.* ¶¶ 65, 77, 84, 91, 214.  Specifically, in addition to requiring Joseph to spend more time and resources to perform the same job as the MBB Head Coach for less pay, *id.* ¶¶ 50-51, 64, 76, 83, 90, 145, 156, 214, Lewis' discriminatory resource allocation also hampered her ability to recruit premier players and build her program, which in turn limited her compensation, a portion of which was

---

[30] Even if Lewis did not directly participate in the discriminatory allocation of resources to Joseph (which he did), he is still liable under Section 1983 because he, at the very least, was aware of Joseph's concerns of disparate funding, had the power to correct the discrimination, and failed to act.  Compl. ¶¶ 65, 77, 84, 91, 112-117, 156-57; *see also* n. 28, *supra*.

tied to her ability to build and coach teams to various collegiate tournaments. *Id*. ¶ 64; *see, e.g., Hill v. City of New York*, 136 F. Supp. 3d 304, 333 (E.D.N.Y. 2015) (permitting claim of discrimination under Title VII to move forward based in part on "allocating insufficient resources" to predominantly minority call center); *Mehus v. Emporia State Univ.,* 295 F. Supp. 2d 1258, 1272 (D. Kan. 2004) (denying defendant's motion to dismiss plaintiff's sex discrimination in employment claim alleging disparate treatment in relation to, *inter alia,* her working conditions, including being forced to work in less beneficial and desirable, and more onerous and difficult, working conditions than similarly situated male employees); *Morris,* 2004 WL 906248 at *3 (denying motion to dismiss coach's employment discrimination claim based on allegations of disparate funding).

Because Joseph has alleged facts sufficient to plausibly suggest that Lewis subjected her to adverse actions by allocating inferior funding and resources to her and the WBB team relative to Pastner and the MBB team, and failed to exercise his authority to prevent such discrimination, Lewis' Motion to Dismiss Count Six as failing to state a claim should be denied.

### iii.    Count Seven:  Defendant Engel[31]

Engel seeks to dismiss Count Seven arguing that Joseph failed to present any facts that would support a claim that Engel subjected Joseph to any "adverse action" on the basis of sex.  This argument should be rejected.

Engel held a position that vested her with the authority to ensure legal compliance, including compliance with Title IX and rules against sex discrimination, in the Athletic Department. Compl. ¶¶ 66, 78, 85, 92. Engel, who was aware of Joseph's concerns of disparate treatment based on sex, not only allowed, but actively facilitated, the allocation of inferior resources to the WBB team.  *Id*. ¶¶ 66, 78, 85, 92, 110-11, 133, 156-57.  In addition, Engel targeted Joseph and the WBB players with baseless and harassing investigations and inquiries. *Id*. ¶¶ 151-52, 159-62, 169. Engel's discriminatory intent was evident from her hostility toward Joseph's complaints of sex discrimination and her refusal to exercise her authority to redress the sex discrimination. *Id*. ¶¶ 157-58, 170-71.

Because Joseph has alleged facts sufficient to plausibly suggest that Engel subjected her to adverse actions by allocating inferior funding and resources to her and the WBB team relative to Pastner and the MBB team, and failed to exercise her authority to prevent such discrimination, Engel's Motion to Dismiss Count Seven as failing to state a claim should be denied.

---

[31] Dkt. 4 at 12.

### b) The Individual Defendants are not Entitled to Qualified Immunity.

In order to establish that state officials are not entitled to qualified immunity for their discretionary actions,[32]   Joseph must show that: (1) the official violated her constitutional rights; and (2) the constitutional right at issue was clearly established at the time.  *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015).  A constitutional right can be clearly established by, *inter alia*, materially similar case law from the Eleventh Circuit or Supreme Court, or a broad statement of principle within the Constitution or case law that gives the government official "fair warning" his conduct would violate the right in question.  *Id.* at 979 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *Morris v. Town of Lexington Alabama*, 748 F.3d 1316, 1322 (11th Cir. 2014) (noting that plaintiff "need not demonstrate that there is case-law specifically addressing his factual scenario").

Public officials violate an employee's rights under the Equal Protection Clause by subjecting her to sex discrimination at work.  *Davis v. Passman*, 442 U.S. 228, 230 (1979); *Nicholson v. Georgia Dep't of Human Res. (DHR)*, 918 F.2d 145, 148 (11th Cir. 1990). In *Nicholson*, part of the unlawful sex discrimination included unequal working conditions for the plaintiff, such that she was given fewer resources to do more tasks in less desirable conditions than her male colleagues.  918 F.2d at 147-48 (affirming denial

---

[32]  Joseph concedes that all relevant actions by the Individual Defendants were discretionary.

of summary judgment).  Thus, when a government official acting with discriminatory intent subjects a female plaintiff to unequal working conditions or a discriminatory termination that official is not entitled to qualified immunity.

Each of the Individual Defendants, acting with discriminatory intent, subjected Joseph to such unequal working conditions or caused her discriminatory termination, in violation of the constitutional rights clearly established by Eleventh Circuit and Supreme Court case law. As discussed in Section II(B)(2)(i)(a)(ii), Defendant Lewis' discriminatory budget allocation forced Joseph to do more tasks with fewer resources in worse conditions and for less pay than Coach Pastner. Defendants Peterson, Stansbury, and Engel knew of the discriminatory budget allocation and had the authority to redress it, but failed to act. Further, Stansbury, acting with discriminatory intent, terminated Joseph's employment for pretextual reasons, and Peterson, who was aware of the pretextual termination decision, took no action to stop or rectify Joseph's discriminatory termination.  Since the Individual Defendants had fair warning that these discriminatory actions violated Joseph's constitutional right to be free from sex discrimination in employment, they are not entitled to qualified immunity.

