# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MACHELLE JOSEPH,<br><br>    *Plaintiff*,<br><br>v.<br><br>BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA; GEORGIA TECH ATHLETIC ASSOCIATION; GEORGE P. PETERSON, in his individual capacity; M. TODD STANSBURY, in his individual capacity; MARVIN LEWIS, in his individual capacity; and SHOSHANNA ENGEL, in her individual capacity,<br><br>    *Defendants*. | CIVIL ACTION FILE NO.<br>1:20-CV-00502-TCB |

## DEFENDANT BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA'S REPLY IN SUPPORT OF ITS <u>PARTIAL MOTION TO DISMISS</u>

COMES NOW the Board of Regents of the University System of Georgia ("BOR"), Defendant in the above-styled civil action, by and through counsel, the Attorney General of the State of Georgia, and files this Reply in Support of its Partial Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

1

## ARGUMENT AND CITATION OF AUTHORITY[1]

In her Consolidated Response to Defendants' Motions to Dismiss, Joseph claims that her complaint is a "detailed roadmap" outlining all of her legal claims. (Pl. Resp., p. 3, n.1.) To the contrary, her complaint is a novelization of every perceived slight and gripe about her former workplace, detailing events which span almost two decades when she knows – and concedes – that she can only seek relief for actions which occurred, at most, in the last year or two leading up to her termination. The deficiencies of her complaint are made even more apparent by the arguments put forth in her response to the Defendants' various motions to dismiss, where she attempts to capitalize on her intentionally ambiguous pleading by pointing to allegations which are time-barred, conclusory, or which do not actually support her claims and arguments. In short: Joseph has thrown spaghetti against the wall; she is waiting to see what will stick. This Court should look past her vague and conclusory allegations, disregard those which cannot form the part of any timely claim, and grant the BOR's Partial Motion to Dismiss.

---

[1] Because the BOR's position is set forth fully in its Brief in Support of its Partial Motion to Dismiss ("Def. Br."), this Reply will focus only on specific arguments raised in Joseph's Consolidated Response ("Pl. Resp."). The BOR's lack of a response to any of Joseph's individual arguments herein should not be interpreted as an abandonment of any of the arguments raised in its Partial Motion to Dismiss.

I. **Joseph's Title IX employment claims are pre-empted by Title VII.**

Joseph points to *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), as authority for her argument that none of her Title IX claims are preempted by Title VII. However, she overstates the holding in *Jackson.* That case did not address the question of pre-emption when a plaintiff seeks to use Title IX to redress claims which are identical to those available or brought under Title VII.[2] The only question addressed by the *Jackson* court was whether Title IX included a private right of action for retaliation where the text of the statute did not specifically provide for one. The Supreme Court answered in the affirmative, finding an implied right of action for a coach who claimed to have suffered adverse actions in retaliation for his advocacy for the rights of the high school team which he coached. This is a claim that is not available under Title VII and so, would not be pre-empted by that statute.[3]

---

[2] In fact, this question was resolved at an earlier stage in *Jackson* and the District Court found preemption, holding that "to the extent plaintiff is asserting the discriminatory loss of some employment benefit … his claim must rest exclusively under Title VII, and not Title IX." Case No. CV-01-TMP-1866-S, 2002 U.S. Dist. LEXIS 27596, *5-6 (N.D. Ala. 2002). Neither the Eleventh Circuit nor the Supreme Court disturbed that ruling.

[3] The coach's claim would not be available under Title VII because that statute only protects individuals against retaliation for their opposition to conduct which is protected by Title VII. *See* 42 U.S.C. § 2000e-3. A claim that one has been retaliated against for asserting the rights of student athletes, divorced from one's own employment rights, is not covered by Title VII. *See Holt v. Lewis*, 955

