IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MACHELLE JOSEPH,<br><br>    *Plaintiff*,<br><br>v.<br><br>BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA; GEORGIA TECH ATHLETIC ASSOCIATION; GEORGE P. PETERSON, in his individual capacity; M. TODD STANSBURY, in his individual capacity; MARVIN LEWIS, in his individual capacity; and SHOSHANNA ENGEL, in her individual capacity,<br><br>    *Defendants*. | CIVIL ACTION FILE NO.<br>1:20-CV-00502-TCB |

**DEFENDANTS PETERSON, STANSBURY, LEWIS, AND ENGEL'S
REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

COME NOW, George P. Peterson, Marvin Lewis, Todd Stansbury, and Shoshanna Engel (the "Individual Defendants"), in their individual capacities, by and through counsel, the Attorney General for the State of Georgia, and submit this Reply Brief in support of their Motion to Dismiss Plaintiff's Complaint.

1

# ARGUMENT AND CITATION OF AUTHORITY[1]

### I. Joseph fails to state a claim for intentional sex discrimination against the Individual Defendants.[2]

Joseph is correct in that, generally speaking, a plaintiff need not plead a *prima facie* case to survive a motion to dismiss, and that she must only provide enough factual matter, taken as true, to suggest intentional discrimination. (Resp. Br. p. 29.) Her complaint, however, fails to meet this bar.

### a. Stansbury

Joseph's sex discrimination claim against Stansbury can only rest on her termination.[3] Her argument that the Court may consider all of the other allegations in her complaint as "background evidence" against Stansbury (or any other Individual Defendant) should be rejected. A government official sued under § 1983 is only responsible for his or her own actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also Thomas v. Fla. Highway Safety & Motor Veh.*, Case. No. – 2019

---

[1] Because the Individual Defendants' positions are set forth fully in their Brief in Support of their Motion to Dismiss ("Ind. Def. Br."), which is incorporated by reference, this Reply will focus only on specific arguments raised in Joseph's Consolidated Response ("Pl. Resp."). Defendants' lack of a response to any of Joseph's individual arguments herein should not be interpreted as an abandonment of any of the arguments raised in their Motion to Dismiss. Defendants stand on the arguments made in their original brief.

[2] The Individual Defendants incorporate by reference the arguments made in support of co-Defendant BOR's Motion to Dismiss in both its original brief in support (ECF No. 3) and its Reply brief, filed contemporaneously herewith.

[3] Joseph's allegations about "disparate funding" are insufficient to state an adverse action within the meaning of § 1983. *See* Part I.c., *infra*, and Ind. Def. Br., Part III.B.ii.

U.S. Dist LEXIS 66129, *8-11 (M.D. Fla. 2019) (finding plaintiff's shotgun pleading against individual defendants inappropriate for incorporating "irrelevant" allegations into every count). Stansbury has only been the Athletics Director since late 2016; thus, allegations about disparate treatment Joseph claims to have been subject to "throughout her employment" cannot be imputed to him. The only action identified in the complaint in which Stansbury is alleged to have personally participated is Joseph's termination.[4] Now, in response to Defendants' motion, Joseph also points to allegations regarding the various NCAA investigations into WBB and MBB and her perception that WBB was not adequately supported by Stansbury. (Pl. Resp. p. 31.)  First, this argument is a clear illustration of the problem with Joseph's complaint, as Count Five does not include these in the list of adverse actions for which Joseph seeks relief. (*See* Compl., ¶¶ 265-274, listing "disparate funding" and Joseph's termination as the adverse actions for which redress is sought from Stansbury.)  Second, as noted in Defendant BOR's brief in support of its partial motion to dismiss, (ECF No. 3, p. 12-13), the NCAA inquiries are, by and large, irrelevant because they were not the basis for her termination and they did not trigger any other adverse actions against Joseph. In her response brief,

---

[4] With regard to her complaint of "disparate funding," Joseph alleges only that Stansbury was "in a position of authority to take responsive action" and failed to do so. This is insufficient to state claim for individual liability under §1983 for the reasons explained in Part I.b., *infra*, and Part III.B.i. of the Individual Defendant's Brief.

