# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| MACHELLE JOSEPH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOARD OF REGENTS OF | ) | |
| THE UNIVERSITY SYSTEM | ) | |
| OF GEORGIA and | ) | Civil Action No.: |
| GEORGIA TECH ATHLETIC | ) | 1:20-CV-00502-TCB |
| ASSOCIATION. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S NOTICE REGARDING DEFENDANT BOARD OF REGENTS' FAILURE TO PRESERVE TEXT MESSAGE EVIDENCE

Pursuant to the Court's oral rulings issued during the parties' January 14, 2021 discovery conference and paragraphs 7 and 8 of the parties' Joint Motion to Amend the Discovery Plan and Discovery Schedule, Plaintiff MaChelle Joseph ("Plaintiff"), through undersigned counsel, hereby files this Notice regarding Defendant Board of Regents of the University System of Georgia's ("BOR") failure to preserve text message evidence on the phones of four relevant witness custodians:  George Peterson, Lynn Durham, Joeleen Akin, and Felicia Tucker.

Plaintiff is providing the Court this Notice so that it has information regarding Defendant BOR's failure to preserve evidence to consider along with the evidence of preservation efforts BOR produced to the Court on January 22, 2021 for an in-camera review.   Plaintiff also respectfully requests leave to file a motion for sanctions once she has secured phone records belonging to Dr. Peterson, Ms. Durham, Ms. Akin, and Ms. Tucker.[1]

## I.   Factual Overview[2]

Plaintiff is the former Head Coach of the Georgia Institute of Technology's ("GT" or "the Institute") women's basketball team.[3]   Complaint ("Compl"), Dkt. 1-2, at ¶ 1.   During her 16 year tenure as Head Coach, Plaintiff believed that the Institute systemically failed to provide her and the women's basketball team funding

---

[1] As detailed below, witnesses in this case used their phones to text message about Plaintiff and the events related to this case frequently.  For purposes of this Notice, Plaintiff has provided the Court with the information she currently has either showing or strongly suggesting that text messages from the relevant time period from the phones of all four of these witnesses existed at one time.  On January 22, 2021, Plaintiff also issued third-party subpoenas to the phone carriers of these witnesses' to obtain further proof of the existence of these records, and Defendant's failure to preserve them, for purposes of her motion for sanctions.

[2] This is a factually complex case.  For purposes of the instant motion, Plaintiff has only included facts that are relevant to the Court's consideration of whether Defendant BOR failed to preserve relevant evidence after it had notice of potential litigation with Plaintiff.

[3] GT is a member institution of the Board of Regents of the University System of Georgia and is referred to such in this lawsuit.  Thus, reference to GT should be interpreted as synonymous with Defendant BOR.

and resources commensurate with that which it provided to the men's basketball team.  Compl. at ¶¶ 1, 51-92.  Plaintiff believed that the Institute's disparate allocation of funding and resources negatively impacted the terms and conditions of her employment and constituted discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII").  Compl. at ¶¶ 1, 51-92, 172.  Plaintiff also believed that the Institute's disparate allocation of funding and resources deprived the WBB team of equal athletic opportunity as required under Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 *et seq.*, ("Title IX").

Over her nearly two decades at GT, Plaintiff repeatedly complained to GT administrators about the Institute's disparate funding and resources it provided her and the women's basketball program relative to that which it provided to the men's basketball program.  Compl. at ¶¶ 93-106, 132-35, 156, 163-66, 170, 172, 178-81, 187.  Despite the important nature of the complaints Plaintiff raised, GT did not take Plaintiff's concerns of discrimination seriously.  Compl. at ¶¶ 97, 105, 136, 162, 164, 171, 173.  Rather, instead of responding to Plaintiff's legitimate complaints of discrimination by opening investigations into her allegations, GT responded by opening retaliatory investigations into Plaintiff herself.  Compl. at ¶¶ 122-136, 151-54, 159-61, 190-94, 198-200.

