**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MACHELLE JOSEPH, | |
| Plaintiff, | CIVIL ACTION FILE NO. 1:20-CV-00502-TCB |
| v. | |
| BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA; GEORGIA TECH ATHLETIC ASSOCIATION; GEORGE P. PETERSON, in his individual capacity; M. TODD STANSBURY, in his individual capacity; MARVIN LEWIS, in his individual capacity; and SHOSHANNA ENGEL, in her individual capacity, | |
| Defendants. | |

**DEFENDANT BOARD OF REGENTS' RESPONSE TO
PLAINTIFF'S NOTICE REGARDING DEFENDANT'S
ALLEGED FAILURE TO PRESERVE EVIDENCE**

COMES NOW, Defendant Board of Regents and, pursuant to the Court's

January 26, 2021 Order (ECF No. 122), submits this, its response to Plaintiff's

Notice regarding its alleged failure to preserve text message evidence, and shows

this Court as follows:

1

## I.      Background and Factual Overview

The parties have come before the Court with regard to Plaintiff MaChelle Joseph's allegation that Defendant Board of Regents ("BOR") failed to preserve or destroyed relevant evidence in this case (Plaintiff's Notice, "Pl. Notice," ECF No. 123). By and large, the parties agree that the BOR was under a duty to preserve relevant information; the primary dispute appears to be over the scope of that duty and the manner in which the BOR fulfilled it, particularly with respect to text messages. However, this is not a case where any specific text messages are at issue. Joseph has not, and cannot, cite to any controlling law or standard which would establish that the BOR had an obligation to identify and preserve every passing communication which might have referred to Joseph or her employment, and her allegations of spoliation are too vague and speculative to warrant any further consideration from this Court.

For purposes of Plaintiff's Notice and this Response, the relevant facts are as follows: On January 26, 2019, four student-athletes from the Georgia Tech Women's Basketball ("WBB") Team met with then interim-General Counsel and Vice President for Ethics and Compliance Aisha Oliver-Staley to speak with her regarding their concerns and complaints about Head WBB Coach MaChelle

Joseph.[1] Because the athletes were reluctant to have their names attached to any formal complaints, Ms. Oliver-Staley asked them to see if their parents would provide letters documenting the complaints. Ms. Oliver-Staley, alarmed by what she had heard, consulted directly with President Bud Peterson and the President's Chief of Staff Lynn Durham and decided that an investigation into the claims was warranted. In early February, 2019, the Human Resources office at GT worked to engage the services of Eric Hoffman of the firm Littler Mendelson, P.C., to conduct an investigation into the student-athletes' claims and related parent letters (the "Littler Investigation").

Mr. Hoffman began his investigation on or around February 25, 2019. Joeleen Akin, Senior Women's Administrator and then-Sport Administrator for WBB was tasked with assisting Mr. Hoffman in arranging schedules of interviews and putting him in contact with individuals who might be interviewed as part of the investigation. On February 26, 2019, two of the original four complaints indicated to Ms. Akin, Ms. Oliver-Staley, and Athletic Director Todd Stansbury

---

[1] This is not merely an allegation, as indicated by Joseph. *See* Pl. Notice, p. 10. Two of the four complaints have now been deposed and have stated under oath that they met with Ms. Oliver-Staley to communicate their concerns and complaints about Joseph's behavior. Ms. Oliver-Staley has also testified with respect to this meeting and the actions she took in response to it, and the BOR has provided information about this meeting in its sworn interrogatory responses.

that they no longer wished to play basketball for MaChelle Joseph and intended to quit the team. That day, Joseph was placed on paid administrative leave pending the outcome of the investigation.

Mr. Hoffman's investigation concluded on or around March 18, 2019, and he issued a final report to GT officials on March 20, 2019. A copy of the report was given to Joseph, along with an opportunity to provide a response. On March 26, 2019, Mr. Stansbury, Dr. Peterson, Ms. Durham, Ms. Oliver-Staley, General Counsel Ling-Ling Nie, Managing Attorney Kate Wasch, and Chief Human Resources Officer Kim Harrington met to discuss the report and Joseph's response. Ultimately, Joseph's employment was terminated on March 26, 2019.

## II.     The duty to preserve attached no earlier than February 26, 2019.

The BOR accepts that it was on limited notice of potential litigation from Joseph as of February 26, 2019, when the decision was made to place her on paid administrative leave pending the outcome of the Littler Investigation. Prior to that point, however, there was no reason to believe that Joseph would file suit because the BOR had not taken any actions against Joseph.[2] Indeed, even at that point, any

---

[2] The BOR does not concede, and expressly denies, that placing an employee on paid administrative leave pending the outcome of an investigation is an adverse employment action within the meaning of Title VII or Title IX. However, for purposes of the litigation hold analysis, the BOR acknowledges that this job action

4

anticipation of litigation was still tentative, as the investigation could have
completely exonerated Joseph.

