**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MACHELLE JOSEPH,

     *Plaintiff*,

     v.

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA; and
GEORGIA TECH ATHLETIC
ASSOCIATION,

     *Defendants*.

CIVIL ACTION FILE NO.
1:20-CV-00502-VMC

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff MaChelle Joseph, dissatisfied with earlier orders of the Court, has

filed the instant "Motion for Reconsideration" in which she takes the extraordinary

step of accusing the prior district judge of improperly failing to recuse himself and,

without identifying any legal error, seeks complete vacatur of multiple orders as a

"remedy" for this alleged injustice. Joseph's motion is a transparent attempt to

secure an impermissible second bite at the apple and should be rejected outright.

In her brief, Joseph purports to identify three reasons in support of her

argument that Judge Batten should have recused: 1) Judge Batten is an adjunct

professor in the School of Law at a separate Board of Regents institution; 2) Judge

1

Batten has "ties" to Georgia Tech because he is an alumnus, his children are alumni, and two of his daughters interned in the Athletic Department while in school; and 3) Judge Batten was friends with a non-party former employee of the Athletic Department. As explained below, the law on this matter is clear. None of these, considered separately or together, support a finding that Judge Batten violated 28 USC § 455(a). Thus, recusal was not warranted and reconsideration of the sanctions orders is not necessary.

## I.   BACKGROUND

Joseph filed a lawsuit following her termination from the Georgia Institute of Technology ("GT," "Georgia Tech," or "the Institute"), a member institution of the Board of Regents of the University System of Georgia ("BOR"). Joseph claims her termination was the final event in a series of escalating discriminatory and retaliatory moves by the school, taken in response to her repeated complaints about resources and benefits afforded to the women's basketball ("WBB") team and on account of her sex and the sex of the athletes she coached. Georgia Tech has consistently responded that Joseph was fired following a thorough and independent investigation of allegations that she abused student athletes and staff. The final report of that investigation was received and reviewed by Athletic Director Todd

Stansbury on March 20, 2019, after which he determined that Joseph could no longer coach at GT. Stansbury Dep. 229:15-232:8, 233:2-8.

Joseph filed her first lawsuit on July 23, 2019. *See* Case No. 1:19-CV-00334-TCB. She voluntarily dismissed her case. *Id.*, ECF No. 29. Two months later, she filed a second complaint in Fulton County Superior Court. Defendants removed the case to this Court and litigation began in earnest in February, 2020. The discovery period in the case was protracted, commencing on or around March 4, 2020, and not fully concluding until July 9, 2021.[1] During that time, Joseph served multiple rounds of discovery requests upon the Defendants, including several sets of document requests and interrogatories. She deposed 16 witnesses, served requests for documents on third parties, and her counsel engaged in additional, less formal, efforts to uncover information related to the investigation.

On August 31, 2021, the BOR and Joseph filed cross motions for sanctions with each movant claiming the other party had spoliated evidence. *See* ECF Nos. 168, 171. After the matters were fully briefed, the Court issued two separate orders on the respective motions. *See* ECF Nos. 203, 204. Central to the Court's analysis of Joseph's motion was whether she had uncovered any other evidence that the

---

[1] At one point, discovery was stayed for approximately two and a half months. *See* ECF Nos. 119, 122. Thus, the parties were actively engaged in discovery for nearly 14 months.

reasons given for her termination were pretextual, or whether the evidence she claimed the BOR spoliated would be likely to reveal that the investigation was launched for pretextual reasons. *See* ECF No. 203, pp. 10-21. The Court determined that Joseph had not made such a showing and, ultimately, denied her motion for sanctions. *Id.* With respect to the BOR's motion, the Court found that it had demonstrated sufficient evidence to show that Joseph deleted messages which would have contained probative evidence related to Joseph's alleged protected conduct. ECF No. 204, pp. 10-21. Notably, Judge Batten did not authorize a harsh sanction; in his order granting the BOR's motion, Judge Batten determined that, should the case proceed to trial, the BOR would be permitted to introduce evidence of Joseph's missing text messages to a jury. The jury would then determine whether spoliation occurred and what the messages likely said. *Id.,* p. 25.

Now, nearly a year after those orders were issued, Joseph seeks to have them vacated because they are damaging to her summary judgment arguments and any potential case she may present at trial.