The Individual Defendants' reliance on the mixed-motive doctrine the Eleventh Circuit adopted in *Foy v. Holston*, 94 F.3d 1528 (11th Cir. 1996), is misplaced.  Dkt. 4 at 22-23.  "*Foy* only applies where the undisputed summary judgment facts establish mixed

motives, as opposed to pretext." *Pattee v. Georgia Ports Auth.*, 477 F. Supp. 2d 1253, 1267 (S.D. Ga. 2006) (citing *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1296 (11th Cir. 2000)); *see also Bogle v. McClure*, 332 F.3d 1347, 1356 (11th Cir. 2003) (denying qualified immunity where evidence showed that defendants' explanation for adverse action "was a sham designed to cover up" unlawful discrimination).

The Complaint does not allege that Stansbury and Peterson terminated Joseph because they credited the allegations in the Littler Report. Rather, the Complaint clearly alleges that both Stansbury and Peterson knew that the allegations in the Littler Report were false. Specifically, Stansbury was behind the efforts to manufacture a pretext to terminate Joseph. Compl. ¶¶ 188-94, 198. In addition, Joseph presented both Stansbury and Peterson with a response rebutting the false allegations in the Littler Report and demonstrating the unreliability of the investigation, which they quickly dismissed without consideration. *Id.* ¶¶ 199-202. If Stansbury and Peterson terminated Joseph because of concerns over Joseph's conduct toward her athletes and staff, they would have taken into consideration information undermining the integrity of the Littler Report. Their failure to do so belies any claim of mixed motives and confirms the central allegation in Joseph's Complaint: the Defendants had a preexisting discriminatory motive to terminate Joseph, and they structured the Littler investigation to concoct a pretextual justification for their discriminatory actions.

Because the Individual Defendants acted with discriminatory intent to violate Joseph's clearly established rights, they are not entitled to qualified immunity.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny BOR's Partial Motion to Dismiss Counts One, Two, Three, Four, Nine, Twelve, Thirteen, and Fourteen;[33] GTAA's Partial Motion to Dismiss Counts One, Two, Three, Four, Nine, Eleven, Twelve, Thirteen, and Fourteen; and the Individual Defendants' Motion to Dismiss Counts Five, Six, Seven, and Eight.

Respectfully submitted this 24 day of February, 2020.

/s/ Edward D. Buckley
Edward D. Buckley
Ga Bar No. 092750
edbuckley@buckleybeal.com
**Buckley Beal, LLP**
600 Peachtree Street NE, Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101

---

[33]Defendant BOR requests, without citation to any legal authority, that the Court prospectively deny Joseph an opportunity to ever amend her Complaint.  Dkt. 3 at 25. This request is baseless and premature.  No court has ever ruled on the merits of any motion to dismiss in this case, and there has been no reason for Joseph to amend her Complaint yet.  If the Court deems any of the Defendants' arguments valid and dismisses any of Joseph's claims, Joseph asks that the dismissal be without prejudice so that she may seek leave to amend her Complaint if justice so requires.  Fed. R. Civ. Proc. 15(a)(2) ("The court should freely give leave when justice so requires.").  Should BOR oppose such a motion, it can raise arguments to support such opposition at that time.

Lisa J. Banks (admitted *pro hac vice*)
banks@kmblegal.com
Colleen E. Coveney (Ga Bar No. 686460)
coveney@kmblegal.com
Joseph E. Abboud (admitted *pro hac vice*)
abboud@kmblegal.com
**Katz, Marshall & Banks, LLP**
1718 Connecticut Avenue, NW, Sixth Floor
Washington, D.C. 20009
Phone: (202) 299-1140
Fax:     (202) 299-1148


## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies this pleading conforms to the Local Rules of this Court as to font and type size.

This 24th day of February, 2020.


**BUCKLEY BEAL, LLP**

*/s/ Edward D. Buckley*
Edward D. Buckley
Georgia Bar No. 092750

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MACHELLE JOSEPH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BOARD OF REGENTS OF | ) |
| THE UNIVERSITY SYSTEM | ) |
| OF GEORGIA; | )   Civil Action No.: |
| GEORGIA TECH ATHLETIC | )   1:20-CV-00502-TCB |
| ASSOCIATION; | ) |
| GEORGE PETERSON, in his individual | ) |
| capacity; M. TODD STANSBURY, in his | ) |
| individual capacity; MARVIN LEWIS, in | ) |
| his individual capacity; and | ) |
| SHOSHANNA ENGEL, in her individual | ) |
| Capacity, | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of February, 2020, I electronically filed the

foregoing **PLAINTIFF MACHELLE JOSEPH'S CONSOLIDATED OPPOSITION**

**TO THE MOTIONS TO DISMISS FILED BY ALL DEFENDANTS** with the Clerk

of Court using the CM/ECF system which will automatically send email notification of

such filing to the following attorneys of record:

Courtney Poole (cpoole@law.ga.gov)
Katherine Powers Stoff (kstoff@law.ga.gov)

Christopher Paul Galanek (chris.galanek@bclplaw.com)
Danielle Y. Conley (danielle.conley@wilmerhale.com)
Tania Christine Faransso (tania.faransso@wilmerhale.com)

BUCKLEY BEAL, LLP

*/s/ Edward D. Buckley*
Edward D. Buckley
Georgia Bar No. 092750
*Counsel for Plaintiff*