Joseph, relying on two cases which predate *Jackson*, asserts that the BOR's argument regarding pre-emption is a "flawed policy argument." (Pl. Resp., p. 6.) However, the BOR's argument is one that has been regularly recognized by federal courts, including the Supreme Court.[4] Indeed, the exact question raised in this case has already been considered by a judge in the Northern District of Georgia post-*Jackson*, and, in *Reese v. Emory University*, Judge Jones, in line with other courts in the Eleventh Circuit, determined that the plaintiff had no private right of action to bring employment-based claims under Title IX. Case No. 1:14-cv-2222, 2015 U.S. Dist. LEXIS 193183, *10-13 (N.D. Ga. 2015) A number of other district courts have ruled similarly. *See Summa v. Hofstra Univ.*, Case No. CV-08-0361, 2011 U.S. Dist. LEXIS 37975, *49-52 (E.D. N.Y. 2011) *overruled on other grounds by* 708 F.3d 115 (2nd Cir. 2013) (dismissing plaintiff's Title IX claims because she had established she was an employee for purposes of Title VII); *Tompkins v. Barker*, Case. No. 2:10-cv-1015, 2011 U.S. Dist. LEXIS 90788, *16-

---

F.Supp. 1385 (N.D. Ala. 1995) *aff'd by* 109 F.3d 771 (11th Cir. 1997) ("[A]ny retaliation by defendants for plaintiff's advocacy of a student's rights is simply not prohibited by Title VII.").

[4] *See, e.g., Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252 (2009) (placing "primary emphasis on the nature and extent of [a] statute's remedial scheme" when determining whether it precludes a cause of action under another federal statute); *Brown v. GSA*, 425 U.S. 820 (1976) ( observing that "in a variety of contexts the Court has held that a precisely drawn, detailed statute pre-empts more general remedies," and holding that § 717 of the Civil Rights Act of 1964 provides the exclusive judicial remedy for claims of discrimination in federal employment).

19 (M.D. Ala. 2011) (dismissing Title IX claims which were "basically identical" to plaintiff's Title VII claims); *Vandiver v. Little Rock School District,* Case No. 4:03-cv-00834, 2007 U.S. Dist. LEXIS 98747, *44-45 (E.D. Ark. 2007).[5]

The BOR acknowledges that there is a split of authority on this question, *see Heatherly v. Univ. of Ala. Bd. of Trs.*, Case No. 7:16-cv-00275, 2018 U.S. Dist. LEXIS 118869, *64-65, n.19 (N.D. Ala. 2018) (collecting cases), but encourages this court to follow the reasoning of *Reese*, which found preemption of all employment claims brought pursuant to Title IX. In light of the sound reasoning of *Reese,* the BOR concedes that Counts Nine and Twelve, to the extent they rely on Joseph's allegations about WBB receiving inferior resources (as opposed to Joseph herself experiencing discriminatory terms and conditions of employment), are not pre-empted by Title VII. The BOR maintains, however, that Counts One and Two are completely pre-empted,[6] that Joseph cannot maintain her retaliation claims based upon complaints about her own circumstances, and further asserts that Count

---

[5] Additionally, in *Vandiver*, the Eastern District of Arkansas found that *North Haven Board of Education v. Bell*, cited to and relied upon by Joseph (Pl. Resp., p. 6), was not controlling because that case did not involve a claim by an individual for money damages for discrimination. See 2007 U.S. Dist. LEXIS 98747, *44.

[6] To the extent Joseph argues that Counts I and II are proper because she is asserting the rights of the players, rather than herself, that argument must also be rejected. Joseph, as an ex-employee, does not have standing to assert the rights of WBB or its athletes. *See Hankinson v. Thomas Cnty Sch. Dist.*, 2005 U.S. Dist. LEXIS 25576, *8-9 (M.D. Ga. 2005) ("Plaintiff does not have standing to bring a Title IX claim on behalf of the students participating in the softball program.").

Twelve fails to state a claim for retaliatory hostile work environment for the same reasons her hostile work environment claim fails under Title VII.[7]

## II. Joseph is time-barred from seeking relief for many of the actions about which she now complains.

In her response, Joseph concedes that she cannot seek relief under Title VII for any adverse actions which occurred, or of which she was aware, prior to October 18, 2018. (Pl. Resp., p. 9, n. 9.) Yet, she claims that her allegations are appropriately considered as offering relevant "background evidence" which may support her claims.[8] Defendant's motion seeks to narrow the issues remaining for litigation and to clearly identify those adverse actions which are timely and which could properly form a claim for relief. It is inappropriate, at this stage, for Joseph to invite an evidentiary argument about the propriety of the vast majority of her allegations.

With regard to Joseph's contention that she can seek relief for any alleged disparate funding because that action "continued throughout her employment" (Pl.