Joseph attempts to capitalize on her intentionally ambiguous pleading by putting forth arguments for claims that were never actually identified in the complaint itself. This court should reject her efforts to do so.

With respect to her termination, Joseph attempts to point to Pastner as an appropriate comparator, but again the allegations in the complaint do not give rise to such a finding. Joseph does not properly allege that Pastner was similarly situated to her. Pastner was never accused of, or found by an external investigator to have actually engaged in, the practice of abusing his student athletes. There are no allegations that Pastner employs the same "aggressive" coaching techniques used by Joseph and yet was not investigated or disciplined for that behavior. For the claim against Stansbury in particular, there are no allegations that *any* other coach was on a Final Written Warning by the time he came into his position as Athletic Director and were subsequently found to have engaged in misconduct by an outside investigator.[5]

Joseph has made it abundantly clear that she *believes* she was terminated for coaching practices that would have been acceptable, if she were a man. What she has failed to do, however, is allege any *facts* which would support such a

---

[5] In her brief, Joseph claims that she has properly alleged that "Stansbury was behind the efforts to manufacture a pretext to terminate Joseph." (Pl. Resp., p. 39.) She cites to paragraphs 188-194 and 198 of the complaint in support of this bold assertion. A plain reading of those paragraphs, however, shows that they do not support her argument.

conclusion. "Speculation cannot defeat a motion to dismiss." *Spears v. KMG Enters.*, Case No. 1:18-cv-01548-KOB, 2019 U.S. Dist. LEXIS 2434m *7 (N.D. Ala. 2019). In her response, Joseph fails to point to any allegation in the complaint that any other coach at Georgia Tech, much less any male coach, engaged in the same "aggressive coaching practices" employed by Joseph and yet was not similarly disciplined by Stansbury.[6] As a result, Joseph has failed to plead any facts which tend to establish that Stansbury acted with animus towards women when he terminated her employment and her § 1983 claim against him is due to be dismissed.

    b. *Peterson*

In asserting a § 1983 claim against Peterson, Joseph appears to rely on a theory of respondeat superior. However, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct," which Joseph has failed to allege, "or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.*

---

[6] The absence of such allegations is notable, if only because Joseph appears to claim that her methods are mainstream for male coaches.

Further, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.*

As noted in the Individual Defendants' original brief, the allegations against Peterson are very thin. Most of them are made "upon information and belief" or are otherwise conclusory and do not warrant the assumption of truth. There are no allegations that Peterson personally took any action of which Joseph now complains. She rests her claim against Peterson on his alleged failure to act, but there are no allegations which would tend to establish that Peterson directed anyone to act unlawfully, or that he knew that they would act unlawfully and failed to stop them from doing so. *See Cottone*, 326 F.3d at 1360; *see also Hoffman v. Office of the State Atty*, Case No. 18-11831, 2019 U.S. App. LEXIS 35745, *19-20 (2019) (unpublished) (observing that plaintiff's allegations regarding supervisory liability were not supported by sufficient factual allegations). There are also no allegations that Peterson harbored any discriminatory intent towards women when taking – or failing to take – any specific actions. At best, Joseph has alleged that while Peterson was President of a large public institution, with thousands of students and staff to oversee, some of his subordinates engaged in what she believes were discriminatory practices. This is insufficient to state a claim for

personal liability against a government official under §1983. Joseph's claim against Peterson is due to be dismissed.[7]

### c. Lewis

Joseph's § 1983 claim against Lewis is predicated on his allocation of funds to WBB when setting the yearly budget for the Athletics Department. Her entire complaint against Lewis rests on allegations that he did not allocate WBB resources which were equal to those allocated to MBB. However, as noted in the Individual Defendants' original brief, even Title IX implementing regulations recognize that "unequal expenditures for male and female teams" does not, alone, constitute sex discrimination. 34 C.F.R. § 106.41(c); *see also Grandson v. Univ. of Minn.*, 272 F.3d 568, 576 (8th Cir. 2001). Joseph does not even attempt to address this regulation in her response. WBB was not entitled to funding that matched, dollar for dollar, that of MBB for a variety of reasons that have nothing to do with Joseph's sex or the sex of her players. The multi-million dollar budget for a large public athletics department is a complex undertaking; there are going to be differences between the teams and those financial differences, alone, "do not in themselves offer conclusive documentation of discrimination." *Grandson*, 272 F.3d at 576 (quoting OCR Policy Interpretation, 44 Fed. Reg. at 71,414).