3

### A. Notices of Litigation

On November 21, 2018, Plaintiff, through employment litigation counsel, sent former GT President George Peterson a letter informing him that she believed GT was, and had been for some time, subjecting her to unlawful discrimination and retaliation in violation of Title VII and Title IX.  Compl. at ¶ 122; Plainitff-007585 (Ex. 1).  On February 22, 2019, Plaintiff, through employment litigation counsel, sent Dr. Peterson another letter about her belief that GT was discriminating and retaliating against her.  Compl. at ¶ 187; BOR-005347 (Ex. 2).  Then, on February 27, 2019, after GT abruptly and publicly placed Plaintiff on leave to investigate her for unstated personnel reasons, Plaintiff, through employment litigation counsel, sent another letter to GT about its' unlawful conduct.  Compl. at ¶ 188.  This correspondence was an e-mail to Dr. Peterson and GT Athletic Director Todd Stansbury informing them of Plaintiff's belief that GT's decision to place her on leave was retaliatory and that GT's action created legal liability.  BOR-002053 (Ex. 3).  Mr. Stansbury forwarded Plaintiff's February 27 e-mail to GT's Chief Litigation and Employment Counsel, Kathleen Wasch, who forwarded it to Deputy Attorney General for the Government Services & Employment Division, Bryan Webb, whose office handles litigation on behalf of GT.  *Id.*

On March 3, 2019, Lynn Durham, the then-Chief of Staff to Dr. Peterson, texted then-acting General Counsel Aisha Oliver-Staley and asked if they should preserve Plaintiff's email for any "future investigation," to which Ms. Oliver-Staley replied yes, noting that "we requested a litigation hold on it last week."  BOR-005838 (Ex. 4).[4]  On March 6, 2019, the outside investigator GT retained to investigate Plaintiff asked Senior Director and Human Resources Partner Julie Joyce who would represent GT if Plaintiff filed a lawsuit, to which Ms. Wasch responded that the Attorney General's office would represent it.  BOR-003127 (Ex. 5), BOR-002611 (Ex. 6).  On March 25, 2019, Plaintiff, through employment litigation counsel, sent a demand letter to GT's General Counsel, Ling-Ling Nie, again informing GT of her belief that it was discriminating and retaliating against her in violation of federal and state law.  Compl. at ¶ 200; BOR-005699.[5]  On March 26, 2019, GT terminated Plaintiff's employment.  Compl. at ¶ 202.

On March 27, 2019, Ms. Durham asked Ms. Nie and Ms. Wasch to send a copy of Plaintiff's March 25, 2019, demand letter to a list of GT employees

---

[4] Plaintiff obtained consent from BOR to produce Exhibit 4 to the Court with the student-athlete's name and information redacted.

[5] Plaintiff has not included the demand letter as among the exhibits due to the length of the document.  Should the Court desire to see the demand letter, Plaintiff would be happy to provide a copy of it to the Court.

identified in the letter so that these individuals knew what "has been alleged against them." BOR-006088 (Ex. 7). Later that day, Ms. Wasch sent an e-mail to GT officials, copying Mr. Webb, with the subject line "What to Expect." BOR-002558 (Ex. 8).[6] On April 16, 2019 and May 13, 2019, Plaintiff filed charges of discrimination with the U.S. Equal Employment Opportunity Commission against GT and the Georgia Tech Athletic Association ("GTAA"), alleging that both entities had terminated her employment for discriminatory and retaliatory reasons. Compl. at ¶ 23; PLAINTIFF004800 (Ex. 9); PLAINTIFF004883 (Ex. 10). On July 23, 2019, Plaintiff initiated legal action against GT, GTAA, and several individual defendants, including Dr. Peterson, in the U.S. District Court for the Northern District of Georgia. Plaintiff voluntarily dismissed that suit on October 23, 2019, then refiled the case in Fulton County Superior Court. The case was promptly removed back to this Court and discovery began on March 4, 2020.

### B. The Text Message Evidence Requested

In discovery, Plaintiff sought documents, including text messages, bearing on relevant issues in the case. In its' initial production of documents, BOR produced approximately 246 pages of text messages from the phones of Mr. Stansbury, Deputy Athletic Director Mark Rountree, former General Counsel Aisha-Oliver Staley,

---

[6] The body of the e-mail is redacted.

Associate Athletic Director of Student-Athlete Development Joeleen Akin, former GT women's basketball Player Personnel Administrator Felicia Tucker,  and Associate Athletic Director of Compliance Shoshanna Engel.[7]

These text messages were highly relevant evidence.  They showed, among other things, when GT first started to discuss Plaintiff's termination; when and under what circumstances the letters from parents cited by GT as among the reasons it retained an outside law firm, Littler Mendelson, P.C. ("Littler"), were created;[8] and about the timing and content of GT's directions with respect to how the Littler investigation was carried out.  While this evidence was very illuminating, Plaintiff had concerns that it was incomplete.  For instance, the text messages produced from Mr. Stansbury's phone showed that he communicated frequently by text message about Plaintiff, but BOR had only produced Mr. Stansbury's text messages from approximately February 4, 2019 to sometime in April 2019.[9]  This time period only

---

[7] It is Plaintiff's understanding that all of these text messages came from GT issued phones, over which GT unquestionably had control.  BOR also produced text messages from the personal device of Ms. Oliver-Staley, who apparently used her personal phone to communicate by text message about work related matters.