### a. Ms. Banks's November 21, 2018 letter is not sufficient to trigger the duty to preserve.

Joseph attempts to backdate the BOR's duty to preserve to a time at which
the BOR had not even taken any adverse actions against her. This is, of course,
preposterous; the BOR cannot be under a duty to preserve anything for litigation
when it has no reason to believe that it is actually subject to suit.[3] Ms. Banks'
November 21 letter is vague and references only Joseph's suspicion that, *if* her
contract were not renewed,[4] such non-renewal *might* be the result of "retaliatory
motives of some in the GT Athletics Department." *See* Pl. Notice, Exhibit 1. The
letter does not elaborate on who Joseph believed to harbor such retaliatory motives,
nor does it provide any details which would substantiate her suspicions or alert the
BOR as to what information, exactly, it would be under a duty to preserve. Further,

---

was sufficient to put it on notice that litigation may be forthcoming, should the
investigation result in Joseph's termination.

[3] *See* The Sedona Conference, *Commentary on Legal Holds, Second Edition: The
Trigger & The Process*, Part I.B. "Triggering the Duty to Preserve," 20 SEDONA
CONF. J. 341 (2019) (When determining if a duty to preserve has been triggered, "a
number of factors should be considered, including the level of knowledge within
the organization about the claim and the risk to the organization posed by the
claim.")

[4] The BOR has already been found not to be a party to this contract.

the letter professes Joseph's intent to work collaboratively to resolve any potential

issues related to her employment and indicates that Ms. Banks will "be in touch

soon with a more detailed accounting." *Id.* This letter, standing alone, cannot

trigger any meaningful duty to preserve because, in failing to specify any allegedly

adverse actions at issue or who took them, it does not put the BOR on notice of any

legitimate claims. Ms. Banks did not write again until February 22, 2019, and even

then, she wrote about an entirely separate issue. *See* Pl. Notice, Exhibit 2.[5]

### III.    The parties' primary dispute is over the scope of the BOR's duty to preserve, which must be considered from the BOR's perspective.[6]

The foregoing notwithstanding, and as noted above, the BOR does not

quarrel with the general notion that it had a duty to preserve evidence – even text

message evidence – which may be relevant to this action; the parties' primary

dispute appears to be over the scope of that duty and the manner in which the BOR

---

[5] This letter is similarly insufficient to place the BOR on notice that it should have retained any text messages presently at issue. The February 22 letter related to a decision about whether to permit WBB sophomores to live off-campus; it had nothing to do with the Littler Investigation or Joseph's termination, and none of the individuals identified in Plaintiff's letter were involved in making the housing decision. Ms. Akin communicated the decision to Joseph and her involvement in that process was documented in emails which have been preserved and produced.

[6] Many of the arguments made herein have already been communicated to Plaintiff's counsel during communications related to text messages. *See, e.g.* Pl. Notice, Exhibits 14, 15, 18. Defendant BOR hereby incorporates those arguments in full.

attempted to fulfill its duty. At the outset, the BOR notes that the scope of a party's

duty to preserve may change over the course of time and litigation:

> A variety of events may alert a party to the prospect of litigation.
> Often these events provide only limited information about that
> prospective litigation, however, so that the scope of information that
> should be preserved may remain uncertain. It is important not to be
> blinded to this reality by hindsight arising from familiarity with an
> action as it is actually filed.

Fed. R. Civ. P. 37, 2015 Advisory Committee Notes. Once Joseph's termination

was decided upon, the BOR reasonably foresaw that she might file a lawsuit

related to that job action. Even still, upon recognizing the threat of litigation,

"litigants need not…'preserve every shred of paper, every e-mail or electronic

document, and every backup tape.'" *Storey v. Effingham Cty.*, Case No. CV415-

149, 2017 U.S. Dist. LEXIS 93147, *12-13 (S.D. Ga. 2017) (citing *Zubulake v.

UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N. Y. 2003)).[7] The reason for this is

simple and self-evident: it is an impossible standard to meet.