## II.    ARGUMENT AND CITATION OF AUTHORITY[2]

---

[2] At the outset, Defendants note that Judge Batten did not err when he did not advise Joseph of the circumstances she now relies upon in her motion. While she appears to fault Judge Batten for not disclosing the "connections" upon which she now relies, *see* Pl. Br., p. 7, Joseph's suggestion that Judge Batten should have sought her or her counsel's approval to continue presiding over this case must be

**A. There is no reason for Judge Batten to have recused himself.[3]**

First, the question of whether Judge Batten had a conflict requiring recusal was necessarily decided by him in the first instance and this Court should not disturb that decision absent a showing of clear error. Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but only when "absolutely necessary." LR 7.2E, N.D. Ga. "Such absolute necessity arises only when there is '(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.'" *Harrison v. Macy's Inc.*, No. 1:17-cv-03257-TCB-AJB, 2021 U.S. Dist. LEXIS 118470, at *7 (N.D. Ga. 2021).

---

rejected. The law in the Eleventh Circuit is clear: judges are to "reach [their] own determination [on recusal], without calling upon counsel to express their own views." *See United States v. Kelly*, 888 F.2d 732, 745-46 (11th Cir. 1989). "Generally, a federal judge may not state for the record possible disqualifying circumstance and ask the parties to decide whether they want him to continue." *Id.* (citations omitted).

[3] When a trial court is faced with a motion to recuse, it is typically the judge whose recusal is sought who is charged with deciding the merits of the motion. "On its face, 28 USC § 455 requires that the judge assigned to a case and who is the subject of a motion to recuse decide on the matter." *Gossard v. JP Morgan Chase Co.*, No. 08-60565-CIV-Zloch, 2009 U.S. Dist. LEXIS 139323, *16 (S.D. Fla. 2009). The statute provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *see also Liteky v. United States*, 510 U.S. 540, 548 (1994) (§ 455 "places the obligation to identify the existence of [grounds for recusal] upon the judge himself").

As explained herein, a review of federal case law indicates that Judge

Batten's decision not to recuse himself in this case was not only proper, it was

required. "There is as much obligation for a judge not to recuse when there is no

occasion for him to do so as there is for him to do so when there is." *In re Moody*,

755 F.3d 891, 895 (11th Cir. 2014) (quoting *United States v. Burger*, 964 F.2d

1065, 1070 (10th Cir. 1992)). In her motion, Joseph identifies three reasons in

support of her argument that Judge Batten should have recused himself: 1) Judge

Batten is an adjunct professor in the School of Law at a separate Board of Regents

institution; 2) Judge Batten has "ties" to Georgia Tech because he is an alumnus,

his children are alumni, and two of his daughters interned in the Athletic

Department while in school; and 3) Judge Batten was friends with an Athletic

Department employee. None of these factors, considered separately or together,

support a finding that Judge Batten improperly failed to recuse himself.

      i.  <u>Position with UGA Law School</u>

Judge Batten's work as an adjunct professor at UGA Law is not

disqualifying. Although Joseph frames this as a situation where Judge Batten

"maintain[ed] an employment relationship with a party," it is not uncommon for

judges to take adjunct positions at nearby law schools, and doing so does not

warrant recusal where there are insufficient connections between the judge's

teaching position and the subject matter of the case.[4] Here, there is no connection

whatsoever between the law school at UGA and the athletic department at Georgia

Tech. Joseph's reliance on the Board of Regents as the overarching parent entity of

both schools is misplaced. Even in cases where the sitting judge taught *at* the

school who was a litigant in the matter before them, courts have not found recusal

to be warranted. "The federal courts that have addressed the issue

of adjunct teaching have considered whether a judge's current teaching on

an adjunct basis might call for recusal—and even in that situation, recusal has not

necessarily been required in a case involving the parent university, depending on

'the size and cohesiveness of the university, the degree of independence of the law

school, the nature of the case, and related factors.'" *Austin v. Fordham Univ.*, No.

21-CV-6421 (JPO), 2022 U.S. Dist. LEXIS 185933, at *3 (S.D.N.Y. Oct. 11,

2022) (quoting *Sessoms v. Trustees of Univ. of Pennsylvania*, No. CV 16-2954,

2017 U.S. Dist. LEXIS 77909, 2017 WL 2242847, at *2 (E.D. Pa. 2017)); *see also*

*Wu v. Thomas*, 996 F.2d 271, 274 (11th Cir. 1993); *Medsense, LLC v. University*

*Sys. of Maryland*, No. 20-CV-892, 2020 WL 3498084 (S.D. Md. 2020) ("Courts …

---

[4] The natural conclusion under Joseph's theory would be that any judge who
maintains a teaching position at any BOR institution, regardless of any other
factors, would be barred from presiding over cases involving any aspect of the
university system. Her position is untenable.