---

[7] The BOR incorporates by reference the arguments made in Part III.E. of its original brief, ECF No. 3, as well as in Part V, *infra*.

[8] As noted in the BOR's original brief, Joseph's style and manner of pleading is all but guaranteed to result in confusion about the proper scope of discovery and the precise contours of her claims. *See Anderson v. District Bd. of Trustees of Cent. Fla. Cmty. College*, 77 F.3d 364, 367 (11th Cir. 1996) ("[U]nless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

Resp., p. 9), such a claim is due to be rejected. Joseph appears to be arguing, at least implicitly if not explicitly, for a "continuing violation" theory of relief. However, in "determining whether a discriminatory employment practice constitutes a continuing violation, [the Eleventh] Circuit distinguishes between the present consequence of a one-time violation, which does not extend the limitations period, and the continuing of that violation into the present, which does." *Thigpen v. Bibb Cnty Sheriff's Dept.*, 216 F.3d 1314, 1326 (11th Cir. 2000) (quoting *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993)); *see also Carter v. West Publ'g Co.*, 225 F.3d 1258, 1263 (11th Cir. 2000). Budgets for the Athletic Department are set once a year. (*See* Compl., ¶¶ 103, 114, indicating budget meetings occurred annually in the spring.) The decision of how to allocate funds each fiscal year represents a single discrete action with continuing *effects*; Joseph cannot predicate a Title VII claim on disparate funding when WBB's budget was set, and known to her, prior to October 18, 2018.

Similarly, Joseph claims she is entitled to recover under a "continuing" theory of Title VII because she alleges that she was held to a higher standard of performance and conduct than similarly situated male coaches "throughout her employment." (Pl. Resp. p. 9.) In support of this claim, she cites to a number of allegations which date back to the Ginger Sanford investigation (2016); GT and

GTAA's alleged refusal to engage in conversations about renegotiating her contract (April 2017-May 2018); and allegedly retaliatory harassment from the Compliance office (September, 2018). As is made clear by her complaint, and noted in the BOR's original motion (Def. Br., p. 9-10), Joseph has apparently felt that she was the victim of unlawful discrimination for quite some time. However, the "continuing violation doctrine does not exist to give a second chance to an employee who allowed a legitimate Title VII claim to lapse." *Carter v. W. Publ'g Co.*, 225 F.3d 1258, 1264 (11th Cir. 2000) (quoting *Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793, 800 (11th Cir. 1988)). Importantly, when considering arguments based on the continuing violation doctrine, federal courts have "given considerable weight to a plaintiff's awareness of his or her rights and the duty to bring a timely claim." *Steele v. City of Port Wentworth*, 2008 U.S. Dist. LEXIS 20637, *49 (S.D. Ga. 2008). Joseph cannot now seek to recover for activity about which she was acutely aware and apparently believed to be discriminatory (*see* Compl., ¶ 131, alleging that Joseph engaged an attorney to respond to the Final Written Warning, claiming male coaches would not have been treated similarly), yet chose never to pursue. With respect to its timeliness arguments and in light of Joseph's concession, the BOR seeks a definitive ruling from this court that Joseph

may only seek relief under Title VII for her termination, the only discrete action which occurred after October 18, 2018.

### III. Joseph fails to state a claim for sex discrimination.[9]

If *Iqbal* and *Twombly* taught us anything, it is this: just because you say something doesn't make it true, or, in the context of a motion to dismiss, plausible. To date, Joseph has claimed *ad nauseam* that every perceived slight against her, every interaction in which she did not get her way, and every instance where WBB was not treated the exact same as MBB, was the result of unlawful sex discrimination, but her response brief does little more than repeat the same conclusory allegations which are replete throughout her complaint and which are insufficient to state a claim for relief.

As noted above, Joseph's response brief highlights the deficiencies of her complaint and the need for this Court to issue a ruling on Defendants' various motions which clearly identifies the issues remaining for discovery. For instance, although Joseph has conceded that she cannot seek relief under Title VII for any actions which occurred prior to October, 2018, she now claims in her brief that she can prevail on her claim of sex discrimination because she was paid less than male

---

[9] In the event this Court finds that Joseph's Title IX claims are not pre-empted by Title VII, they are still due to be dismissed because she has failed to state a claim for sex discrimination or hostile work environment.