---

[7] Joseph's claim against Peterson is also due to be dismissed for the reasons her claim against Stansbury fails. *See* Part. I.a., *supra.*

The nonbinding cases cited by Joseph are unavailing. In *Hill v. City of New York,* the court considered a "pattern or practice" claim of race discrimination based, in part, on allegations of insufficient funding. 136 F.Supp.3d 304 (E.D.N.Y. 2015). In *Hill*, the plaintiffs complained of insufficient resources as well as serious staffing issues which affected the health and safety of 911 operators. The District Court found that plaintiffs had alleged an "overarching" pattern of "over-work, under-staffing, and punitive measures … motivated by racial animus." *Id.* at 333. Underfunding a 911 call center to the point where employees were working double shifts with no breaks for meals or rests, were routinely under staffed and required to work double overtime, and punishing employees who did not comply with these rigorous staffing requirements, *see id.* at 325, would constitute an "adverse job action" because it represents a "serious and material" change in the terms and conditions of their employment. The context of this case is clearly quite different. Joseph is complaining that WBB did not receive the exact same budget as MBB, but she has not produced any statute, regulation, policy interpretation, or case law which would establish that giving WBB fewer resources than MBB is, on its own, an adverse action against her upon which a claim of sex discrimination can rest.[8]

---

[8] Joseph's reliance on *Mehus v. Emporia State University*, 295 F.Supp.2d 1258 (D. Kan. 2004) (Resp. Br. p. 35) is also inapposite. In ruling that the plaintiff's Title IX claim could go forward, the district court explicitly noted that she was not required to allege discriminatory intent. *Id.* at 1271. However, at issue here is a §1983 claim, which, in the Eleventh Circuit, always requires a showing of discriminatory

Even if disparate funding could constitute an adverse job action in the context of this case, Joseph has failed to plausibly allege that Lewis's decisions were made on the basis of anti-female sentiment. Joseph points to Lewis's "hostile responses" to her complaints of discriminatory treatment as allegations which support her discrimination claim against Lewis. (Resp. Br. p. 33) However, the citations she provides to specific paragraphs in the complaint do not support her argument. The allegations upon which she relies are about *her* statements to Lewis; they say very little about Lewis's reactions. At most, she alleges that Lewis was "visibly frustrated" with her. This single allegation is insufficient to state a plausible claim of sex discrimination and Joseph has not otherwise plausibly alleged that Lewis, in making routine budgeting decisions, targeted her because of her sex or the sex of her players.

> d. *Engel*

In her response brief, Joseph claims that Engel "actively facilitated" the allocation of inferior resources to the WBB team. Again, she cites to a number of conclusory allegations in the complaint which allege, "upon information and belief," that Engel "failed to direct GT/GTAA to allocate financial resources equitably to Coach Joseph and the WBB because of Coach Joseph's sex and/or the

---

animus. *See Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325 (11th Cir. 2005) ("[I]t is well established that proving intent to discriminate is the essential element of an equal protection claim.").

sex of the athletes she coached." (Resp. Br., p. 36.) These allegations are conclusory and due no weight. The remaining allegations cited by Joseph in support of her claim against Engel are scant and do not support a finding that Engel had or exercised any authority over the budgeting process, or that Engel personally participated in any alleged disparate funding.[9] There are no allegations that Engel participated in Joseph's termination.

At most, Joseph faults Engel for a single compliance investigation in 2018 in which Joseph claims that Engel subjected WBB to a "seemingly baseless" compliance inquiry, but offers no further details. (*See* Compl., ¶ 169.) This lone instance of perceived discrimination, which apparently resulted in no findings, no disciplinary action, and no loss of pay or other benefits, does not suffice to state a claim for unlawful sex discrimination against Engel in her personal capacity.