[8] The report that was produced from the Littler investigation is the report upon which GT justified its decision to terminate Plaintiff's employment.

[9] Defendant BOR also produced text messages from Mr. Stansbury's phones as screenshots of his phone, the vast majority of which either cut off text from the text message and/or the date of the text message.  Accordingly, Plaintiff is unable to determine the dates of all text messages produced from his phone.

captured a small portion of the relevant time period in which Plaintiff had reason to believe relevant text messages may exist, namely from September 1, 2018 to May 1, 2019, hereinafter referred to as "the Relevant Time Period."[10]

The text messages also showed that Mr. Stansbury and Ms. Oliver-Staley frequently communicated about Plaintiff with Ms. Durham by text message, but BOR had not produced any text messages from the phone of Ms. Durham or Dr. Peterson.   The text messages also showed that Ms. Akin had communicated frequently by text message with the Littler investigator, Eric Hoffman, about the Littler investigation, but BOR had only produced 18 messages from Ms. Akin's phone, 12 of which were sent to or from Plaintiff.  The text messages between Ms. Akin and Mr. Hoffman also referenced text messages that Ms. Akin had sent to players, which BOR had not produced.  Finally, phone records belonging to Ms. Tucker showed that she had exchanged dozens of text messages with Ms. Oliver-Staley and women basketball players during the Relevant Time Period, but BOR had only produced one text message sent to or from Ms. Tucker.

### C. The Witness Custodians & the Text Message Evidence That Was Not Preserved

---

[10] The parties are not currently disputing this time period.

On November 9, 2020 and again on December 11, 2020, Plaintiff informed GT of her belief that its production of text message evidence was deficient and requested that it re-collect and produce all relevant text messages from the phones of certain relevant witnesses, including Dr. Peterson, Ms. Durham, Ms. Akin, and Ms. Tucker for the Relevant Time Period.   *See* November 9, 2020 Letter from Plaintiff's Counsel to C. Poole, pp.5-7 (Ex. 11) and December 11, 2020 Letter from Plaintiff's Counsel to C. Poole, pp. 7-8 (Ex. 12).

Plaintiff requested text messages from these custodians' phones because they are key witnesses in the case whose text message production was deficient.  At all times relevant to this case, Dr. Peterson was the president of GT and was one of two people who decided to terminate Plaintiff's employment.  Further, at all times relevant to this case, Ms. Durham was the Chief of Staff to Dr. Peterson.  In this role, Ms. Durham served as Dr. Peterson's right hand and effectively acted as his proxy. As such, Ms. Durham also had input into all critical decisions relating to Plaintiff's employment.

Similarly, Ms. Akin, who served as Plaintiff's direct supervisor at different points in Plaintiff's career at GT (including during the last month of her employment), also played a role in critical events in this case.  Not only did Plaintiff raise concerns of discrimination, retaliation, and conflict of interest with Ms. Akin

9

on multiple occasions, but Plaintiff has alleged Ms. Akin participated in retaliatory acts against her and that she had significant input into critical decisions relating to Plaintiff's employment, including identifying the persons who were interviewed as part of the Littler investigation.

Finally, Ms. Tucker was a long-time member of Plaintiff's staff who played an instrumental role in facilitating a January 26, 2019, meeting between four women basketball players and Ms. Oliver-Staley, during which GT alleges the players lodged the complaints against Plaintiff that justified the retention of Littler to investigate Plaintiff.  Ms. Tucker also was one of two employees who filed a complaint against Plaintiff with Human Resources, which GT has cited as another basis for its retention of Littler to investigate Plaintiff.

In response to Plaintiff's requests regarding these key witnesses, GT informed Plaintiff that it no longer had access to text messages from the Relevant Time Period from the phones of these custodians.  Specifically, GT informed Plaintiff that Defendant Dr. Peterson's phone was (and apparently still is) *set to delete text messages after 30 days.  See* January 13, 2021 Letter from Courtney Poole to Plaintiff's Counsel (Ex. 13).  Additionally, GT informed Plaintiff that on August 26, 2019, a month after Plaintiff had initiated legal action, the GT technology department took possession of Ms. Durham's phone and restored it to factory

settings, which Plaintiff understands *resulted in the deletion all text messages from the phone from the Relevant Time Period*.  *See* December 3, 2020 Letter from Courtney Poole to Plaintiff's Counsel (Ex. 14).