 In her arguments and representations to this Court, Joseph takes out of

context the various documentation that has been produced to date and she relies

heavily on the idea that any potentially lost text messages were "an obvious source

---

[7] *See also* The Sedona Conference, *Commentary on Legal Holds, Second Edition:
The Trigger & The Process*, Part I.C., "Implementing the Legal Hold" 20 SEDONA
CONF. J. 341, 355 n. 23 (2019).

of relevant information," Pl. Notice, p. 12, but never explains how.[8] Her conjecture

regarding the relevancy of any potentially lost messages is insufficient to establish

that the BOR had a duty to preserve them. In her Notice, Joseph has not cited (and

the BOR is not aware of) any case which would establish the expectation that a

defendant to a discrimination and retaliation lawsuit is under a duty to preserve any

and all communications about the plaintiff or her employment, regardless of how

tangential or opaque they may be, yet that is what Joseph now accuses the BOR of

failing to do. It bears repeating that this is not a case where any specific text

messages are at issue: the student-athletes did not complain of harassing text

messages from Joseph; Joseph has never complained of harassing text messages

from any other BOR employees; Joseph has not alleged that she engaged in

protected conduct via text message; and the BOR is not relying on any specific text

messages as part of its defense. *Cf. Sturdivant v. City of Atlanta,* Case. No. 1:11-

cv-2310-RLV, 2014 U.S. Dist. LEXIS 186658 (N.D. Ga. 2014) (plaintiff

complained of sexual harassment which took the form of objectionable text

---

[8] The undersigned has repeatedly asked counsel for Plaintiff to identify what exactly it is that she contends is missing from the BOR's productions, or to articulate how the allegedly missing text messages can bear on any of the issues in this case. Plaintiff's counsel has never been able to provide an answer and, even in this filing before the Court, she repeatedly asserts that "relevant evidence" which is "crucial" to her case is now lost, yet provides no detail.

messages); *McCalister v. TVA Bd. Of Dirs.*, Case. No. 3:14-cv-01569-HGD, 2017 U.S. Dist. LEXIS 26012 (N.D. Ala. 2017) (plaintiff complained of harassing text messages); *Kingsley v. Tellworks Communs., LLC*, Case. No. 1:15-cv-4419-TWT-JSA, 2017 U.S. Dist. LEXIS 92619 (N.D. Ga. 2017) (defendant pointed to plaintiff's text messages in support of its decision to fire her). "Due to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant electronically stored information is often impossible." Fed. R. Civ. P. 37, 2015 Advisory Committee Notes. The rule calls for reasonable efforts; "it does not call for perfection." *Id.* In this case, the BOR acted reasonably with respect to its preservation efforts, which has been demonstrated by the volume of information that it has reviewed and produced in this case. The BOR maintains that Joseph has not made credible allegations of spoliation because she has not identified what it is the BOR should have, yet failed, to preserve.

### a. The BOR preserved text message evidence which was foreseeably relevant.

Joseph has not, and cannot, identify any specific lost or deleted text messages which may assist her in prosecuting her case because the BOR took reasonable steps to preserve and has already produced evidence which was foreseeably relevant to her claims or its defenses. Indeed, despite making sweeping

representations to this Court that the BOR failed to take "any meaningful efforts to preserve evidence for use in this case,"[9] Joseph now admits that, in its initial production of documents, the BOR produced "approximately 246 pages of text messages from the phones" of various witnesses, which Joseph characterizes as "highly relevant evidence." Pl. Notice, p. 6-7. Obviously, then, the BOR took meaningful efforts to preserve relevant text message evidence. To elaborate, the BOR preserved and produced text messages which were reviewed by the investigator during his investigation of the complaints against Joseph, such as anonymous threats received by the parent and former coach of one of the WBB student-athletes. It also preserved and produced text messages which were directly related to, or evidence of, other complaints about Joseph, such as another employee's offer to resign rather than work with Joseph anymore, and a separate threat received by an Assistant Coach during the course of the Littler investigation. As mentioned above, this is not a case where text messages themselves are at issue. *See, e.g.*, *Percella v. City of Bayonne*, Case. No. 14-3695(KM), 2020 U.S. Dist. LEXIS 209037, *29-30 (D.N.J. 2020) (party alleging spoliation "failed to establish that the alleged missing messages are relevant to the action and that their non-production prejudices their defense."); *cf. EEOC v. Draper Dev. LLC*, 2018 U.S.

---

[9] Transcript from Discovery Conference, January 14, 2021, 4:6-7; 4:23-24.

Dist LEXIS 115124 (N.D.N.Y. 2018) (regarding an allegation of failure to preserve the electronic devices containing the text messages at the "center of this action"); *Hespe v. City of Chicago*, 2016 U.S. Dist. LEXIS 173357, \*14-16 (N.D. Ill. 2016) (even where plaintiff's complaint specifically referred to text messaging in describing some of the harassment she alleged, defendants failed to show that contents of plaintiff's devices were likely to "go to the heart of [the] case"); *Trainer v. Cont'l Carbonic Prods.*, No. 16-cv-4335 (DSD/SER), 2018 U.S. Dist. LEXIS 100671, at \*9 (D. Minn. June 15, 2018) (describing text messages exchanged between plaintiff and his supervisor as "marginally relevant at best"). Thus, there are limits as to what text messages the BOR could have reasonably foreseen as requiring preservation and the BOR took steps to preserve those messages.