7

have consistently found that recusal was not appropriate in cases involving one part of a university where the judge taught law school classes in a separate part of the university."); *Szeinbach v. Ohio State Univ.*, 2015 U.S. Dist. LEXIS 185561, *5 (S.D. Ohio 2015) ("In fact, the Court's research did not locate a single decision where teaching at a law school affiliated with a university or college was considered a proper basis for recusal in a case in which that university or college was a party.").[5]

While Joseph stresses that Judge Batten is a Board of Regents "employee," and that some courts have found certain employment relationships to be disqualifying, other courts have found that "financial interest is defined [by § 455] in such a way that mere employment is not considered a financial interest for purposes of the statute." *Sessoms,* 2017 U.S. Dist. LEXIS 77909 at *6 (E.D. Pa. 2017) (citing 28 U.S.C. § 455(d)), *aff'd* at 739 Fed. App'x 84, 90 (3rd Cir. 2018); *see also Royer v. Pa. State Univ.*, No. 03:00-cv-290-KRG-KAP, 2012 U.S. Dist.

---

[5] *See also Harris v. Board of Sup'rs of Louisiana State Univ.*, 409 Fed. Appx. 725 (5th Cir. 2010) (upholding denial of recusal motion filed by employment discrimination plaintiff who formerly worked at the LSU Health Sciences Center where judge was a member of the LSU Law Center's board of trustees); *Maurey v. Univ. of S. Cal.*, 12 Fed. App'x 529, 532 (9th Cir. 2001) (upholding denial of recusal motion in an employment case involving USC's School of Urban and Regional Planning even though judge served on the Board of Councilors at USC Law School).

LEXIS 37852, *6 (W.D. Pa. 2012). Indeed, judiciary policy explicitly covers law school teaching and it does not require recusal in this circumstance. *See Sessoms*, 739 Fed. App'x at 90 (citing Guide to Judiciary Policy, Compendium of Selected Ethics Advisory Opinions, § 3.4-3(a)). There is no reason to believe that a judge would be improperly biased or have any particularized knowledge of a case simply based on an adjunct teaching position, particularly where that position is at an entirely separate institution.

## ii. Ties to Georgia Tech

Almost every federal court to consider the question has found that a judge's status as an alumnus does not warrant recusal from cases involving the judge's alma mater. Status as an alumnus, or continuing contact with a defendant university, are insufficient to cause any reasonable observer to question a sitting judge's impartiality. *See United States v. Alabama*, 828 F.2d 1532, 1543 (11th Cir. 1987) (judge's "background and associations" did not justify recusal); *Wu v. Thomas*, 996 F.2d 271, 274 (11th Cir. 1993) (recusal not warranted where judge was an alumnus, an adjunct professor, and a football fan who gave money for priority football tickets).[6]

---

[6] *See also Easley v. Univ. of Michigan Bd. of Regents*, 906 F.2d 1143, 1146-47 (6th Cir. 1990)(the "amicable feelings" the district judge had for his alma mater failed to demonstrate sufficient basis for recusal), *cert. denied*, 499 U.S. 947 (1991);

Similarly, the fact that Judge Batten's children attended Georgia Tech and engaged in normal activities during their time in school, such as on-campus internships, also does not warrant recusal. From the materials submitted by Joseph,[7] it appears that, during their time at Georgia Tech, two of Judge Batten's children completed internships with the Alexander-Tharpe ("A-T") Fund, a nonprofit organization that is a division of GTAA and serves as the fundraising arm of the Athletic Department. One of them served as an intern from August, 2014 through May, 2015, more than four years before this case was filed. The

_____

*Levitt v. University of Texas*, 847 F.2d 221 (5th Cir. 1988) (school ties are insufficient to disqualify judge); *Brody v. President of Harvard College*, 664 F.2d 10, 11 (1st Cir. 1981) ("[A] judge's having attended or graduated from a school, which is a party, without more, is not a reasonable basis for questioning his impartiality. . . . [W]e do not think it reasonable to doubt a judge's impartiality simply on the basis of his prior status as a student."), *cert. denied*, 455 U.S. 1027 (1982); *Roe v. St. Louis Univ.*, 746 F.3d 874, 886 (8th Cir. 2014) (upholding denial of recusal motion in case brought by university student against the university where the judge was an alumnus of the university and its law school and taught classes at the law school); *Chalenor v. Univ. of North Dakota*, 291 F.3d 1042, 1049-50 (8th Cir. 2002); *Lunde v. Helms*, 29 F.3d 367, 370-71 (8th Cir. 1994) *cert. denied*, 513 U.S. 1155 (1995); *Russell-Brown v. Jerry*, No. 1:09-cv-00257-MP-AK, 2010 U.S. Dist. LEXIS 152178 (N.D. Fla. 2010) (judge's status as an alumnus and continuing contacts with the law school insufficient to warrant recusal); *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, No. CV 05-B-0585-W, 2005 U.S. Dist. LEXIS 62260, *4 n.3 (N.D. Ala. 2005).