9

coaches "for the entirety of her tenure." (Pl. Resp., p. 12.) This action is time-barred. As Joseph's complaint makes clear, her compensation package was known to her in 2014. If she felt that she was not adequately paid, she could have – and should have – brought suit in a timely fashion to redress that grievance. The BOR maintains that the only timely action for which Joseph can seek relief under Title VII is her termination. (*See* Def. Br., p. 11.)

In her response, Joseph claims that she alleged facts "showing a long history of the Institutional Defendants scrutinizing Joseph for conduct which other male Head Coaches engaged in with impunity," ultimately ending in her termination for her abusive coaching practices. (Pl. Resp., p. 13.) Crucially, Joseph claims that men, at large, would not be treated so harshly for the same "aggressive and demanding coaching" practices that she employed, but she has not alleged that *any male coach at Georgia Tech* engaged in the same conduct as her and yet was not similarly treated. There is not a single allegation in the complaint that any male coach at GT employed the same coaching tactics that got Joseph fired.[10] No matter how many times Joseph *says* she was treated differently because she is a woman, the facts which undergird her complaint fail to state a claim for sex discrimination.

---

[10] The fact that GT has no male coaches to whom Joseph can point is even more reason to believe that, far from acting in a discriminatory fashion, GT does not tolerate this behavior from *anyone*, male or female.

### IV. Title VII does not recognize Joseph's associational claims.

Joseph relies on nonbinding law from the Sixth Circuit to attempt to support her argument that she can properly make out an associational claim under Title VII which is unrelated to her own protected status. However, *Jackson v. Birmingham Board of Education* makes clear that Title VII does not recognize associational claims of the type Joseph seeks to assert. *See* 544 U.S. at 179. As noted in Part I, *supra*, the *Jackson* Court acknowledged that a coach could maintain a Title IX retaliation claim based on his objections to discrimination against his team, rather than himself. The Board of Education had argued that the coach could not avail himself of Title IX's protections because he had not personally been the victim of discrimination. In rejecting this argument, the Court compared the language of the two anti-discrimination statutes and explicitly stated that if Title IX had the same language as Title VII, its ruling would be different. *Id.* ("If the statute provided instead that 'no person shall be subjected to discrimination on the basis of *such individual's sex*,' then we would agree with the Board."). Title VII does not provide a cause of action for a coach whose claim is based on their advocacy for their team, rather than themselves.[11]

---

[11] This is in harmony with the BOR's argument regarding pre-emption. Title VII pre-empts claims which are available under its comprehensive remedial scheme; it does not pre-empt any causes of action which are available only under Title IX.

## V. Joseph fails to state a claim for retaliatory hostile work environment.

Joseph claims that she has stated a claim for retaliatory hostile work environment based on "a series of unwarranted reprimands, disciplinary actions, and investigations on baseless and frequently discriminatory grounds." (Pl. Resp., p. 17.) Even assuming those facts are true, they still do not amount to an actionable hostile work environment because they do not constitute an environment which is objectively "severe" or "pervasive." At most, Joseph's complaint includes allegations that she did not get everything she asked for in yearly budget meetings and that she was subjected to two reprimands (issued by different people, under different leadership), and a couple of compliance investigations,[12] none of which resulted in any findings, loss of pay, change in job duties, or other disciplinary actions, over the course of four years. This is not "pervasive" by any stretch of the imagination. *See, e.g.*, *Jackson v. Doubleback Transp.*, Case No. 1:17-00386-KD-B, 2019 U.S. Dist. LEXIS 75880, *12-13 (S.D. Ala. 2019) (infrequent reprimands insufficient to establish hostile work environment). Joseph has also alleged that she felt like people were hostile to her, but she provides very little by way of

---

[12] In her brief, she characterizes the compliance investigations as "constant" (Pl. Resp., p. 17), but she identifies only two such investigations in the complaint. One which was initiated by the NCAA itself (Compl., ¶¶ 151-153) and not anyone from GT, and one in which she vaguely alleges that WBB was subject to a "seemingly baseless" and discriminatory inquiry (Compl., ¶ 169). The latter allegation is so ambiguous that it does not warrant an assumption of truth.

specifics.[13] There are no allegations that would indicate anyone threatened her, yelled at her, engaged in any behavior which would be humiliating or physically intimidating, used any foul language, or engaged in any of the other hallmarks of a hostile work environment.[14] *See, e.g., Harris v. Fla. Agency for Health Care Admin.*, 611 Fed. App'x 949, 953 (11th Cir. 2015) (no hostile work environment where plaintiff did not face "frequent hostile conduct," "criticisms were not severe," and "there was little evidence that the conduct by his supervisors was threatening or humiliating."). At most, she has alleged that Lewis was "visibly frustrated" by her budget demands, and that Stansbury once "snapped" at her. (Compl., ¶¶ 116, 164.) This is a far cry from the type of behavior which would constitute an abusive work environment.