## II. The Individual Defendants are entitled to qualified immunity.

Even if Joseph has plausibly stated a § 1983 claim against any of the individual defendants, they are each entitled to qualified immunity. Joseph concedes that the Individual Defendants were acting within their discretionary

---

[9] Engel also incorporates the arguments made in Parts I.b.-c., *supra*, and in the Individual Defendants' original brief, regarding supervisory liability and the lack of an adverse action. Additionally, Joseph's allegations indicate that Engel favored Lewis's budgeting decisions because he is her romantic partner. Engel denies that she showed any deference to Lewis because of their relationship, but even if that were true, it is insufficient to state a claim for sex discrimination. *See* ECF No. 4, fn. 9.

authority and she has failed to show how they acted in contravention of "clearly established law" when taking the actions each of them took. As the Individual Defendants explained in their brief, the "clearly established" inquiry is "undertaken in light of the specific context of the case, not as a broad general proposition." *Leslie v. Hancock Cnty Bd. of Educ.*, 720 F.3d 1338, 1345 (11th Cir. 2013). Put another way: everyone knows that an employer or supervisor cannot discriminate against someone based on their sex. That is the "broad general proposition" which is insufficient to show "clearly established" law for purposes of a qualified immunity defense. However, Joseph must show that, in the context of this case, it was or should have been clear to these individuals that the actions they are accused of would constitute unconstitutional sex discrimination. *See, e.g., Rioux v. City of Atlanta,* 520 F.3d 1269, 1283 (11th Cir. 2008) (asking whether "a reasonable fire chief and a reasonable chief operating officer of a city would know that demoting a high-ranking, subordinate, discretionary officer in the factual circumstances presented here violated clearly established law" and answering in the negative). When properly framed, the pertinent questions in this case are:

  Would Stansbury or Peterson know that it is unconstitutional sex discrimination to fire a coach – who already had a disciplinary record and final written warning against her – for abusing her players and staff following an outside investigation which substantiated the claims of abuse, particularly when there are no allegations that any other coach behaved in a similar fashion?

      Would Lewis know that it is unconstitutional sex discrimination against Joseph to allocate fewer funds to WBB than to MBB, particularly in light of federal regulations which say that this action, on its own, is *not* a violation of law?

      Would Engel know that it is unconstitutional sex discrimination against Joseph to subject WBB to a single compliance investigation which apparently did not disrupt anything or result in any findings, discipline, or loss of pay or benefits to Joseph?

The answer to each question is no.

      Joseph points to a single case in support of her argument against qualified immunity, *Nicholson v. Georgia Department of Human Resources*, 918 F.2d 145 (11th Cir 1990), but that case fails to shed any light on the precise contours of the constitutional claims at issue here. As such, it is insufficient to satisfy the "clearly established law" inquiry. *Nicholson* involved a situation in which three people who worked in the same unit were redistributed after abolition of the unit and only the female employee experienced what was essentially a demotion. *Id.* at 146-148. Her job duties were substantially diminished and she was required to work in a hot storage room with no windows or ventilation while her male counterparts were given positions of their choosing and the Defendants offered no legitimate reasons for the differential treatment. This is easily distinguished from the case at bar and, at best, serves as a simple restatement of the generally acknowledged proposition that an employer should not discriminate based on sex. It does not, however, constitute existing precedent which would have "placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. at ___, 137 S. Ct.

548 (2017). The Individual Defendants are all entitled to qualified immunity and Joseph's claims against them must be dismissed.

Respectfully submitted, this 9th day of March, 2020.

|  |  |
|---|---|
| CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| BRYAN K. WEBB<br>Deputy Attorney General | 743580 |
| *s/ Katherine P. Stoff*<br>KATHERINE POWERS STOFF<br>Senior Assistant Attorney General | 536807 |
| *s/ Courtney C. Poole*<br>COURTNEY C. POOLE<br>Assistant Attorney General | 560587 |

Please serve:

Katherine Powers Stoff
Senior Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 656-3393
Email: kstoff@law.ga.gov

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(C) in 14-point Times New Roman type face.

This 9th day of March, 2020.

*s/ Courtney C. Poole*
Assistant Attorney General