Further, GT informed Plaintiff that while it had made clones of the phones of Ms. Akin and Ms. Tucker, *it had not done so until February 20, 2020, seven months after Plaintiff had initiated litigation.*  Ex. 14.  Because Ms. Akin's phone was allegedly set to delete text messages after 1 year, the belatedly created clone only captured text messages from a small portion of the relevant time period – *i.e.*, February 17, 2019 to May 1, 2019.  *See* December 18, 2020 Letter from Courtney Poole to Plaintiff's Counsel (Ex. 15), p. 1.  Further, for reasons that GT has not been able to explain, it is unable to access text messages on the clone of Ms. Tucker's phone before October 2019, a time frame that post-dates Plaintiff's termination by seven months.  Ex. 14-15.  Finally, BOR recently informed Plaintiff that Ms. Tucker also may have used other messaging apps to communicate with players, however, it is BOR's understanding that *all of those communications have been deleted*.  *See* January 19, 2021 Letter from Courtney Poole to Plaintiff's Counsel (Ex. 16)

Discovery evidence shows that GT employees, including Ms. Durham, Ms. Akin, and Ms. Tucker, used text message to communicate about Plaintiff and the issues in this case quite frequently.  Indeed, to date, BOR has produced

approximately 2,000 pages of relevant text messages, including over 1,600 text messages it recently produced from Ms. Akin's phone for the time period February 17, 2019 to April 24, 2019 alone.  The text messages produced thus far are not just marginally relevant to the case; they bear directly on core issues in the case, such as the circumstances under which the student athletes and their parents complained about Plaintiff; the role which GT played in directing the Littler investigation; and the decision to terminate Plaintiff's employment.

As detailed below, the text messages at issue, which were sent from work-issued devices, were an obvious source of relevant information which BOR knew or should have known existed.  Defendant BOR's failure to take reasonable steps to preserve these text messages once on notice of potential and then actual litigation with Plaintiff violated its duty to preserve evidence.

## II.    Argument

Federal law imposes a duty on a party to preserve relevant evidence when it has notice that the evidence is relevant to litigation or "when a party should have known that the evidence may be relevant to future litigation."  *Griffin v. GMAC Commercial Finance*, 2007 WL 521907, at *3 (N.D. Ga. February 15, 2007).  "Notice does not have to be of actual litigation but can concern 'potential' litigation."  *Id.*  This duty obligates the party to preserve evidence in the possession of "those

employees likely to have relevant information – the key players in the case, and applies to unique, relevant evidence that might be useful to the adversary." *Dee Atta v. Cisco Sys., Inc.,* No. 1:18-cv-1558-CC-JKL, 2020 WL 7384689, at *5 (N.D. Ga. Aug. 3, 2020).  Spoliation occurs when a party destroys, alters, or fails to preserve relevant evidence for another's use in pending or reasonably foreseeable litigation. *Graff v. Baja Marine Corp.,* 310 Fed.Appx. 298, 301 (11th Cir.2009).

### A. Notice of Potential Litigation

Here, Defendant was on notice to reasonably anticipate litigation with Plaintiff, and therefore under a duty to preserve evidence, as early as November 21, 2018, when Plaintiff, through employment litigation counsel, sent the letter to Dr. Peterson accusing GT of unlawfully discriminating and retaliating against Plaintiff in violation of Title VII and Title IX.  *See Coal. Am., Inc. v. Arlotta*, No. 1:03-CV-4012-CC, 2008 WL 11320050, at *3 (N.D. Ga. Mar. 31, 2008) (defendants should have understood that litigation was reasonably foreseeable after receiving letter from Plaintiff's counsel accusing Defendants of potential illegal action).  Dr. Peterson referred to this letter as one of Plaintiff's "retaliation claims."  BOR-005842 (Ex. 17).[11]

---

[11] This document was marked Confidential because it was produced as part of a text message thread that contained confidential information.  Plaintiff has conferred with

Even if the Court disagrees that BOR was on notice to reasonably anticipate litigation on November 21, 2018, it is beyond dispute that it was on notice by the end of February 2019. Indeed, by this time, Mr. Stansbury had forwarded Plaintiff's February 27 e-mail from counsel indicating that GT was potentially subject to legal liability to GT's litigation counsel, Ms. Wasch, who forwarded it to Mr. Webb, whose office would represent GT in a lawsuit. *See Coal. Am., Inc. v. Arlotta*, No. 1:03-CV-4012-CC, 2008 WL 11320050, at *3 (N.D. Ga. Mar. 31, 2008) (letter from Plaintiff's attorney indicating potential legal liability is sufficient to put party on notice of potential litigation).