Joseph continues to broadly assert throughout her Notice that the BOR failed to preserve "evidence," but evidence *of what* she cannot say. In the context of a discovery dispute, "[i]f the relevance of the requested discovery is not apparent, the party seeking the production must demonstrate relevancy." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, Case. No. 7:20-cv-26, 2020 U.S. Dist. LEXIS 192550, \*12 (N.D. Fla. 2020); *see also Raymond v. City of New York*, Case No. 15 Civ. 6885 (LTS), 2020 U.S. Dist. LEXIS 38821 (S.D.N.Y. 2020) ("To prevail on

their request for sanctions, Plaintiffs … must 'set forth with any degree of specificity, the materials which would have been helpful in prosecuting their claims.'") With respect to the preservation of ESI, the Court retains "discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37, 2015 Advisory Committee Notes. In every organization and every case, there will be information which once existed but no longer does. That does not mean that the *information* which is missing constitutes relevant or probative "evidence" and, in the present case, Joseph has failed to demonstrate the importance of any lost information.

### b. The BOR is not under a duty to preserve that which does not exist.

Plaintiff's counsel has been informed that Dr. Peterson did not have substantive text messages related to the events in this case and that it is not, and was not, his practice to conduct Georgia Tech business by way of text message. *See* Pl. Notice, Ex. 13, p. 2. This has been borne out by the examination of the messages of Todd Stansbury, Joeleen Akin, Aisha Oliver-Staley, and others, none of whom communicated with Dr. Peterson via text regarding the events at issue in

this case.[10] Additionally, please see the attached affidavit from Dr. Peterson, Exhibit 1, in which he avers that it is not his practice to conduct GT business by way of text message.[11] The BOR acknowledges that any phone records which reveal texting history may in fact show that Dr. Peterson occasionally texted with other GT officials, but denies that any such text messages are substantive or relevant to any of the contested issues in this case. The BOR is not required to save all text messages of any given witness for the sole purpose of proving to Plaintiff's counsel that no relevant or responsive messages exist.

### c. The BOR was not under a duty to take preservation steps which are disproportionate to the needs of the case.

A party's duty to preserve, like its duty to produce, extends only so far as would be proportional to the needs of the case. *See* Fed. R. Civ. P. 37, 2015 Advisory Committee Notes; *In re Delta/Airtran Baggage Fee Antitrust Litig.*, 770 F.Supp.2d 1299, 1312 (N.D. Ga. 2011). Determining whether discovery is

---

[10] When witnesses did have communications with Dr. Peterson, they were largely about trivial matters such as hotel arrangements or were otherwise nonsubstantive, such as confirming the time of a meeting.

[11] Plaintiff could have obtained this information via the usual discovery process, i.e. by deposing Dr. Peterson, but she has refused to depose any additional BOR employees or agents until this matter was brought before the Court. In this way, Plaintiff's Notice is premature; there are still additional avenues of discovery which should be exhausted before any question of spoliation can or should be decided.

proportional requires consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). This is a single-plaintiff employment action. Although Joseph was highly paid, the issues presented in this case are, by and large, no different from those presented in any other employment discrimination or retaliation case. There are no text messages directly at the heart of any of the claims or defenses of the parties. With the exception of one employee's offer to resign and a few screenshots of anonymous messages, there are no text messages which stand as the only or best evidence of any critical decisions or events. Preserving complete copies of the phones of all witnesses with the intent of reviewing and producing all text messages that even touch on any issues presented in the case – no matter how banal or duplicative those messages may be – is not proportional to the needs of the case and the BOR was not obliged to save all text messages from Dr. Peterson, Ms. Akin, Ms. Tucker, or Ms. Durham's phones.[12]

---

[12] Joseph makes a passing wave at the notion that she does not expect the BOR to have done this, but her actions throughout the course of discovery and her statements in her Notice belie any such assertion. For instance, Joseph's counsel has indicated that they believe text messages related to scheduling meetings are critical evidence in the case, despite the fact that this information can be (and has

In her Notice, Joseph wrongly asserts that she is entitled to every piece of relevant evidence. Pl. Notice, pg. 23. However, the Federal Rules of Civil Procedure clearly state that a party to litigation "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (emphasis added). Indeed, "[a] party to federal civil litigation does not get discovery of every piece of relevant information. To effectuate the commands of Rule 1 and Rule 26(b)(1), there comes a point when enough is enough." *Hall v. Sargeant*, Case No. 9:18-CV-80748-Altman/Reinhart, 2019 U.S. Dist. LEXIS 132393, at *2-3 (S.D. Fla. 2019). Although Joseph makes no attempt to address the question of proportionality in her Notice, it is key to any analysis related to the preservation and production of documents for use in discovery.