[7] Joseph's submissions to the Court consist primarily of inadmissible hearsay. However, for purposes of this response, Defendants do not dispute that some of Judge Batten's children attended Georgia Tech and that two of them completed internships with the A-T Fund.

other completed her internship in November, 2019. The present suit was not initiated until December, 2019, when Joseph filed her complaint in the Superior Court of Fulton County.[8] It was removed to the Northern District on February 3, 2020. Thus, by the time this action was even before Judge Batten, none of his children were interning at the A-T Fund.

Even if one or more of his children *had* been working at the Athletic Department during the pendency of this case, that would not have warranted Judge Batten's recusal, either. The Eleventh Circuit has held that "recusal is not required merely because the movant can 'draw[ ] a line ... connecting a person within chambers to a person or firm related, no matter how remotely, to a party in the case.'" *In re Horne*, 630 Fed. App'x 908, 911 (11th Cir. 2015). And recusal is "not automatically required where the judge's child is employed by a party to the dispute." *Alvarez v. United States*, No. 12-20687CIV-MORENO, 2012 U.S. Dist. LEXIS 58580, *6 (S.D. Fla. 2012). There is no evidence that Judge Batten or any of his children held any financial or other "substantial" interest in the outcome of

---

[8] As noted by Joseph, her earlier case was voluntarily dismissed by her in October, 2019, before Judge Batten was called to rule on any substantive motion by any party. Even if there were reason for Judge Batten to have recused himself in *that* action, which there was not, the recusal need not carry over to the present case. "It is simply not true that once recused, always recused." *Mackey v. United States*, 221 Fed. App'x 907, 910 (11th Cir. 2007).

the case.[9] Additionally, federal courts have declined to find a conflict warranting

recusal in cases where: a judge's adult child worked at a law firm involved in the

case; a judge's son was employed by a party to the case; or where a judge's son

worked for an intervenor in the case. *See, e.g., United States ex rel. Weinberger v.

Equifax, Inc.*, 557 F.2d 456, 463 (5th Cir. 1977);[10] *Easley v. Univ. of Mich. Bd. Of

Regents*, 853 F.2d 1351, 1357 (6th Cir. 1988) (affiliations of judge's adult sons

with school and judge's former law firm were "patently insufficient to call into

question" the judge's impartiality); *Howard v. Wilkinson*, Case No. 6:17-cv-1473-

Orl-40GJK, 2018 U.S. Dist. LEXIS 240936 (M.D. Fla. 2018); *Hewlett-Packard

Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556 (Fed. Cir. 1989); *Southwestern Bell

Tel. Co. v. FCC*, 153 F.3d 520 (8th Cir. 1998); *United States v. Edwards*, 39

F.Supp.2d 692, 714-15 (M.D. La. 1999) (listing cases). Judge Batten's children's

internships at the A-T Fund did not warrant Judge Batten's recusal in this matter.

---

[9] From the materials submitted by Joseph, it appears Judge Batten's children would
have been legal adults at the time in question. Section 455(b)(4) contemplates only
conflicts that arise in connection with "minor child[ren] residing in [the judge's]
household." In *In re National Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir.
1988), the Seventh Circuit noted that the care with which the recusal statute is
drafted "should make a court hesitate to treat the general language of §455(a) as a
bar to judicial service whenever a relative has 'something to do with' a party."
[10] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)
(adopting as binding precedent all decisions of the former Fifth Circuit handed
down prior to September 30, 1981).

### iii.  Friendship with Jack Thompson

Next, Joseph contends that Judge Batten had a close friendship with a former employee of the Athletic Department whom Joseph contends is a "comparator" in this case, Mr. Jack Thompson. Her argument fails for a number of reasons, including: 1) she grossly overstates Mr. Thompson's connection to the case; 2) there was no way for Judge Batten to know of Mr. Thompson's tangential relationship to the case; and, most importantly, 3) because "friendship … has traditionally *not* been a ground for recusal." *Cheney v. United States Dist. Court*, 541 U.S. 913, 916 (2004); *see also McWhorter v. Birmingham*, 906 F.2d 674 (11th Cir. 1990) (no error in failing to recuse where trial judge was a business partner and friend of the mayor); *Hadler v. Union Bank & Trust Co.*, 765 F.Supp. 976, 977 (S.D. Ind. 1991) ("Friendship means many things, but it is rarely adequate grounds upon which to seek recusal of a federal judge."); *Shuler v. Duke*, No. 2:16-cv-00501-RDP, 2016 U.S. Dist. LEXIS 193077 at *7 (N.D. Ala. 2016) (quoting *United States v. Kehlbeck*, 766 F.Supp. 707, 712 (S.D. Ind. 1990)) ("[J]udges may have friends without having to recuse themselves from every case in which a friend appears as counsel, party, or witness.").[11]