The bar for hostile work environment claims in the Eleventh Circuit is quite high. A review of the case law shows that employees who have been subjected to decidedly offensive comments and behavior still fail to make out a claim for a hostile work environment because Title VII is not meant to be a "general civility

---

[13] Post-*Iqbal/Twombly*, a plaintiff cannot make out a claim for a hostile work environment simply by alleging that people were "hostile" towards her. "A formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[14] Interestingly, this is the type of environment Joseph was found to have subjected her staff and players to – one full of cursing, yelling, threats, and public humiliation – and which she characterizes as "aggressive," but apparently acceptable, coaching.

13

code." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see Guthrie v. Waffle House, Inc.*, 460 Fed. App'x 803, 807-808 (11th Cir. 2012) (no hostile work environment where coworkers groped plaintiff and engaged in vulgar conversation because the conduct was relatively infrequent and not severe enough to "alter or change the terms of [plaintiff's] working conditions."); *see also* Def. Br., fn. 13. Joseph's claim that she suffered a hostile work environment must be dismissed.

## VI. The Board of Regents is not party to any contract with Joseph.

Joseph contends that parties may be bound by a contract when there are multiple signed documents which demonstrate their intent to be bound by the terms therein. (Pl. Resp., p. 23.) As a general rule, this is true. However, it has no application in this case. As Joseph's own case law recognizes, "a valid written contract may be formed when there are multiple signed, contemporaneous agreements *between the parties* which demonstrate their intent" to be so bound. *Bd. of Regents of the Univ. Sys. of Ga. v. Doe*, 278 Ga. App. 878, 881 (2006) (emphasis added). The fact remains that, by their plain terms, the October 10 letter and October 20 agreement (the "Contract") contemplate a formal written contract between Joseph and GTAA only.

Joseph's argument that the BOR is bound because Bobinski, Lewis, and Peterson all signed the Contract on behalf of GTAA should be disregarded because it is not supported by any authority. Joseph appears to claim that, where a person acts as agent for two principals, they automatically bind both. Defendant is not aware of any law that would support such an extreme outcome and, in this case, there are no allegations that would tend to establish that Bobinski, Lewis, or Peterson were acting on behalf of the BOR, rather than or in addition to GTAA, when they signed the Contract. In fact, the October 10 letter clearly contemplates a separate agreement with GTAA (*see* Compl., Exhibit A, p. 1, "[GTAA] will offer you a formal contract…."); the Contract clearly indicates that the signatories were acting on behalf of GTAA (*see* Compl., Exhibit B, p. 1, 13); the express language of the Contract includes only GTAA (*see* Compl., Exhibit B, *passim*); and Joseph has not pointed to any law or allegation of fact which would support a finding that, in signing on behalf of GTAA, Lewis, Bobinski, and Peterson simultaneously bound the BOR without its knowledge, consent, or after-the-fact ratification.

Joseph's employment with the BOR was not contractual in nature; it was at-will and terminable by either party at any time and for any reason. For the reasons explained in its original brief, Joseph's breach of contract claim against the BOR is due to be dismissed.

Respectfully submitted, this 9th day of March, 2020.

|  |  |
|---|---|
| CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| BRYAN K. WEBB<br>Deputy Attorney General | 743580 |
| *s/ Katherine P. Stoff*<br>KATHERINE POWERS STOFF<br>Senior Assistant Attorney General | 536807 |
| *s/ Courtney C. Poole*<br>COURTNEY C. POOLE<br>Assistant Attorney General | 560587 |

Please serve:

Katherine Powers Stoff
Senior Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 656-3393
Email: kstoff@law.ga.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(C) in 14-point Times New Roman type face.

This 9th day of March, 2020.

>*s/ Courtney C. Poole*
>Assistant Attorney General