While this evidence is more than enough to establish that GT was anticipating litigation as of February 27, there is more. On March 3, 2019, Ms. Durham texted then-acting General Counsel Aisha Oliver-Staley and asked if they should preserve Plaintiff's email for any "future investigation," to which Ms. Oliver-Staley replied yes, noting that "we requested a litigation hold on it last week." Ex. 4. Then, on March 6, 2019, the outside investigator GT retained to investigate Plaintiff, Mr. Hoffman, asked Ms. Joyce in Human Resources who would represent GT if Plaintiff filed a lawsuit, to which Ms. Wasch responded the Attorney General's office.

---

BOR to confirm that there is nothing Confidential referenced in this particular text message.

Exhibits 5-6.   On March 27, 2019, the day after GT terminated Plaintiff's employment, Ms. Wasch e-mailed a group of GT officials, including Ms. Akin, whose text messages were not preserved, to organize a meeting about "What to Expect." Ex. 8.

Then, less than a month after her termination, Plaintiff filed her first charge of discrimination and retaliation with the EEOC, which she amended approximately a month later to add co-defendant GTAA as her joint employer.   *See Bradley v. Pfizer, Inc.*, No. 1:08-CV-3437, 2011 WL 13168986, at *8 (N.D. Ga. Jan. 21, 2011), report and recommendation adopted, No. 1:08-CV-3437-TWT, 2011 WL 13175434 (N.D. Ga. Feb. 14, 2011), aff'd, 440 F. App'x 805 (11th Cir. 2011).   Finally, on July 23, 2019, Plaintiff initiated legal action against GT, GTAA, and several individual defendants, including Dr. Peterson.

### B. The Custodians Are Key Witnesses.

Once on notice of potential litigation, BOR knew or should have known that Dr. Peterson, Ms. Durham, Ms. Akin, and Ms. Tucker were key witnesses in the case who possessed information that may be relevant to future litigation with Plaintiff which it had an obligation to preserve.   As described above in section I(C), at all times relevant to this case, Dr. Peterson was the president of GT and was one of two people who decided to terminate Plaintiff's employment.   He was also a named

individual defendant.[12]   During this same time period, Ms. Durham was his Chief of Staff who essentially acted as his proxy.  She was involved in and had input in most of the critical events in the case.

Ms. Akin, who served as Plaintiff's direct supervisor at different points in Plaintiff's career at GT, also played a role in critical events in this case, including coordinating aspects of the Littler investigation.  Finally, Ms. Tucker not only helped facilitate the January 26 meeting between the players and Ms. Oliver-Staley, during which the players lodged the first complaints about Plaintiff, but she herself filed a complaint with Human Resources about Plaintiff.  GT alleges it retained Littler to investigate both sets of these complaints.

### C. The Custodians Had Relevant Text Message Evidence.

Once on notice of potential litigation, BOR also knew or should have known that Dr. Peterson, Ms. Durham, Ms. Akin, and Ms. Tucker had information that may be relevant to future litigation with Plaintiff on their mobile devices.  Today, text messaging is among the primary tools by which colleagues communicate about work matters.  GT employees are no exception.  Indeed, BOR has itself admitted that GT employees frequently communicated by phone, which it said was "not surprising."

---

[12] Of course, Dr. Peterson, as a named defendant, had an individual duty to preserve evidence in addition to his duty on behalf of Georgia Tech and the BOR.

*See* December 30, 2020 Letter from Courtney Poole to Plaintiff's Counsel (Ex. 18).[13]
Further, the approximately 2,000 pages of text message evidence produced thus far
confirms that is the case.

Additionally, and perhaps more importantly, at the time BOR and President
Peterson were on notice of potential litigation with Plaintiff, the Institute's then-
acting General Counsel, Ms. Oliver-Staley, who apparently played a role in issuing
a litigation hold related to Plaintiff's e-mail, had been communicating by text
message on her personal phone with Ms. Durham, Ms. Akin, and Ms. Tucker about
Plaintiff and events in this case, including about the alleged player complaints
against Plaintiff, the Littler investigation, and decisions with respect to Plaintiff's
employment.[14]

In other words, someone who was responsible for preserving evidence in this
case (Ms. Oliver-Staley) had direct knowledge that three of the four individuals
whose phones are at issue – *i.e.* Ms. Durham, Ms. Akin, and Ms. Tucker – regularly
used text messaging as a means to communicate about Plaintiff and issues relating