---

been) obtained from other, less burdensome means, such as interrogatories or through depositions. Indeed, the BOR has already indicated a willingness to permit Joseph to exceed the number of depositions permitted by the Rules and it has provided the dates and attendees of several meetings related to the claims and defenses in this case in sworn interrogatory responses.

i. <u>The Court should consider the BOR's efforts in context of what was preserved.</u>

As noted herein, this is not a case which revolves around, or even involves, any specific text messages and, in her Notice, Joseph makes no attempt to discuss the amount of evidence she has already obtained. The efforts which were taken to preserve relevant documents are apparent from what has already been produced.[13] Once Joseph filed her lawsuit and the contours of her claims became clearer, the BOR anticipated that this case might require an extraordinary amount of time and effort; it was not wrong. As Plaintiff's counsel has been informed, counsel and agents for the BOR undertook extraordinary measures to produce relevant documentation, including reviewing more than 35,000 files when looking for information which was relevant and responsive to Plaintiff's Second, Third, and Fourth Requests for Production of Documents.[14] Of those 35,000 files, roughly 2,600 were produced, for a responsive "hit rate" of approximately 7.5%. It took approximately three months to locate, review, and produce all of this

---

[13] In addition to the documents received by the BOR and co-Defendant GTAA, which total over 20,000 pages, Joseph has submitted third party subpoenas to two student-athletes, the NCAA, and Littler Mendelson, P.C. The notion that she does not have the information necessary to prosecute her case is baseless.

[14] The BOR has since provided documents in response to Plaintiff's Fifth Request for Production of Documents and will be providing a response to Plaintiff's Sixth Request for Production of Documents, which was served on the BOR on January 27, 2021.

16

documentation. To be even more specific, counsel and agents for the BOR

reviewed approximately 33,000 items which were pulled as a result of various

electronic searches of GT's email servers. An additional 2,089 files were

individually located and pulled by GT staff and witnesses. Of the 33,000 items

from the electronic searches, fewer than one thousand were relevant and

responsive to Plaintiff's requests, for a responsive "hit rate" of approximately

2.7%. Many of those documents were repetitive of documents which had already

been located by GT staff and witnesses. *See* BOR Resp., Exhibit 2, December 4,

2020 Letter, p. 4. In addition to the documents produced in response to Rule 34

Requests, the BOR has provided sworn responses to Joseph's Second, Third, and

Fourth sets of Interrogatories, along with corresponding documents, which

responses included information about the dates and attendees of meetings and

persons responsible for decisions related to Joseph's employment. Clearly, the

BOR's preservation efforts were not meaningless.

ii. <u>The Court should consider the resources available to both
the BOR and the AG's office.</u>

When evaluating questions of the reasonableness of a party's preservation

efforts, courts are cautioned to consider the party's available resources. *See* Fed. R.

Civ. P. 37, 2015 Advisory Committee Notes ("The court should be sensitive to

party resources; aggressive preservation efforts can be extremely costly, and

parties (including governmental parties) may have limited staff and resources to devote to those efforts."). In the case of a state agency or entity in Georgia, the Court should also consider the resources of the Attorney General's (AG) Office, which is obligated by state law to represent all state agencies and officials in litigation before state and federal courts. Both entities have limitations on their resources and capabilities with respect to electronic discovery.

The AG's office currently has eight attorney and two paralegal positions in its Labor & Employment ("L&E") Section. That team is collectively charged with representing every state official and agency in any employment-related litigation brought in federal or state court. With respect to electronic discovery, specifically as it pertains to text messages, resources are limited. Aside from simply asking witnesses to identify relevant messages – which is the most expedient method – there are two ways in which counsel in an L&E case can search for responsive messages on a cell phone:

> 1) A complete backup of a given phone can be transmitted to a third party e-Discovery vendor, at which point the vendor can process the data,[15] upload messages into a document reviewing platform, and run certain filters for date ranges and specific

---

[15] This service is not able to isolate text messages on the front end; instead, they must upload and process *all* of the data on a phone – including photos, contacts, and anything else that might be stored there. This is one reason this method tends to be very expensive.

numbers. At that point, someone then has to manually
go through all of the identified messages and threads
to determine what is and is not responsive and
relevant.[16]

2) Someone can search the phone(s) by hand and take
   and upload screenshots of any relevant or responsive
   messages.

In either scenario, the review takes an extraordinary amount of time, which

translates to inflated litigation costs. The vast majority of messages tend to be

unrelated to any issues even touched upon in the case, but may encompass any

number of other sensitive topics, and, in most cases, this type of comprehensive

review of witness cell phones is unwarranted. The AG's office is not equipped to

perform this type of search with respect to every L&E case when there is no

apparent reason to think text messages are critical, unique pieces of relevant

evidence.