---

[11] *See also In re United States*, 666 F.2d 696, 697 (1st Cir. 1981) (noting the societal links that form "when a judge presides in an area where he and his family have lived for one or more generations"); *Fletcher v. Conoco Pipe Line Co.*, 323

### 1. *Mr. Thompson's involvement in the case – or lack thereof.*

Joseph's contention that Mr. Thompson is a "comparator" for purposes of this litigation is plainly wrong. *See Lewis v. City of Union City*, 918 F.3d 1213, 1227-28 (11th Cir. 2019) (establishing proper comparator standard). What is more accurate is that, at one point many years ago, Joseph *claimed* that Mr. Thompson was a "comparator" in a situation where Joseph received a final written warning relating to her treatment of her former assistant. Even still, Mr. Thompson was not a valid comparator then, either. Joseph seeks to reduce the events related to her misuse of her assistant to a scenario in which she asked her assistant to perform a few personal tasks for her and was harshly disciplined while others in the Athletic Department made similar requests of their assistants and yet were not similarly disciplined. The evidence shows, however, that Joseph's abuse of her assistant extended well beyond asking her to perform a few personal tasks. *See* BOR MSJ App'x Ex. 7 (ECF No. 212-10, "Sanford Investigation Report"); Joyce Dep. Ex. 16-2 (ECF No. 198-18, "Corrective Action Plan"); Akin Dep. Ex. 3 (ECF No. 183-4, "Final Written Warning"). There is no evidence anywhere in the record, and

---

F.3d 661, 665 (8th Cir. 2003); *M.K. Metals, Inc. v. National Steel Corp.,* 593 F.Supp. 991 (N.D. Ill. 1984) ("To my knowledge, every federal court faced with arguments for recusal based on friendship has found recusal unnecessary.").

Joseph does not purport to identify any, which would demonstrate that Mr. Thompson directed his administrative assistant to meet with non-employees regarding internal budgeting processes and to hide those meetings from Athletic Department administration. *See id.* Nor is there evidence that Mr. Thompson was found to have engaged in a pattern of unethical conduct, that he had a disciplinary history which was similar to that of Joseph's, or that he reported to the same supervisor as Joseph. *Compare* Final Written Warning *with Lewis*, 918 F.3d at 1227-28.

Joseph's reference to Mr. Thompson's fundraising work is also disingenuous. Mr. Thompson was indeed a valued member of the Athletic Department's fundraising arm for many years, but there are no indications anywhere in the record of this case that Mr. Thompson had any role in distributing funds amongst the programs or in making *any* of the decisions with which Joseph takes issue in this litigation. Mr. Thompson's role in the case is so minor that, after fourteen months of exhaustive discovery, his name never made it on to any party's list of witnesses. At no point has Mr. Thompson's credibility or culpability been at issue and no judge, at any juncture, will be called upon to assess Mr. Thompson's veracity. Joseph has not "identified" a link between this case and Judge Batten so much as she is now trying to create one through hyperbole and innuendo.

15

### 2. *There was no reason for Judge Batten to know that Mr. Thompson was even remotely connected to the case.*

During the time in which he presided over this matter, there was no reason for Judge Batten to have known that Mr. Thompson was in any way related to the case. As noted above, Mr. Thompson is not named as a witness. He is also not mentioned by name in Plaintiff's Complaint (ECF No. 1-2), her initial disclosures (ECF No. 17), her interrogatory responses (ECF No. 212-5), any of the briefing on her "Notice Regarding Failure to Preserve" (ECF Nos. 123, 130, 132), or any briefing on the sanctions motions (ECF Nos. 171, 189, 195, 202, 201). In fact, it appears that the first time Mr. Thompson was mentioned by any of the parties was at summary judgment, which was not fully briefed until March 28, 2022. *See* ECF Nos. 228, 231.[12] The case was reassigned to Judge Calvert shortly thereafter. *See* Docket entry dated April 11, 2022.

### 3. *Joseph's speculation that Judge Batten might have gained extrajudicial knowledge.*

Joseph appears to advance a theory that Judge Batten, through his relationship with Mr. Thompson, might have gained extrajudicial knowledge of the

---

[12] Joseph relies on her summary judgment filings to demonstrate Mr. Thompson's link to the case. In her unnecessarily enlarged statement of additional material facts, which consists of nearly 550 separate paragraphs, Mr. Thompson's name appears just five times. The assertions related to Mr. Thompson are largely undisputed and otherwise immaterial for reasons explained more fully in the BOR's response. *See* ECF No. 229, ¶¶ 189-193.