---

[13] In addition to the letters attached as Exhibits 11-17, Plaintiff's counsel also sent a
letter to Ms. Poole on December 23, 2020, relating to the spoliation issue.  While
Plaintiff does not reference this letter in this Notice, she has attached it here as
Exhibit 19 for completeness.
[14] Defendant BOR has produced over 70 pages of text messages between Ms. Oliver-
Staley, Ms. Durham, Ms. Akin, and Ms. Tucker collectively.

to her employment.  While Plaintiff believes this evidence is more than sufficient to establish that BOR knew or should have known that Dr. Peterson, Ms. Durham, Ms. Akin, and Ms. Tucker had text messages on their mobile devices relevant to future litigation with Plaintiff, there is more.  On March 1, 2019, and March 27, 2019, Plaintiff, through employment litigation counsel, sent letters to the Institute's Legal Affairs Office, including to Ms. Wasch, seeking documents pursuant to the Georgia Open Records Act.  Included among these requests were specific requests for all documents, including text messages, belonging to Dr. Peterson, Ms. Akin, and Ms. Tucker.  *See* March 1, 2019 Letter from Lisa Banks to Pamela Rary (Ex. 20); March 27, 2019 Letter from Lisa Banks to Kathleen Wasch (Ex. 21).

### D. BOR Failed to Preserve Relevant Evidence.

Despite having repeated notice of potential litigation starting at least as of November 21, 2018, and despite having reason to believe that Dr. Peterson, Ms. Durham, Ms. Akin, and Ms. Tucker had relevant information relating to Plaintiff's legal claims on their mobile devices, BOR did not, to Plaintiff's knowledge, take any meaningful steps to preserve the contested text message evidence at any time between November 21, 2018, when BOR was put on notice of potential litigation,

and July 23, 2019, when Plaintiff actually initiated litigation.[15]   To the contrary, as far as Plaintiff is aware, BOR did not, and still to this day has not, taken any steps to preserve text messages on the phone of Dr. Peterson, including by simply asking him to turn the automatic deletion setting on his phone.  Further, on August 26, 2019, *while the parties were in active litigation*, BOR *took possession of Ms. Durham's phone and returned it to factory settings, thereby deleting all messages from the phone.*

Additionally, while the Institute created clones of the phones belonging to Ms. Akin and Ms. Tucker, it did not do so until February 2020, over *one year after* BOR was first put on notice of litigation with Plaintiff and *seven months after* Plaintiff had actually initiated legal action.  At the time BOR made a clone of Ms. Akin's

---

[15] Defendant BOR has characterized Plaintiff's expectation that BOR would have taken reasonable steps to preserve text message evidence from a discrete period of time on the phones of four obviously relevant witnesses as a request to "preserve exact copies of the phones of any and all witnesses."  Ex. 18, p. 1.  To be clear, Plaintiff is not, and has never, asserted that Defendant BOR had an obligation to "preserve exact copies of the phones of any and all witnesses."  Plaintiff has argued that *BOR had an obligation to take reasonable steps to preserve an obvious source of relevant evidence in the possession of four obvious witnesses*.  Those steps could have included making copies of the phones, but that was not required.  Instead, BOR could have simply issued a litigation hold notice to these witnesses instructing them to back their phones up to the cloud, turn off any automatic deletion settings on their phones, and not manually delete text messages, and then asking that they provide a written response affirming they received the instruction, understood the instruction, and complied with the instruction.

phone, her phone was apparently set to delete messages after a year, meaning that the belatedly created clone did not preserve messages for the first five months of the Relevant Time Period, *i.e.* between September 1, 2018 and February 17, 2019. For reasons that BOR allegedly cannot ascertain, BOR is unable to access any text messages on Ms. Tucker's phone before October 2019, a timeframe that post-dates Plaintiff's termination by nearly six months. And Ms. Tucker apparently also had communicated with women basketball players on other messaging apps which Plaintiff understands *have also been deleted*.

### E. Relevant Evidence was Destroyed.

As detailed below, there is reason to believe that Ms. Durham, Ms. Akin, Ms. Tucker, and Dr. Peterson had text messages on their phones from the Relevant Time Period that were not preserved and subsequently destroyed. Plaintiff has issued third-party subpoenas for the phone records of Ms. Durham, Ms. Akin, Ms. Tucker, and Dr. Peterson so that she can provide the Court with additional proof of the scope of the text messages from these witnesses' phones from the Relevant Time Period that existed and were destroyed.