---

[16] This was the method utilized to produce text messages from the backup of
Joeleen Akin's phone. For reference, that process ended up costing several
thousand dollars and an inordinate amount of attorney time. Thousands of
messages were reviewed in order to locate anything that could touch on the issues
presented in this case. All told, less than half of what was reviewed was ultimately
produced, and most of that was non-substantive and/or had already been produced,
such as Ms. Akin's messages with Mr. Hoffman. None of these approximately
1600 messages had any direct bearing on decisions made with respect to Joseph's
employment. It is important to note, also, that that review encompassed only about
2.5 months' worth of messages. To conduct such a review for multiple custodians
over the course of several months or years could cost tens of thousands of dollars.

Further, although Joseph faults the BOR for producing screenshots of messages, this is not an unreasonable method for preserving and producing text messages. *See, e.g.* Fed. R. Civ. P. 37, 2015 Advisory Committee Notes ("A party may act reasonably by choosing a less costly form of information preservation, if it is substantially as effective as more costly forms."); *see also* The Sedona Conference, *Commentary on ESI Evidence & Admissibility, Second Edition,* 22 Sedona Conf. J. 83, 112-113 (October 2020) (addressing the "simplest way to facilitate preservation of messages" and observing that screenshots which can be authenticated are typically sufficient). The BOR took reasonable efforts to preserve text messages which were clearly relevant and probative of issues in the case and which were consistent with the resources available to it and its counsel for the review and production of such messages.[17] Joseph has failed to point to any controlling law or standard which would have put the BOR on notice that it was required to preserve every single text message communication even tangentially related to her or her employment. Doing so would have been massively disproportional to the needs of any anticipated lawsuit.

---

[17] Even in instances where the BOR did retain complete copies of witness cell phones, it was never with the intention of reviewing every single text message that could remotely touch on any aspect of Joseph's employment. As explained above, such searches are overly burdensome and expensive.

20

Three of the witnesses whose text messages are now at issue were not named as defendants in the lawsuit and had no authority to terminate Ms. Joseph's employment.[18] As mentioned above, no employment decisions were made and communicated solely via text, nor were there any decisions regarding WBB that were made and communicated solely via text; there are no specific text messages that are at the heart of any of Joseph's claims; texts which were reviewed by the investigator were preserved and produced; dates and attendees of meetings where job actions were discussed have already been provided in response to interrogatories; and Joseph will have an opportunity to depose each one of the witnesses identified in her Notice. Where information can be obtained by less expensive or burdensome means, it should be.

### d. There is no reason to believe anything substantial or significant has been lost.

Rule 26(b)(1) indicates that courts should consider the importance of the discovery sought in resolving the issues. However, Joseph has been unable to articulate what it is she thinks is missing, or how these missing messages could be "crucial" to her ability to prove her case. In an employment discrimination or

---

[18] To the extent Joseph intends to imply that Ms. Durham had any authority to take any actions with respect to Joseph's employment, the BOR expressly rejects such an unsupported assertion.

retaliation case, the main focus is always on the mindset of the decision maker(s). *See, e.g., Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002) ("Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent. When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker."); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (question is whether supervisors who terminated plaintiff believed him to be guilty of misconduct); *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253 (11th Cir. 2010) (inquiry into pretext centers on the employer's beliefs, not the employee's, and "to be blunt about it, not on reality as it exists outside of the decision maker's head"). Thus, Joseph's claims that any now-missing text messages from the phones of three non-decision makers are somehow "crucial" to her prosecution of her case are not worthy of credence. Having already explained circumstances regarding Dr. Peterson's text messages in Part III.b., above, the BOR will briefly address the other three witnesses identified by Joseph in her Notice:

i.  <u>Tucker</u>

Felicia Tucker was the Associate Athletic Trainer for the WBB team during the 2018-2019 season. She did not serve in leadership in the Athletic Department

and she played no role in the deliberations about decisions related to Joseph's employment. Ms. Tucker's involvement was limited: at least one student-athlete voiced some of her complaints about Joseph to Ms. Tucker and Ms. Tucker arranged for the student-athletes to meet with Ms. Oliver-Staley. This is all information which was known to Plaintiff through forms of discovery other than text message.[19] If Ms. Tucker exchanged any texts or other messages with the student-athletes related to their complaints about Joseph, they were unknown to any decision makers for the BOR and they were not considered during the Littler Investigation. Similarly, if Ms. Tucker had any text messages related to her own complaints about Joseph, those, too, were unknown to any of the decision makers for the BOR and they were not considered during any investigation into any of the allegations either against Joseph or by Joseph.[20]