16

facts at issue in this case. According to Joseph, Judge Batten should have known he could not preside over this case because he was friends with Jack Thompson, who reported to Todd Stansbury, and Todd Stansbury was the decisionmaker with respect to Joseph's termination. Stansbury *might* have talked to Thompson about Joseph, and Thompson *might* have shared that information with Judge Batten. *See* Pl. Br., pp. 16-17. This is the kind of tenuous connection, supported only by inappropriate speculation and innuendo, which will not support recusal. *See United States v. Cerceda*, 188 F.3d 1291, 1293 (11th Cir. 1999) ("Recusal cannot be based on 'unsupported, irrational or highly tenuous speculation.'").[13] Rather, the appropriate test under Eleventh Circuit law is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1524 (11th Cir. 1988); *see also Mantiply v. Horne (In re Horne),* 630 Fed App'x. 908, 910 (11th Cir. 2015) *cert. denied,* 136 S. Ct. 2512 (2016) (citations omitted). Courts should "not consider the perceptions of idiosyncratic, hypersensitive, and cynical observers." *Id.*

      iv.  The "cumulative effect."

---

[13] Evidentiary hearings are similarly unwarranted by speculation and conjecture. *Cerceda*, 188 F.3d at 1293.

Joseph concedes that each of the factors she identifies in her motion on their own would not justify recusal. *See* Pl. Br. p. 12 ("[B]eing an alumnus of a party or friends with a potential witness is typically not enough to warrant disqualification.") She argues instead that it is their cumulative effect which should be considered. She relies on three nonbinding cases to bolster her claim.

First, *Campbell v. Temple University*, No. 95-4255, 1996 U.S. Dist. LEXIS 12 (E.D. Pa. 1996), is readily distinguishable. There, the district judge opted to disqualify himself *sua sponte* because not only had he had a "gratifying relationship with Defendant Temple University for more than forty years," including serving as an adjunct for fifteen years at that institution, but also was slated to be honored by the Temple Law Alumni Association as "one of the law school's most prominent graduates." The President of that Alumni Association was also counsel for the Defendants. No such similar connections are present here.

*In re Apollo*, 535 Fed. App'x 169 (3d Cir. 2013), is likewise inapposite. There, the judge's "connections to the litigation before her were numerous." She served on a civic board, the Board of Directors for the Avenue of the Arts, Inc. ("AAI") together with the plaintiff and a representative of the defendant, Pennsylvania Convention Center Authority ("PCCA"). That board worked closely with businesses in the arts district of Philadelphia, including with PCCA. Further,

18

PCCA provided AAI with direct monetary contributions. By virtue of her position on the board, the district judge was in "regular contact" with multiple individuals who were actively involved in the lawsuit, including the plaintiff herself. There is no reason to believe that Judge Batten served on any board that was financially connected to any of the parties, that he had any type of financial or fiduciary interest in the outcome of this case, or that he had regular contact with numerous "key witnesses." *Cf.* 535 Fed. App'x at 174.

Joseph's dependence on *United States v. Moskovits*, 866 F.Supp. 178 (E.D. Pa., 1994), is both misplaced and insufficient to overcome the great weight of authority cited herein.[14] In *Moskovits*, the recusing judge had presided over a criminal matter in which the defendant was a student of the University of Pennsylvania. The judge had been a faculty member at the university for 20 years and his wife had been a member of the administrative staff for 20 years. Earlier in the course of the case, the judge identified these connections but determined that, since the university was not "alleged to be a party, or a victim of, any of the activities covered in the indictment," his recusal was not necessary. However, after the university relied upon Moskovits' conviction and began disciplinary

---

[14] To the best of Defendants' knowledge, *Moskovits* has not been relied upon by any other court to support recusal.

proceedings against him on that basis, the judge determined that the outcome of the

university's proceedings would be affected by the pending litigation. In deciding to

recuse, the judge specifically noted that he was "influenced by the realization that

the world at large does not hold public officials in uniformly high esteem – and

citizen skepticism about officialdom even extends to judges." *Id.* But the law in the

Eleventh Circuit is clear, and it is only the viewpoint of a reasonable person which

matters, not one who is "idiosyncratic, hypersensitive, or cynical." *In re Horne*,

630 Fed. App'x 908, 910 (11th Cir. 2015).[15]

Finally, Joseph has cobbled together a smattering of hearsay from years-old

social media posts to support her argument that a federal judge might violate his

duty of impartiality on the simple basis that he and his children attended Georgia

Tech and he had a friend who worked there. Whether various other individuals

may harbor or express some irrational hope that a judge would abandon his oath on

such slight connections is immaterial. The Eleventh Circuit instructs that a court's

inquiry cannot be guided by rumor, insinuation, or "publicized inferences of bias."