### 1.  *Lynn Durham*

BOR has stated that Ms. Durham had "potentially relevant text messages" on her phone that may now be "unrecoverable." Ex. 15, p. 4 ("With regard to Ms.

Durham's phone, while it is clear that potentially relevant text messages from *her* devices may be unrecoverable…) (emphasis in original).  While BOR has also argued that the loss of these messages does not constitute spoliation because it can obtain Ms. Durham's text messages from the phones of other custodians, this statement is in part inaccurate and in part unsubstantiated.  First, all text messages between Ms. Durham and Dr. Peterson from the time period relevant to this case are in fact gone because BOR did not preserve messages on either of their phones.  Additionally, all text messages between Ms. Durham and Ms. Akin before February 17, 2019, are also gone because BOR did not preserve messages on either of their phones before February 17, 2019.

Second, as for any other text messages Ms. Durham may have sent to custodians other than Dr. Peterson and Ms. Akin, BOR has not shown that it can, or that it has, obtained and produced all other relevant messages that Ms. Durham sent. In her November 9 letter to BOR, Plaintiff asked BOR to collect, review, and produce text messages from Ms. Durham's phone which she sent or received to or from a set list of 20 recipients.  Ex. 12, pp.5-6, Exhibit A.  This list of recipients captured the group of individuals whom Plaintiff believes Ms. Durham may have communicated with about Plaintiff and the events that led to the termination of her employment.  To date, BOR has not informed Plaintiff (1) whether it preserved text

messages on the phones of these 20 recipients, such that text messages between Ms. Durham and these recipients would still exist, or (2) if so, whether it has reviewed those text messages and produced all relevant communications to Plaintiff.[16]

2.   *Joeleen Akin*

In light of the frequency with which Ms. Akin apparently communicated about Plaintiff and events at issue in this case – *i.e.,* over 1,600 text messages in an approximately 2 month time-frame – reason suggests that the only way Ms. Akin did not send or receive any other relevant text messages from September 1, 2018 to February 17, 2019, would be if she just stopped using her phone to text message. However, the evidence shows that is not the case.  Specifically, text messages produced from the phone of Ms. Oliver-Staley show that at least she and Ms. Akin exchanged a handful of relevant text messages before February 17, 2019.

Further, and importantly, BOR has not claimed that Ms. Akin did not have any other relevant text messages on her phone before February 17, 2019.  Instead,

---

[16] BOR has stated the "only text messages that Ms. Durham might have had which could be probative of any issue in this case would be those that were exchanged with other GT officials."  Ex. 15, p. 4.  Not only is this statement based on speculation, as how could BOR know what text messages existed since they have been deleted, but it is also vague as GT has not explained who constitutes a "GT official." Regardless, as referenced in the parties' January 14 discovery conference, Plaintiff has concerns that she still does not even have all relevant text messages from the phones of the custodians whose text messages were preserved.

BOR has stated that she has no reason to believe that any "significant" evidence from Ms. Akin's phone has been lost. Ex. 15, p. 2 ("While it does appear that some text messages from the phones of Joeleen Akin and Felicia Tucker cannot be recovered, I reiterate my stance that I have no reason to think that any significant evidence has been lost.") This claim, which is based on pure speculation, is not an excuse or a cure for failing to preserve text messages on Ms. Akin's phone before February 17, 2019. Plaintiff is entitled to all relevant evidence, not just some of it. *See Wynn v. City of Griffin, Georgia*, No. 3:16-CV-094-TCB, 2017 WL 11568639, at *2 (N.D. Ga. June 21, 2017) ("The term 'relevant' . . . is to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case.")

### 3.  *Felicia Tucker*

Plaintiff has Ms. Tucker's phone records for a portion of the Relevant Time Period, which shows that she sent dozens of text messages to women basketball players and a former disgruntled GT women's basketball staff member during the Relevant Time Period that are now unrecoverable. For instance, Ms. Tucker sent several text messages to women basketball players in the days leading up to and directly following her January 26 meeting with Ms. Oliver-Staley and the players. Similarly, Ms. Tucker also sent several text messages to women basketball players

on February 26, 2019, including the two players who allegedly lodged complaints about Plaintiff.  Additionally, Ms. Tucker apparently may have also used other messaging apps to communicate with women basketball players during the Relevant Time Period, but those messages were apparently deleted prior to Plaintiff's termination.