---

[19] Nevertheless, Ms. Tucker's texts with Ms. Oliver-Staley have been produced.
[20] In addition to the Littler Investigation, this case now encompasses at least five other investigations into claims about Joseph and/or WBB, including: a 2016 investigation into Joseph's misuse of her assistant; a 2017 investigation into Joseph's treatment of one of her assistant coaches; an ongoing NCAA investigation into activities related to the WBB team; an investigation into Joseph's complaints about potential Title IX violations conducted by the outside firm of Lightfoot Franklin & White; and an investigation into Joseph's claims that her termination was both discriminatory and retaliatory conducted by the outside firm Nelson Mullins Riley Scarborough.

ii.  <u>Akin</u>

Akin's role in the Littler Investigation was limited and she played no role in the decision to terminate Joseph's employment. While Joseph repeatedly references the nearly 1600 text messages produced from Ms. Akin's phone,[21] she overstates the importance of these messages, which primarily consisted of Ms. Akin's efforts to schedule interviews between the student-athletes and the investigator. While it is true that over 1600 messages were produced, many of the chains consist of nothing more than logistical details. For example:

> **Akin**: Hi [student] You are scheduled for a meeting on Monday at 1:00 pm.... Does that still work with your schedule?
> **Student**: Yeah. I'll just have the (sic) cancel my tutoring
> **Akin**: Want me to tell Amanda and Sunsea?
> **Student**: Both.
> **Akin**: Done.
>
> **Akin**: Hey [student], I have you meeting with the investigator on Monday at 2:45. Does that still work?
> **Student**: Hey, yes it works.
> **Akin**: Ok great thanks. You will come up to the same area you were

---

[21] In an effort to demonstrate good faith, upon investigating the issues in the Nov. 9, 2020 letter, Pl. Notice, Exhibit 11, the BOR sent a backup of Ms. Akin's phone to its third party e-Discovery vendor to recover her text messages. In an exercise which ended up costing several thousand dollars and many hours of attorney time, the BOR was able to recover Ms. Akin's messages back to February 17, 2019 – before the Littler Investigation began. Hundreds of those messages related only to scheduling and logistics.

> in last night …. One of the suites
> **Student**: Okay

It cannot reasonably be claimed that all, or even most, of these messages were probative of any of the issues in the case.[22] The BOR has never denied that Ms. Akin acted in this capacity and the messages show that Ms. Akin did not discuss the content of the students' investigative interviews with them via text message. Referring to the number of messages produced is also misleading because each single message appears on a separate page; many of the ~1600 messages consist of nothing more than a single emoji, a one word response such as "ok" or one person's "reaction" to another's text – i.e. "John Doe 'liked' the message from Jane Doe." The time and expense associated with the review and production of these messages was extraordinary and unwarranted, as explained above.

### iii.  Durham

Lynn Durham was not a decision maker in this case. Though Ms. Durham was present for a number of the deliberative meetings which related to WBB and Joseph, she did not have the authority to take any actions with respect to Joseph's

---

[22] The BOR is willing to provide a log of the messages produced from Ms. Akin's phone for the Court's consideration either *in camera* or under seal, should the Court wish to review it. Because the log contains the personal phone numbers of students and other sensitive information, the BOR cannot file the document on the public docket.

employment. Ms. Durham's relevant text messages with Ms. Oliver-Staley, Ms.

Akin, and Mr. Stansbury have been produced. There is no reason to believe Ms.

Durham had any text exchanges with Felicia Tucker or any of the student-athletes.

Similarly, Ms. Durham had no text exchanges with the Littler Mendelson

investigator. As noted above and in Exhibit 1 attached hereto, Dr. Peterson does

not frequently communicate by text and there is no reason to believe Ms. Durham

exchanged any substantial messages with him. Further, in addition to Dr.

Peterson's phone, Ms. Durham's phone was also set to delete messages after thirty

days. *See* Pl. Notice, Exhibit 13. Thus, her text messages from the relevant time

frame were no longer accessible even before the BOR could have anticipated that

her text messages might be at issue, given that she did not have the authority to

make any decisions with respect to Joseph's employment.

### e. Plaintiff attempts to create an unworkable standard for the preservation and production of text messages.

The preservation, review, and production of ESI is – and will continue to be

– a hot spot issue in civil litigation. Increasingly, defendants are tasked with

undertaking hundreds of hours of review, poring over tens of thousands of

documents, the vast majority of which end up being irrelevant to the issues

presented in a given lawsuit. This case is no exception. Even still, Joseph is not

satisfied with having copies of the documents which are directly relevant to her

claims, or even with having copies of hundreds – or thousands – of documents which are tangentially related to her employment. Instead, Joseph faults the BOR for not retaining every single communication any witness might have ever exchanged about her and her employment, regardless of the medium or apparent importance (or unimportance) of the communication itself. Her expectations are unreasonable and not supported by any standards or law of which the BOR or its counsel is aware. Given the limited resources available to state agencies, to create such a standard would be entirely unworkable.