*Greenough*, 782 F.2d 1556, 1558-59 (11th Cir. 1986). In sum, Joseph fails to

---

[15] That the district judges in *Campbell* and *Moskovits* acted conservatively and
chose to recuse themselves does not mean that recusal was required. District judges
are afforded discretion when determining whether or not to recuse themselves and
their decisions should not be disturbed "unless the impropriety is clear." *Wood v.
Frederick*, No. 21-12238, 2022 U.S. App. LEXIS 14874, *8 (11th Cir. 2022).

establish that Judge Batten violated section 455(a). Even if she had, vacatur of the

sanctions orders would not be warranted for the reasons explained below.

### B. Joseph fails to demonstrate that either of the sanctions orders should be vacated or revised.

#### i.  Vacatur is not warranted.[16]

To the extent Joseph seeks vacatur and *de novo* review of the cross-motions

for sanctions, *see* Pl. Br. p. 25, n. 21, such a procedure is unwarranted on these

facts. In *United States v. Cerceda*, the Eleventh Circuit carefully discussed how to

fashion a remedy where a violation of § 455 was alleged as a basis for vacatur

pursuant to Fed. R. Civ. P. 60(b). 172 F.3d at 812-14. As a starting point, the party

seeking vacatur bears the burden of proving that potential bias presented a risk of

injustice. To do so, the reviewing court must consider whether the movant "has

pointed to particular circumstances that may indicate a risk of injustice to that

party." *Id.* at 813. Then, "the court should consider the seriousness of the violation

of section 455(a) that is involved." *Id.* The seriousness of any violation may be

mitigated by evidence that the judge lacked knowledge of a disqualifying

---

[16] Although Joseph initially indicated she was seeking reconsideration of the earlier orders, it now appears that she is seeking to have those rulings vacated entirely. She suggests that the parties could then "move again" for sanctions. Pl. Br., p. 25. Her suggestion is nonsensical. Even if the Court were to determine vacatur is appropriate, which it is not, the Court would need to conduct a *de novo* review of the parties' motions.

circumstance. *Id.*, n. 11; *see also Berkadia v. Real Estate Advisors LLC v. Wadlund*, No. CV-22-00049-TUC-CKJ, 2022 U.S. Dist. LEXIS 141753, *10-12 (D. Ariz. 2022) (vacatur not warranted where judge had no reason to know of disqualifying connections); *Moore v. Intuitive Surgical, Inc.*, No. 1:15-cv-00056-WLS, 2019 U.S. Dist. LEXIS 233771 (M.D. Ga. 2019) (court should consider the "seriousness of the violation" of section 455(a) that is involved).

The party opposing vacatur must also carry its burden of showing that vacatur poses a risk of injustice to it. *Cerceda*, 172 F.3d at 814. Such would be the case here. As Joseph has repeatedly acknowledged, the sanctions orders bear directly on some of the issues raised at summary judgment, and the BOR's summary judgment motion was written against the backdrop of, and in reliance on those orders. *See, e.g.,* ECF No. 228, p. 11-12. In the event they are vacated or significantly revised, the BOR would need a separate opportunity to amend or supplement its summary judgment motion, which would require potentially significant additional expense and time in a case that has already required a disproportionate amount of attention from the parties and the court.

      ii.   The standard on reconsideration should be for harmless error.

If this Court determines that the sanctions orders should be reconsidered at all, *de novo* review is not necessary.[17] The Court can review for harmless error. "There need not be a draconian remedy for every violation of § 455(a)." *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 862-64 (1988). "As in other areas of the law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance." *Id.; see also Mackey v. United States*, 221 Fed. App'x 907, 910 (11th Cir. 2007) (unpublished); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 457-59 (5th Cir. 1996); Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

### C. Joseph has not demonstrated error in either sanctions order.

Here, Joseph fails to demonstrate error in either sanctions order; she merely restates (and misstates) arguments and evidence previously reviewed and rejected. Joseph claims that Judge Batten "appl[ied] different standards to the same issue to

---

[17] In the event this Court does see fit to conduct a *de novo* review, Defendants submit that the Court would be entitled to award the BOR the relief it originally sought with respect to both motions. Notably, Judge Batten did not grant the BOR's requests with respect to either motion.