BOR has argued that it was not surprising that Ms. Tucker exchanged text messages with players on the women's basketball team, given her position as the women's basketball Player Personnel Administrator.  While it is possible that some of the text messages that Ms. Tucker exchanged with student athletes related to mundane basketball tasks, it does not follow that all of them did.  Indeed, handwritten notes produced from Ms. Tucker's notebook detailing a timeline of events related to this case reference text messages she sent during the Relevant Time Frame.[17]

### 4.  *George Peterson*

Dr. Peterson's phone apparently is, and was for some time before the events in this case, set to delete text messages after 30 days.  While BOR has stated that Dr. Peterson did not text frequently, it has not alleged that Dr. Peterson did not text at

---

[17] BOR designated Ms. Tucker's notes as Confidential, but Plaintiff can provide the Court a copy under seal if needed.

all.  To date, BOR has not explained what, if any, steps BOR has taken to ensure that it has produced all relevant text messages from Dr. Peterson's phone, such as producing the text messages he may have sent from the phones of other witnesses whose text messages were preserved.

## III.    Requested Relief

The evidence shows that BOR failed to preserve text message evidence on the work-issued phones of four relevant witnesses after it was on notice of potential litigation with Plaintiff.  Plaintiff believes that BOR's failure to preserve this evidence has resulted in the destruction of evidence that was crucial to Plaintiff's ability to prove her case.  Plaintiff respectfully requests leave to file a motion for sanctions against BOR for spoliation of evidence once she obtains and reviews the phone records for these witnesses.[18]

---

[18] Because Plaintiff has made a preliminary showing of spoliation, she believes she is entitled to obtain a copy of the litigation hold notice BOR issued in this case.  *See, e.g., In re 3M Combat Arms Earplug Prod. Liab. Lit.*, No. 3:19-MD-2995, 2020 WL 1321522, at *8 (N.D. Fla. Mar. 20, 2020) (litigation hold notices may be discoverable if there is a preliminary showing of spoliation).  She also believes that a sworn affidavit from BOR attesting to information about defendant's preservation efforts would be appropriate.  *Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*, No. 2:11-CV-746-WKW, 2016 WL 9687001, at *4-5 (M.D. Ala. Jan. 22, 2016) (concluding that sworn affidavit attesting to information about defendant's preservation efforts struck appropriate balance between protecting privilege and providing plaintiff right to the production of relevant information.)

Respectfully submitted this 26th day of January, 2021.

_/s/ Colleen E. Coveney_
Lisa J. Banks*
banks@kmblegal.com
Colleen E. Coveney
Georgia Bar No. 686460
coveney@kmblegal.com
Marilyn Robb*
robb@kmblegal.com
**Katz, Marshall & Banks, LLP**
1718 Connecticut Avenue, NW, Sixth Floor
Washington, D.C. 20009
Phone: (202) 299-1140
Fax:     (202) 299-1148

Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleybeal.com
Rudi Julius
Georgia Bar No. 605298
rjulius@buckleybeal.com
**Buckley Beal LLP**
600 Peachtree Street NE, Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101

*(admitted pro hac vice)*

*Counsel for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(C) in 14-point Times New Roman type face.

This 26th day of January, 2021.

*s/ Colleen E. Coveney*
Colleen E. Coveney
Georgia Bar No. 686460

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MACHELLE JOSEPH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BOARD OF REGENTS OF | ) |
| THE UNIVERSITY SYSTEM | ) |
| OF GEORGIA and | ) Civil Action No.: |
| GEORGIA TECH ATHLETIC | ) 1:20-CV-00502-TCB |
| ASSOCIATION. | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2021, I electronically filed the above

**NOTICE REGARDING DEFENDANT BOARD OF REGENTS' FAILURE**

**TO PRESERVE TEXT MESSAGE EVIDENCE** with the Clerk of Court using

the CM/ECF system which will automatically send email notification of such filing

to the following attorneys of record and have served the **NOTICE REGARDING**

**DEFENDANT BOARD OF REGENTS' FAILURE TO PRESERVE TEXT**

**MESSAGE EVIDENCE** on the following attorneys of record by email as follows:

Courtney Poole (cpoole@law.ga.gov)

Katherine Powers Stoff (kstoff@law.ga.gov)
Christopher Paul Galanek (chris.galanek@bclplaw.com)
Tania Christine Faransso (tania.faransso@wilmerhale.com)
Ronald C. Machen (ronald.machen@wilmerhale.com)
Jamie Yood (Jamie.yood@wilmerhale.com)

By:   */s/ Colleen E. Coveney*
      Colleen E. Coveney
      Georgia Bar No. 686460

      *Counsel for Plaintiff*