Text messages are inherently different than, for instance, email communications or official reports. Unlike emails or documents saved on an entity's network, for instance, text messages are not saved on an enterprise server and, even where they can be automatically backed up to a cloud service, there is no centralized cloud service that can be used to amass all of the texts inside a particular organization. Further, texts are typically informal, transient in nature, and tend to be so esoteric as not to be fully understood by any individual not party to the conversation.[23] Because of their informal nature, they are also less amenable

---

[23] For instance, assume Witness A texts Witness B before a meeting to say "Are we going to talk about the report I saw this morning?" An individual who is a stranger to that conversation, such as a reviewing attorney, is not going to be able to determine through simple document review whether that particular message is in any way related to the litigation. Indeed, many similar exchanges have been

to keyword searches to help pare down the body of potentially relevant or responsive documentation. Indeed, most of the text messages which have been produced in this case do not reference Joseph or WBB by name, which is one reason their review is such an intensive exercise.

Relying on a case from outside this jurisdiction, this Court once cited with approval the observation that "whether preservation … conduct is acceptable in a case depends on what is *reasonable*, and that in turn depends on whether what was done – or not done – was *proportional* to that case <u>and consistent with clearly established applicable standards</u>." *See In re Delta/Airtran Baggage Fee Antitrust Litig.*, 770 F.Supp.2d 1299, 1312 (N.D. Ga. 2011) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp. 2d 598, 613 (S.D. Tex. 2010)) (underline emphasis added). Nothing in Joseph's Notice to this Court indicates that any such clearly established standard existed with respect to text messages. She has failed to show that the BOR's efforts to date have been unreasonable or that anything important is missing. At the end of the day, Joseph's Notice represents nothing more than a vague assertion that she thinks people were talking about her over text.

---

reviewed during the course of discovery for this case. Text exchanges such as these have minimal, if any, probative value, particularly where – as was done here – the Defendant has already given information about any meetings related to particular events or claims via other discovery methods, such as interrogatories.

**IV.    Conclusion**

Armed with little more than innuendo and speculation, Joseph accuses the

BOR of "destroying evidence" which she deems "crucial" to her case. She cannot

articulate what it is she thinks is missing or how it will help her prove her claims,

and she ignores the extraordinary measures that the BOR has already undertaken to

preserve and produce relevant evidence. Without even credibly demonstrating that

the BOR was under a duty to preserve anything which has been lost, Joseph

attempts to weaponize the discovery process by leveling one of the most serious

allegations against another party to discovery: spoliation. For the reasons explained

herein, the BOR respectfully requests that this Court dismiss Joseph's Notice and

deny her all relief requested.

Respectfully submitted, this 2nd day of February, 2021.

*s/Courtney C. Poole*
Courtney C. Poole
Georgia Bar No. 560587
Katherine P. Stoff
Georgia Bar No. 536807
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia 30334
Telephone:  (404) 656-3384
Email: cpoole@law.ga.gov
            kstoff@law.ga.gov

*Attorneys for Defendant BOR*

29

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(C) in 14-point Times New Roman type face.

This 2nd day of February, 2021.

*s/Courtney C. Poole*
Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MACHELLE JOSEPH,

    Plaintiff,

    v.

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA;
GEORGIA TECH ATHLETIC
ASSOCIATION; GEORGE P. PETERSON,
in his individual capacity; M. TODD
STANSBURY, in his individual capacity;
MARVIN LEWIS, in his individual capacity;
and SHOSHANNA ENGEL, in her individual
capacity,

    Defendants.

CIVIL ACTION FILE NO.
1:20-CV-00502-TCB

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2021, I electronically filed the above

**RESPONSE TO PLAINTIFF'S NOTICE REGARDING DEFENDANT'S**

**ALLEGED FAILURE TO PRESERVE EVIDENCE** with the Clerk of Court

using the CM/ECF system which will automatically send email notification of such

filing to the following attorneys of record:

    Colleen Coveney (coveney@kmblegal.com)
    Lisa Banks (banks@kmblegal.com)

Ed Buckley (edbuckley@buckleybeal.com)
Rudi Julius (rjulius@buckleybeal.com)
Marilynn Robb (robb@kmblegal.com)
Tania Faransso (tania.faransso@wilmerhale.com)
Jamie Yood (jamie.yood@wilmerhale.com)

*s/Courtney C. Poole*
Courtney C. Poole
Georgia Bar No. 560587
*Counsel for Defendant Board of Regents*