Alternatively, the Court could conduct a *de novo* review of Judge Batten's prior orders and adopt them as its own, rather than writing new orders. *See United States v. Musselwhite*, 709 Fed. App'x 958, 967-68 (11th Cir. 2017) (unpublished) (approving of the district judge's decision to review prior orders of the recused judge and adopt them as his own).

reach different results," Pl. Br. p. 10, but she fails to explain how. The standards

applied by Judge Batten were consistent. The main thrust of Joseph's complaint

appears to be that the orders were unfavorable to her but that is insufficient to show

that they were wrongly decided, nor is it evidence of any partiality on the part of

Judge Batten. "Opinions formed by the judge on the basis of facts introduced or

events occurring in the course of the current proceedings, or of prior proceedings,

do not constitute a basis for a bias or partiality motion unless they display a deep-

seated favoritism or antagonism that would make fair judgment impossible." *Liteky*

*v. United States*, 510 U.S. 540, 555 (1994). Further, "a recusal motion is an

improper vehicle to dispute disagreeable adverse rulings. It is a clear abuse of such

a pleading." *Ginsberg v. Evergreen Sec., Ltd. (In re Evergreen Sec., Ltd.)*, 570 F.3d

1257, 1274 (11th Cir. 2009).

The BOR stands by its arguments made in the sanctions briefing and, for the

sake of brevity, will not restate all of them here. In short: Joseph's argument that

Georgia Tech initiated the Littler Investigation for pretextual reasons is baseless.

Four students, acting of their own accord, met in person with the Institute's acting

General Counsel, Aisha Oliver-Staley, and shared with her serious complaints

about Joseph. During that meeting, Ms. Oliver-Staley asked the athletes to have

their parents send letters on their behalf and she then pushed for an investigation

into WBB.[18] The investigation was launched on the basis of legitimate concern for students and staff; its results were more than sufficient reason to terminate Joseph's employment. With respect to the BOR's motion for sanctions against Joseph, the evidence clearly shows that: Joseph was preparing to sue Georgia Tech as early as 2018; she enlisted Theresa Wenzel's help in those preparations; she and Wenzel were close friends and confidants who communicated via text message; and she failed to produce any text messages between the two of them from a crucial time frame. For purposes of this lawsuit, evidence of Joseph's mindset is critical to the BOR's defense and it has been prejudiced by Joseph's actions.

## III.   CONCLUSION

Employing the same sophistry that has become a hallmark of her filings, Joseph has filed this ill-supported motion in a clear attempt to escape prior adverse rulings. There is no basis to find that Judge Batten should have recused himself; thus there is no need to revisit any of the earlier orders in this case. Even if there were, Joseph fails to demonstrate error in any prior rulings. Her motion should be denied and the sanctions orders should stand.

---

[18] As explained more fully in the BOR's summary judgment filings, Todd Stansbury also wanted an investigation into the program.

25

Respectfully submitted, this 8th day of November, 2022.

CHRISTOPHER M. CARR                112505
Attorney General

BRYAN K. WEBB                      743580
Deputy Attorney General

KATHERINE POWERS STOFF             536807
Senior Assistant Attorney General

*s/ Courtney C. Poole*
COURTNEY C. POOLE                  560587
Assistant Attorney General

*Attorneys for the Board of Regents of the University System of Georgia*

*s/ Tania Faransso*
Ronald C. Machen
Tania Faransso
Jamie Yood
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 663-6000
ronald.machen@wilmerhale.com
tania.faransso@wilmerhale.com
jamie.yood@wilmerhale.com

Christopher Paul Galanek
Georgia Bar No. 282390
BRYAN CAVE LEIGHTON
PAISNER LLP

26

One Atlantic Center, 14th Floor
1201 W. Peachtree Street, NW
Atlanta, GA 30309
Tel.: (404) 572-6979
chris.galanek@bclplaw.com

*Attorneys for Georgia Tech Athletic Association*

**Local Rule 7.1.D Certification:**

By signature below, counsel certifies that the foregoing pleading was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1C.

Respectfully submitted this 8th day of November, 2022.

*s/ Courtney C. Poole*
Courtney C. Poole        560587
*Counsel for Defendant BOR*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2022, I electronically filed the above

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR**

**RECONSIDERATION** with the Clerk of Court using the CM/ECF system which

will automatically send email notification of such filing to the following attorneys

of record:

Edward D. Buckley
edbuckley@buckleybeal.com
Colleen Coveney
Coveney@kmblegal.com
Lisa J. Banks
banks@kmblegal.com
Joseph E. Abboud
Abboud@kmblegal.com
Matthew Stiff
stiff@kmblegal.com
Kyle Brooks
kbrooks@buckleybeal.com
*Counsel for Plaintiff*

This 8th day of November, 2022.

*s/Courtney C. Poole*
Courtney C. Poole      560587
Assistant Attorney General

Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 458-3353
Email: cpoole@law.ga.gov